IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY 2 7 2008

**Clerk, U.S. District and
Bankruptcy Courts**

COMPLAINT

## § 2241 HABEAS CORPUS PETITION FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 28 U.S.C. § 2241
### OR IN ACTIONS CHALLENGING REMOVAL PROCEEDINGS

William Thatcher "Bill" Dunwoody,

Inmate/Alien # 18167-074  Unit K1

Federal Correctional Complex - USP2 *Coleman*

P.O. Box 1034

Coleman, FL 33521-1034

(Enter full name of Petitioner,
prison number or alien [A] number, if applicable,
AND address of place of confinement.)

Case: 1:08-cv-00885
Assigned To : Unassigned
Assign. Date : 5/27/2008
Description: Habeas Corpus/2255

vs.

First Respondent:

Harley Lappin,  Director

Federal Bureau of Prisons

Central Office

320 First St., N.W.

Washington, DC 20534-0001

(Enter name and title of each Respondent.
If additional space is required, use the blank
area below and directly to the right.)

Second Respondent:

Fredrick Menifee,  Warden
United States Penitentiary
1000 Air Base Road

P.O. Box 1000
Pollock, LA 71467

Third Respondent:

D.B. Drew,  Warden
Federal Correctional Complex - USP2
P.O. Box 1029
Coleman, FL 33521-1029

Fourth Respondent:

Michael B. Mukasey
United States Attorney General
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001

### ALL APPLICANTS MUST COMPLETE THIS ENTIRE FORM

**RECEIVED**

MAY - 7 2008

Clerk, U.S. District and
Bankruptcy Courts

## ANSWER ALL OF THE FOLLOWING:

1. This petition concerns (check where applicable):

     (a).  ☐   a conviction
     (b).  ☐   a sentence
     (c).  ☒   prison disciplinary action or other action resulting in lost gain time credits
     (d).  ☐   parole
     (e).  ☐   immigration/removal
     (f).  ☐   other (explain): _____

2. Provide the following information regarding the conviction(s) and sentence(s) for which you are presently incarcerated:

     (a). Name(s) and location(s) of court:  U.S. District Court, Eastern District of Tennessee

     (b). Case Number(s):  4:01-CR-26-001

     (c). Charge(s) for which you were convicted:  Attempt to Manufacture

     _____

     _____

     (d). What was your plea?  (Check one)
     (1) Not Guilty       ☐
     (2) Guilty           ☒
     (3) Nolo contendere  ☐

     (e). Did you appeal from the judgment of conviction?        Yes  ☐        No  ☒

3. If you did appeal, answer the following:

     (a) Name of Court:  N/A _____        Case #: _____

     (b) Result: _____

     (c) Date of opinion and mandate (citation, if known): _____

     _____

4. Claims that challenge your conviction or imposition of sentence can only be raised by motion under 28 U.S.C. § 2255 unless the § 2255 motion is inadequate or ineffective to test the legality of your detention.  If any of the grounds raised above challenge your conviction or sentencing:

     (a) Have you filed a motion under 28 U.S.C. § 2255?
          Yes  ☐        No  ☒
     If yes, please provide the case #, where filed, relevant date(s), and the results: ____N/A____

     _____

     _____

     _____

(b). Explain why the remedy under § 2255 was or is inadequate or ineffective:   N/A

_____

_____

_____

_____

5.   Are you currently represented by counsel in this case or in any other court case?

     Yes  ☐      No  ☒
     If yes, please explain: _____

6.   If this case concerns removal proceedings:
     (a)  Date of final order of removal: _____  N/A

     (b)  Did you file an appeal with the Board of Immigration Appeals?   Yes ☐      No ☐

7.   In the spaces below, set forth every ground which supports your claim that you are incarcerated unlawfully.  Briefly summarize the specific facts in support of each ground raised.  Conclusions that are not supported by specific facts are insufficient.  You may attach additional pages if necessary to raise additional grounds or provide additional facts.  Do not cite any law in your statement of facts.

(a).  Ground one:   At the United States Penitentiary in Pollock, Louisiana,

their Special Investigative Services, (SIS), relied on a "drop note"

from an inmate. The "drop note" was a bunch of fabricated lies to get him

locked up.   The Petitioners' Due Process Rights were violated.

     Supporting FACTS (state *briefly* without citing cases or law):   Petitioner was found Guilty

before the prisons Disciplinary Hearing Officer, and sanctioned to a loss

of 20 days Good Conduct Time, and was placed on the Highest Maximum Security

status. Petitioner to this day must check in with staff every two hours. He

is on a High Accountability Watch because of this disciplinary conviction.

                              (please see continuation pages)

_____

Exhaustion:
[1] - Have you presented ground one to the Bureau of Prisons, either through the prison grievance system or other administrative proceeding?
          Yes  XX   No ☐
If yes, please provide the results of the proceeding(s) and the relevant date(s).  Include any appeals:
See Exhibit - A    All records of how Petitioner has attempted to resolve

this matter, and his Exhaustion of Administrative Remedies which are

available to him are attached.

3

**Continuation of Ground 1**

The Disciplinary Hearing Officer (DHO), and the prisons Special Investigative Services (SIS), both relied upon unsupported and factually unreliable information which consisted of a letter or "drop note" with no name or signature of the inmate who authored the writing, therefore it was anonymous with no one to stand behind it.

The Petitioner has repeatedly asked to take a Polygraph Examination to prove his innocence, but each time he has been turned down. The matter has been reviewed by the Federal Bureau of Investigation (FBI), and the FBI determined that the Petitioner had no involvement in the matter they were investigating, and he was cleared by the FBI. The prisons SIS however sought to bring Vindictive Prosecution through the prisons Administrative Disciplinary Policy to wrongfully punish the Petitioner.

Because of the wrongful Administrative Conviction and Sanctions the Petitioners' Release Date has been extended by 20 days. He will not be able to go to a Halfway House or other Community Correctional Center as he otherwise would have been eligible to do the last 6 months of his sentence.

He has lost his job with UNICOR - Federal Prison Industries, where he did make $200.00 (and sometimes more), each month. He cannot return to UNICOR because of the High Accountability Status, therefore he is unable to save money in preparation of his release.

The Petitioner was also removed from the United States Penitentiary in Pollock, Louisiana, and brought to the Federal Correctional Complex - USP2 in Coleman, Florida, under a "Disciplinary Transfer" imposed by the Disciplinary Hearing Officer.

4.

Inmate **Richard McNair** escaped from the United States Penitentiary in Pollock, Louisiana on April 5, 2006. The Petitioner had no knowledge that McNair was going to escape, nor did he help him in any way.

The only reason that the Petitioners' name was ever brought up in this whole mess to begin with was because of the anonymous drop note previously mentioned. The note allegedly implicated the Petitioner with the escape, and further alleged that the Petitioner had been paid for his assistance by McNair, which was not true.

The prisons SIS did not have a clue who might have sent the note, as it could have came from any of the 1500 inmates at USP Pollock. It is a well known fact when an inmate gets mad at another inmate, for whatever reason, or if they want to get someone locked up they will drop a note on them in the prisons mailbox, and from there it is retrieved by prison staff and sent to SIS. The SIS never did find out who dropped the note, but they still took their word anyway.

Before the Petitioner transferred from USP Pollock he was told by several inmates that an inmate named **Kenneth Stanford** was the one who wrote the drop note and placed it in the mailbox for SIS.
The Petitioner for the life of him could not figure out why anyone would do such a thing to him, because he always got along with everybody.
The inmates that told the Petitioner that Kenneth Stanford confessed to his cell mate that he was the one who wrote the note. His conscience started bothering him due to the fact the note had gotten the Petitioner in so much trouble. Stanford had written the note only because he had owed the Petitioner money and could not pay him. It is believed that Stanford only wanted to get the Petitioner locked up until he was able to come up with the money he needed to pay the Petitioner.

The Petitioner tried to tell this to SIS, but it was too late. The SIS looked at it as a done deal and the Petitioner was to be transferred. SIS needed to charge somebody because there were alot of staff who were worried about losing their jobs over the escape.

The Petitioner wishes to explain why that Kenneth Stanford owed him money. The amount owed was $720.00 for Tobacco the Petitioner had sold to him on credit. The prison had put out a Memorandum saying that they were going to stop selling all tobacco products from the commissary and that the facility would be a non smoking facility. There was a 1 month grace period in which to smoke or get rid of any tobacco which inmates already had in their possession. The Petitioner had purchased large amounts of Tobacco and stock-piled it to sell at a future time. There was not much tobacco products left, and the price had went up, which was self regulated by inmates on a supply and demand principle.

Inmate Stanford had came to the Petitioner and offered $100.00 for a big bag of tobacco. He told Petitioner that he would like to buy 2 bags, but he said it would be a few weeks or so before that he could pay the Petitioner. He said he would have his sister mail the money to him. He said that his sister takes care of his money for him. The Petitioner knew that Stanford was good at paying his bills and had previously done business with him, and he always paid, so the Petitioner let Stanford have what tobacco that was left. Some of the bags were for $85.00, and some for $75.00. Additionally, Stanford still owed a little from a previous deal-ing, so all together it was agreed that Stanford owed the Petitioner $720.00.

The Petitioner is from Tennessee, and he had given his home address to inmate Stanford for the purpose of having the $720.00 sent to his home address.

6.

In order that this may be more fully explained the Petitioner
supplies an <u>Affidavit of Facts</u> for his first claim of Due Process Rights
Violation.

I want to <u>apologize</u> to the Court
for this being so long and drawn out
in detail but it is the only way
I can explain the real truth about
everything and Proof I am innocent.
It is very important that I bring
out the Facts and the truth because
it has been <u>over looked</u> and swept
under the rug By the Regional Counsel's
office SERO B.O.P "Remedy appeal" and also
the Central office administrative Remedy
section of the Federal Bureau of Prisons

W.T 'Bill' Dunworthy

7.

THE STATE OF FLORIDA          §

                              §          KNOW ALL PERSONS BY THESE PRESENTS:

COUNTY OF SUMTER              §


### AFFIDAVIT OF FACT BY WILLIAM T. DUNWOODY


My name is William Thatcher "Bill" Dunwoody, and I am over the age of 21, am legally competent to make this affidavit and do so of my own free will without any promises or assurances.

I need to explain about the tobacco and how Kenneth Stanford owed me the money which will explain the "drop note." The prison put a memo out saying they were going to stop smoking and they were going to stop selling all tobacco products. They also said they were going to give everybody one month to smoke or get rid of the tobacco the inmates still had.

There was not much tobacco left and the price had went up. Kenneth "Ken" Stanford came to me and offered me $100.00 for a big bag of tobacco. He told me he would like to buy 2 bags, but he said it would be a few weeks or so before he could pay me. He said he would have his sister mail it to me. He told me his sister takes care of his money for him. I knew he paid his bills because I had let him borrow postage stamps before and he always paid me back. (In prison inmates use stamps as money).

I ended up letting Ken have what tobacco I had left. I let him have some of the bags for $85.00 and $75.00. He also owed me for some stamps. All together he owed me $720.00. I gave him my Tennessee address and he said he would have his sister send it to me.

Now before I go any further I want to bring this to everybody's attention. This is where the "Tennessee" part came in the "drop note" because

08  0885

FILED

MAY 27 2008

Clerk, U.S. District and
Bankruptcy Courts

8.

he (Kenneth Stanford) had my Tennessee address.

But Ken came to me a week or so later and told me the $720.00 his sister sent to my Tennessee address came back. He said his sister must have written the wrong box number down. I could tell he was lying because everybody knows my family at the Post Office as it is a small town and we are the only Dunwoody family there. He asked me if I wanted him to try it again and I told him to send it to my account at the prison.

I gave him my prison number 18167-074. He already had my name and the prison address. So now he has my Tennessee address, and he has my prison ID number.

He told me his sister had sent the money to my account at the prison. Several days later he asked me to check my account to see if the money had got there. I checked it and the money had not got there yet.

Around that time is when he wrote his letter or "drop note" making up all them lies about Tennessee and information and cooperation and receiving money in my account from McNair. Plus Kenneth Stanford knew I worked in UNICOR and that is where Inmate McNair had escaped from, but I did not work in the same area or section that McNair did.

Richard McNair escaped on 04/05/06 and it says in my DHO Report paragraph 6F, that a "drop note" of unknown origin or author was received in the lieutenants office on 04/10/06 which referenced me. The note stated I had helped McNair escape. Further it stated that I had been paid to help McNair obtain information to enable him to pull off his escape, and to perhaps provide a contact in Tennessee. The note further claimed that I was involved in a plot with McNair involving the sale of large amounts of tobacco.

The truth came out that yes I was selling tobacco, but that was strictly my hussle. I was not involved with McNair, I sold tobacco on my own. Kenneth Stanford tried to make it appear that there was a connection between me and McNair when there wasn't any.

Kenneth Stanford said in his note that money had been sent to my account, trying to produce the illusion that there was a connection between McNair and myself. He said in his drop note that I had recently received several hundred dollars into my account. The money he was talking about was the $720.00 from Stanford, which was sent to me, but I never got to have use of it, because as soon as it was posted to my inmate account the prison's Special Investigative Services seized it, and expunged all record of the money ever being credited to my account. They either gave it back to Kenneth Stanford or they kept it for their selves.

Before this transaction, the only other deposit for tobacco sales was from February 27, 2006 in the amount of $125.00. The DHO officer is confused about which transaction was which. It is totally ridiculous for anyone to even try to connect my business dealings with the McNair escape. McNair escaped on April 5, 2006. My business dealings with other inmates had nothing whatsoever to do with McNair escaping.

I will now explain to you how they saw it so convenient for them to get the word "tobacco" mixed up with McNair and me.

The truth came out that McNair never had any tobacco. The DHO and SIS tried to say it was a plot McNair came up with. It was a shoddy and cheap shot they took at me at their convenience and I intend to prove it all.

I cut this out from my DHO report. This is exactly what Paragraph 6F says: *This is from Page 3 of DHO report*

**6F**

A "drop note" (unknown origin or author) was received in the Lieutenant's Office on April 10, 2006 which referenced you. The note stated that you had helped McNair escape. Further stated was the information that you had been paid to help him and to get information, perhaps to provide a contact in Tennessee. Money was said to have been sent to your account for these services. You had recently received several hundred dollars into your account.

This is bizarre and plum preposterous for the SIS to even suggest such a thing because they knew the $720.00 came from Kenneth Stanford and they

knew it was for tobacco I sold him.

They knew this money did not come from McNair. McNair is definitely not connected to me nor with my dealings with Kenneth Stanford.

The DHO officer did not have a clue what was going on. He tried to connect this money which Kenneth Stanford had sent me for tobacco in all that crap about Richard McNair.

The SIS knows for a fact and I do mean absolutely 100% positive that it was Kenneth Stanford who sent me this money for tobacco, but yet they either instruct the DHO to link it with McNair in some crazy concocted scheme or chain of events, or makes the DHO believe that the money was somehow payment to me for helping McNair escape and possibly hook up with a contact in Tennessee. The DHO then said in his report that the money had been sent to my account for these services.

Attached as an Exhibit I am sending a copy of the my requests under the Freedom of Information / Privacy Acts, and the responses I got back when I asked for a copy of the "drop note" to be disclosed to me so I could use it as an exhibit in this case. My FOI/PA request for disclosure of this document was denied.

The SIS knows the "drop note" was all a bunch of lies and it did not have anybody's signature on it. I believe the government's counsel should be compelled to produce this item for the court's review.

The prison's SIS has even stamped the drop note as being FOIA Exempt to keep anybody from seeing it. I truly hope that the Court will compel the government to produce the drop note and then you will see what I have said is 100 % correct.

As God is my witness I promise you I did not have anything to do with McNair escaping.

11.

SPECIAL EXHIBIT 

Your Honor, attached is a copy of the paper from my DHO Report. I sent this paper along with a letter asking for the "drop note" to be provided and disclosed to me.

As you can see I told them I needed the "drop note" for a federal court matter. I finally received a copy of my Incident Report, but they will not give me a copy of the "drop note."

This is unacceptable to me. I would like to ask the court to please intervene in this, and force them to disclose a copy of the "drop note." I feel it is important for the court to review the note, as it is a crucial exhibit.

It is important to examine the handwriting and attempt to identify the author. It was not signed, so that makes it pretty hard to question a nobody. I have it on good authority that inmate Keneth Stanford was the one who wrote the note.

Also attached is the agency reply to my inquiry.

Sincerely,

William T. "Bill" Dunwoody

October 31, 2007

Director
Federal Bureau of Prisons
Central Office
320 First St., NW  Room 841
Washington, DC 20534

RE: Freedom of Information / Privacy Act Request - 5 USC § 552 and § 552a

Director:

I am an inmate currently confined at the Federal Correctional Complex United States Penitentiary #2, at Coleman, Florida. Please consider this letter as my request for disclosure of information from my central file.

Specifically what I am requesting is all information concerning the disciplinary action involving Incident Report number 1488526, which was issued on 07/12/06.

I am in need of a copy of the actual Incident Report, copies of the investigating officers statement(s), and reports prepared by staff. Additionally, the DHO's report states that a "DROP NOTE" was received in the Lieutenant's Office on April 10th. 2006 implicating me in the prohibited act charged. I would like to receive a copy of this "DROP NOTE" and any other similar information or statements which pertain to me.

It has recently came to my attention that the escaped inmate Richard McNair has been captured in Canada. This information was told to me by other inmates who claimed they saw this on the TV news over the weekend. As of yet prison officials have not confirmed this for me, but I believe it to be true.

It is my belief that the investigation has now been concluded since he has been captured. I do not see any reason why disclosure of the requested information should not be disclosed to me. I am requesting this information for a federal court matter, and intend to use this information as Exhibits in my case. This will be filed as a 28 USC § 2241 proceeding to attack prison discipline.

Please see copy of attached DHO report which verifies this information exists. I trust that you will provide this information to me for the purpose herein expressed.

Thank you for your assistance in this matter.

Respectfully,  *Bill Dunwoody*

Bill Dunwoody # 18167-074  Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034

08 0885

**FILED**

MAY 2 7 2008

Clerk, U.S. District and

DISCIPLINE HEARING OFFICER REPORT    FEDERAL BUREAU OF PRISONS
U.S. DEPARTMENT OF JUSTICE

procedures occurred sometime around a week before McNair escaped.  You are known to have
been selling tobacco and had been seen in McNair's work site previously.  Your expertise
in UNICOR is palletizing items for transport.

It was common knowledge to inmates involved that pallets had been sent to the warehouse
in lieu of being "staged" in the UNICOR trailer within the Rear Gate. Several inmates
had knowledge that McNair had an alleged plan to hide tobacco on the pallets so that
storage of the tobacco could occur at the outside warehouse until a later date.  You
have admitted dealing in sales of tobacco. Knowledge of the alleged plan indicates
complicity in the plot to smuggle tobacco out and then back inside the institution,
which was actually an escape plot on McNair's part.

A "drop note" (unknown origin or author) was received in the Lieutenant's Office on April
10, 2006 which referenced you.  The note stated that you had helped McNair escape.
Further stated was the information that you had been paid to help him and to get
information, perhaps to provide a contact in Tennessee.  Money was said to have been
sent to your account for these services.  You had recently received several hundred
dollars into your account.

You willingly performed actions which contributed to McNair's escape from this
institution.

Accordingly, it is the finding of the DHO that you committed the prohibited act as
charged.

## VI. SANCTION OR ACTION TAKEN

Disallow Good Conduct Time: 20 days (mitigating circumstances applied due to probable
"fringe" involvement)
Disciplinary Segregation: 60 days
Loss of Privileges: Visits-6 months with Commissary-6 months suspended pending clear
conduct for 180 days
RECOMMEND Disciplinary Transfer due to involvement in aiding escape

## VII. REASON FOR SANCTION OR ACTION TAKEN

You were sanctioned with Disallowance of Good Conduct Time, Disciplinary Segregation and
loss of privileges as punishment. The action on the part of any inmate to escape or aid
an escape from any facility creates an inability of the Bureau of Prisons and assigned
institutions to maintain proper inmate accountability at all times.  Inmates on escape
status present themselves as a danger to society and will commit other crimes to
facilitate their continued "freedom."

The sanctions imposed by the DHO are to let you know that you, and you alone, are
responsible for your actions.

*I need a Copy of this "drop note" It states origin or author unknown so nobody signed their name. They should not be any Problem with me having this*

Page 3 of 4

*I need this for a Federal Court Matter. The "drop note" or letter was all lies to start with. There's no truth to any of this. An inmate made this story up so I would get locked up.*

U.S. Department of Justice

Federal Bureau of Prisons

*Southeast Regional Office*

Building 2000
*3800 Camp Creek Parkway, SW*
*Atlanta, Georgia  30331-6226*

*This is the reply they sent me.*

December 21, 2007

Bill Dunwoody
Reg. No. 18167-074
FCC Coleman - USP II
P.O. Box 1034
Coleman, FL 33521-1034

RE:   Freedom of Information/Privacy Act Request No. 2008-01414

Dear Mr. Dunwoody:

This is in response to your request for copies of Federal Bureau of Prisons records relating to Incident Report number 1488526, which was issued on July 12, 2006.  We have located four (4) pages of documents responsive to your request.

In accordance with the Freedom of Information Act, the Privacy Act, and Department of Justice regulations concerning the release of records, we have determined that all four (4) pages are releasable to you in their entirety.  The investigative reports and the alleged "drop note" are being withheld in full pursuant to Title 5, United States Code, Section 552(b)(7)(E), which pertains to records or information compiled for law enforcement purpose, the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions.

Pursuant to Title 28, Code of Federal Regulations § 16.9, the information withheld may be appealed to the Attorney General by filing a written appeal within sixty (60) days of the receipt of this letter. The appeal should be addressed to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, 1425 New York Avenue, N.W., Ste. 11050, Washington, D.C., 20530-0001. Both the envelope and the letter of appeal itself must be clearly marked: "Freedom of Information Act Appeal."

Sincerely,

Carlos J. Martinez

Carlos Martinez
Supervisory Attorney Advisor

*Your Honor would the Court Please ask for a Copy of the "drop Note" I want the Court to see how I was set up. Thank you William Thatcher Dunwoody*

enclosures



**U.S. Department of Justice**

Federal Bureau of Prisons

*South Central Regional Office*

---

*4211 Cedar Springs Road, Suite 300*
*Dallas, Texas 75219*

NOV 2 8 2006

Bill Dunwoody
Register Number 18167-074
Federal Correctional Complex USP2
Post Office Box 1034
Coleman, Florida 33521-1034

Re:  Freedom of Information Request Number 2007-01378

Dear Mr. Dunwoody:

This is in response to your recent request for a copy of specific
Federal Bureau of Prisons records pertaining to you.  You requested
a copy of investigative records related to your placement in
administrative detention on April 12, 2006.

The incident that you have referenced continues to be investigated.
Therefore, any information pertaining to the incident is exempt
from disclosure at this time pursuant to  Title 5, United States
Code, Section 552(b)(7)(A).  Premature release of the information
could interfere with law enforcement proceedings, including this
pending investigation.  You may make a request at a later date and,
if the investigation has been concluded, the relevant documents
will be reviewed upon receipt of your request.

Pursuant to Title 28, Code of Federal Regulations, Section 16.9,
this action may be appealed to the Attorney General within sixty
(60) days of the date of this letter by writing to the Office of
Information and Privacy, Department of Justice, 1425 New York
Avenue, Suite 11050, Washington, DC  20530-0001.  Please ensure
that the envelope and request are clearly marked "FOI Request
Appeal."

Sincerely,

Michael D. Hood
Regional Counsel

lc

**SENSITIVE - LIMITED OFFICIAL USE**

**U.S. Departm    of Justice**

Federal Bureau of Prisons



JUN 1 3 2007                              *Washington, DC 20534*

Bill Dunwoody                            For Further Inquiry Contact:
Register Number 18167-074                Federal Bureau of Prisons
Unit K1 USP II                           320 First Street. N.W.
P.O. Box 1034                            Room 841, HOLC Building
Coleman, FL 33521-1034                   Washington, D.C. 20534
                                         Attn: FOIA/Privacy Act Office

RE:  Request for Information, FOIA Request No. 2007-04576

Dear Mrs. Dunwoody,

     This is in response to your Freedom of Information Act
request for information pertaining to an Office of Internal
Affairs investigation.

     Matters pertaining to the investigation referenced in your
correspondence are still ongoing and remain pending.  Records
indicate this matter is currently being investigated by the
Department of Justice, Office of the Inspector General.  Pursuant
to 5 U.S.C. §552(b)(7)(A), we are unable to provide you with any
information at this time.

     Exemption (b)(7)(A) provides for the withholding of
information compiled for law enforcement purposes which could
reasonably be expected to interfere with enforcement proceedings.

     Pursuant to 28 C.F.R. §16.45, if you are dissatisfied with
this response, you may appeal to the Attorney General by filing a
written appeal within 60 days of the date of this letter.  The
appeal should be addressed to the Office of Information and
Privacy, U.S. Department of Justice, 1425 New York Ave, N.W.,
Suite 11050, Washington, D.C. 20530-0001.  Both the envelope and
appeal letter should be marked "Freedom of Information Act
Appeal."

     I trust this has been responsive to your request.  If you
have any questions or concerns please contact Wm E. Baumgartel,
Paralegal Specialist.

                              Sincerely,

                              Wanda M. Hunt
                              Chief, FOIA/PA Section

cc: File



**U.S. Department of Justice**

Federal Bureau of Investigation

In Reply, Please Refer to
File No. 90C-NO-70900

300 Jackson Street
Alexandria, Louisiana 71301
318-443-5097
February 12, 2007

William T. Dunwoody
Unit K1    #18167-074
Federal Correctional Complex - USP2
PO Box 1034
Coleman, FL 33521-1034

Dear Mr. Dunwoody:

      I have received and read your letters dated 12/13/2006 and 1/21/2007.  Although the United States Marshal's Service continues to pursue Richard Lee McNair, the FBI investigation of the escape is now closed.  As such, we will not provide you with an opportunity to take a polygraph examination.

      The complaint that you raise in your letters is that you were "severely disciplined by the prison system and transferred to another facility over the matter."  Your complaint is of an administrative nature and should be handled by the Bureau of Prisons.  The FBI has no jurisdiction over Bureau of Prison administrative punishments.

      Sincerely,

James Bernazzani
Special Agent in Charge

By Ricardo A. Martinez
Ricardo A. Martinez
Supervisory Senior Resident Agent

*As you can tell I wrote the regional Counsel showing proof the F.B.I had investigated me in this escape and the F.B.I has Closed their Case. which I was not Charged.*

March 12, 2007

Michael D. Hood, Regional Counsel
Federal Bureau of Prisons
South Central Regional Office
4211 Cedar Springs Rd., Suite 300
Dallas, TX 75219

RE: FOI/PA Request #2007-01378

Dear Mr. Hood,

        I have just received confirmation from the Federal Bureau of
Investigation that the investigation has been ▮▮▮▮▮ therefore the exemption
claimed under 5 USC § 552(b) (7)(A), nolonger applies. This has been confirmed
by Richard A. Martinez, Supervisory Senior Resident Agent at the FBI's Field
Office in Alexandria, Louisiana.

        Enclosed I am providing you with a copy of the letter from Agent
Martinez for your review. Accordingly I hope you will now process my FOI/PA
Request for disclosure of records and investigative files, in as much that
they pertain to me, or make any mention of my name.

        Should you have any questions, please let me know.

Sincerely,

Bill

William T. (Bill) Dunwoody
18167-074  Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034

RECEIVED
MAR 2 0 2007

*This is from the DHO Report*

As you can see I have tried to obtain a copy of the "drop note" so I could send it to you, but they will not let me have it. They said the release of it would disclose techniques and procedures for law enforcement investigations or prosecutions.

This reason would not pertain to me because from what I read in the DHO report, the inmate that made all of the lies up in the "drop note" did not sign his name.

← *This is from page 3 of DHO report*

A "drop note" (unknown origin or author) was received in the Lieutenant's Office on April 10, 2006 which referenced you. The note stated that you had helped McNair escape. Further stated was the information that you had been paid to help him and to get information, perhaps to provide a contact in Tennessee. Money was said to have been sent to your account for these services. You had recently received several hundred dollars into your account.

Besides I already know who wrote it and why he made everything up. It is plain and simple -- He owed me money, $720.00, and when I told him the money had never been put on my account he panicked because he knew his sister had mailed it to me and it had plenty of time to get there.

All I can figure out is he wanted me off the compound and he figured if he made up a big story about me helping that guy escape they would lock me up, and which they did.

He may have figured he would get the $720.00 back. Keneth Stanford told SIS Lt. Garcia he sent me the $720.00 and it was for tobacco. The SIS knew the money did not have anything to do with some guy escaping.

Would you please subpoena the "drop note" and read it? I know for a fact he made the whole story up. All lies. He even told some inmates he made the story up.

Kenneth "Ken" Stanford was the one who wrote the "drop note" on me. He knew I lived in Tennessee, plus he had my Tennessee address because I had given it to him. He knew the money was on its way to my account. But the SIS knew this money came from Kenneth Stanford and they knew it was for tobacco I sold him because I told them and Kenneth did too. Plus they ran a check on where the money came from and it came from Kenneth Stanford where his family members sent it. This did not have any connection to Richard McNair or anything to do with him escaping, but they tried to make it sound like it did.

I will tell you how they knew for a fact this money came from Kenneth Stanford. On the day the SIS received the "drop note," they called for me to come to the SIS office. When I got there the SIS officer Garcia asked me where the $720.00 came from. He asked me who sent it and what was it for?

I told him I sold Kenneth Stanford them bags of tobacco and that Kenneth had his sister send me the money. He asked me if I knew the guy that escaped "Richard McNair" and I told him "no I did not know him." I told him I have seen him at work in UNICOR, but I did not know his name. I haven't spoken more than 30 or 40 words to McNair in my whole life. I did some work for the Supervisor who was over McNair one time, and McNair was there. But my job is in another part of UNICOR. One time my boss was off for a week or so, and some of us sat at the table where McNair worked. I probably didn't speak to him 30 or 40 words as a figure of speech. After he escaped I saw his face on TV and I knew who he was then. I never ran around with him or associated with him on the compound. In fact I have heard he kept to himself. He did not strike me as a very friendly person. I know I am one hundred percent positive he never said nothing to me about escaping. I never even heard there was going to be an escape and to be honest I don't think McNair told anybody about his plan to escape because if he had told somebody then word would have leaked out and somebody would have told the prison officers.

It is a known fact that all prisons are full of informants.

12.

Richard McNair has a history of escaping and from what I heard he always went by himself. He escaped from Jail and State Prison. That is why they moved him to Federal Prison. So with that said, I don't think anybody knew McNair was planning an escape.

Anyway I told SIS officer Garcia I sold the tobacco to "Ken" which he already knew before he called me over to the SIS office. He told me he knew. He talked to "Ken" and Ken told him he bought the tobacco from me and had his sister send me the money. SIS Garcia told us we could go so we left and went on about our daily routine.

The next day April 12, 2006 they came and got me and took me to the Special Housing Unit (SHU) and locked me up under investigation. The next morning on April 13, 2006 they took me to a room and asked me some questions. Seated in this room was a man from the Office of the Inspector General - United States Department of Justice, an agent from the Federal Bureau of Investigation, a U.S. Marshal, and SIS Townsend.

I told them they had the wrong guy. I told them I did not have anything to do with that McNair guy escaping. I told them I didn't even know anybody was planning to escape. I told them I would be more than glad to take a polygraph test to prove I was telling the truth and I remember the Inspector General telling me he might just give me a polygraph test, but he never did. He was more interested in threatening me with 5 years, saying I could have helped the guy escape. I did not know about the "drop note" at that point in time. I could not figure out why they wanted me because I did not know anything about the escape. They were relying on the drop note.

The Inspector General guy told me I was going to get 5 years, but he told me if I would go back out on the compound and work as an undercover informant for him he would give me a time cut on my sentence and send me to a Low Security Prison. He told me there was alot of drama at the USP prisons.

*EXHIBIT-B*

*I received this copy
from the FBI through
the FOI/PA*

90C-NO-70900
KAP:kap

b6
b7C

1

The following investigation was conducted by SA [          ]
[                    ] on April 13, 2006, in Pollock, Louisiana:

SA [              ] met with SA [          ] Office of
the Inspector General, United States Department of Justice, at
the United States Penitentiary (USP) Pollock, Louisiana, to
discuss the investigation into [                    ]
escape from USP Pollock.  SA [        ] stated his focus is on
identifying any USP Pollock staff that may have assisted, either
knowingly or unknowingly, in [        ] escape.  SA [        ]
stated that the FBI's investigative focus, in order to avoid a
duplication of effort, should be on identifying USP Pollock
inmates that may have assisted with [            ] escape.

SA [        ] conducted several interviews of USP Pollock
inmates in order to develop information regarding the involvement
of USP Pollock staff in the escape of [        ]  SA [          ] was
in attendance during SA [        ] interviews of the following USP
Pollock inmates:

WILLIAM T. "BILL" DUNWOODY - inmate #18167-074

*This Statement is from FBI special agent. He was
Present with SA from office of Inspector General,
US Marshal and SIS Townsend. This is when the
Inspector General told me I was looking at 5 years
and tried to pressure me to work undercover on the
Compound at USP Pollock LA. I received this Copy
from my F.O.I.A request. "William T. "Bill" Dunwoody"*

*4/24/06*

I knew I was innocent and I did not want to get involved in any of this mess, plus I would have been putting my life in great danger. I told him I did not want to do it.

He said, Mr. Dunwoody, there is a wrong side and a right side and the government is always right.

He said, now Mr. Dunwoody, do you want to rethink my offer? And I said No.

I told him again, I would like to take a polygraph test to prove I am innocent.

The FBI man just asked me one question. They knew I was innocent.

The SIS at USP Pollock did not want the truth to come out. That being, that McNair escaped by himself right under their noses.

They figured it would look bad on them so they wanted it to look like he had several people help him so they wrote several inmates Incident Reports and I just happened to be one of the unlucky ones.

I have been told by alot of staff that they did not think I had anything to do with McNair escaping. One high up staff member told me he knew I did not have anything to do with that conspiracy in Louisiana. I asked him why he thought that and he said Dunwoody, if you had been in on that, the FBI would have you strung up down there in Louisiana. He is exactly correct. The SIS ended up writing me this incident report "shot" for aiding escape because they were mad at me because I did not work undercover for them.

The FBI investigated me and the Inspector General did too. I told both of them that I was willing to take a polygraph test, but they did not see any use in it. They knew I was not guilty of being a part of that escape.

I asked the Warden to get me a polygraph test. And I still would be more than happy to take a polygraph test now because I know I am innocent, because if I had any part in this escape the FBI would have hung me out to dry.

The FBI told the Warden they did not want me. They were not interested in me and they weren't going to charge me with anything.

14.

It was the prison's SIS who had turned me in to the FBI to be investigated. After the FBI told the prison [Warden] they had investigated me and they weren't going to charge me with anything I was supposed to have been let out of the SHU and put back on the compound, but the SIS was mad at me because I did not work undercover as an informant for them, so they retaliated by writing me up falsely claiming that I aided the escape and the DHO had to go along with the SIS and find me guilty.

They railroaded an innocent man and they knew I was innocent. The Warden told me he was waiting for a written statement from the FBI telling him I was not being charged. He had spoken with the FBI on the telephone and he was waiting on something in writing.

Warden Fredrick Menifee told me I would go back on the compound as soon as he got it in writing from the FBI. There was no evidence to charge me with and the FBI did not see any reason to give me a polygraph test.

The DHO Examiner Melton White has blown this totally out of proportion. Please keep in mind that I lived up in the mountains of Tennessee, which is about a 13 or 14 hour drive to Pollock, Louisiana. It is a well known fact that when McNair escaped he went to Canada. In fact it was on the TV news and radio. He was also caught in Canada. When he escaped it was on the news that he was on foot for along time. The news said he caught a train and stole several cars on his way to Canada. Please just use some common sense and tell me how this DHO examiner could possibly figure he could connect a "drop note" with no signed name from the person who wrote it into all of this, not to mention use the money Kenneth Stanford sent me for tobacco, and then try to connect it all with Tennessee. It is plain and simple, there is no connection. Let's be realistic. Where in Gods name does this DHO officer see "information and cooperation at? This guy McNair

can go to the prison library and look up anywhere he wants to on a map and how

to get there. Then he says perhaps a contact in Tennessee. I can't figure out

this "contact in Tennessee."

When McNair escaped he was on foot and the TV news said he stayed on foot until he

stole a car or several cars. The TV and radio news said he was suppost to have

caught a train. From seeing himself on the news McNair knew to stay away from

any trains, so he stole several cars going toward Canada. Plus the SIS said McNair

had been learning how to speak Russian.

This is plum hilarious because Tennessee is on the other side of the map from

Canada, and a very long way from Pollock, Louisiana.

The DHO officer knew I was innocent, but he told me in so many words

that his hands were tied and he had to go along with the SIS.

He did tell me strongly suggests that I file my Appeal on the disciplinary action.

He told me he had to find me guilty, but he was going to take it real light on me.

I asked him if I could take a polygraph test and he said No, because this was not

a criminal case. I asked him why I could not have a jury trial and he said because

the FBI did not see the proof to charge me.

I said, Mr. White, you know I am not guilty and he just dropped his head.

He said, Mr. Dunwoody, I am going to work with you on this till you can file your

appeal. He said I am not going to take your telephone. Instead of taking 41 days

of my Good Conduct Time he told me he was only going to take 20 days. He said by

law that is the least he can take.

He told me this is a high profile case and he has got to take something. (Meaning

he has to sanction me).

He said you will be ok with what I am gonna do because I can tell by looking at

your record that you have never had any shots (disciplinary actions) before, so he

let me keep my commissary privileges and vists, but he suspended them pending clear

conduct for 6 months. He was right, I have never had a disciplinary action until

16.

*EXHIBIT-C*

```
   CLP53        *         INMATE DISCIPLINE DATA          *    10-30-2007
PAGE 001 OF 001 *   CHRONOLOGICAL DISCIPLINARY RECORD      *    13:38:24

REGISTER NO.: 18167-074 NAME..: DUNWOODY, BILL
FUNCTION...: PRT        FORMAT: CHRONO    LIMIT TO     MOS PRIOR TO 10-30-2007

-----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1488526 - SANCTIONED INCIDENT DATE/TIME: 04-05-2006 0830
DHO HEARING DATE/TIME: 09-01-2006 1029
FACL/CHAIRPERSON.....: POL/WHITE M
APPEAL CASE NUMBER(S): 429889
REPORT REMARKS.......: INMATE DENIED HAVING ANY PART IN AIDING ESCAPE OF
                       ANOTHER WHEN FOUND TO HAVE RECIEVED MONEY FOR INFO/COOP
    102A ESCAPING-SECURE CUST/VIOLENCE - FREQ: 1
        DIS GCT       / 20 DAYS / CS
        COMP:010 LAW:P  MITIGATING CIRCUMSTANCES APPLIED DUE TO "FRINGE"
                        INVOLVEMENT
        DS          / 60 DAYS / CS
        COMP:    LAW:    CONSIDERATION OF TIME IN AD
        LP COMM     / 6 MONTHS / CS / SUSPENDED 180 DAYS
        COMP:    LAW:
        LP VISIT    / 6 MONTHS / CS
        COMP:    LAW:    LOSS OF VISITS THRU 3-1-2007
        TRANSFER    / CS
        COMP:    LAW:    RECOMMEND DISCIPLINARY TRANSFER BASED UPON AIDING
                        ESCPAE OF ANOTHER
```



*Report Remarks the DHO Wrote*

```
  G0005     TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

This right here is enough proof to show the DHO knew down deep I was not guilty because he did everything he could to take it easy on me. His hands were tied and he had to find me guilty. He told me he was going to work with me.

now.

      This right here is enough to draw the picture that the DHO officer deep down did not think I was guilty because he did not take what is always taken when people are found guilty of such a high offense.

If he really thought I was guilty he would have taken 41 days of my Good Conduct Time, and sanction me to a loss of all privileges for 1 or 2 years.

      I herein certify that my statements are true and correct and sworn to under penalty of perjury 28 USC § 1746.

      Signed this _13th_ day of March, 2008.


                  William Thatcher "Bill" Dunwoody


SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public, in and for the county of Sumter, state of Florida, on this _13th_ day of March, 2008.


_____
NOTARY PUBLIC – STATE OF FLORIDA

_April 2, 2010_____
My Commission Expires

NOTARY PUBLIC-STATE OF FLORIDA
David J. Kent
Commission # DD535554
Expires: APR. 02, 2010
Bonded Thru Atlantic Bonding Co., Inc.

[2]-(Answer only if you are challenging an issue related to removal (immigration) proceedings) - Did you present ground one to the Board of Immigration Appeals?        Yes ☐        No ☐
If yes, please provide the results of the proceeding(s) and the relevant date(s). _____

(b).  Ground two: ___ Abuse of the prison disciplinary policy. Incident Report
issued in Bad Faith.

Supporting FACTS (state *briefly* without citing cases or law): ___ See attached continuation
pages.

Exhaustion:

[1] - Have you presented ground two to the Bureau of Prisons, either through the prison grievance system or other administrative proceeding?
        Yes XX    No ☐
If yes, please provide the results of the proceeding(s) and the relevant date(s).  Include any appeals:
See Attached Exhibits.

[2]-(Answer only if you are challenging an issue related to removal (immigration) proceedings) - Did you present ground two to the Board of Immigration Appeals?        Yes ☐        No ☐

If yes, please provide the results of the proceeding(s) and the relevant date(s). __N/A_____

(c).  Ground three: ___ Falsifying Government Reports / Documents to knowingly
and intentionally subject an innocent person to wrongful disciplinary
action and criminal investigation.

XX
18.

**Continuation of Ground 2**

Once again the DHO Examiner has tried to tie the Petitioner in with McNair all because the Petitioner had two packs of cigarettes in a little box in his work area.

The prison SIS conducted an overall search of the UNICOR area of the prison several weeks prior to Richard McNair escaping and found tobacco all over UNICOR. The biggest majority of inmates had some tobacco hid in or around their work area. The Petitioner admits that the 2 packs of cigarettes did belong to him. These 2 packs of cigarettes were for the Petitioners personal use. They did not belong to any other inmate, nor did they belong to inmate Richard McNair.

It was normal and customary for inmates to put tobacco back to later enjoy at a future date. Later on the prison SIS would say that they never found any tobacco in McNairs area, which makes sense because they said McNair never actually had any tobacco to begin with. It was all a plot McNair dreamed up.

*This was Cut out of DHO report on Page 2*

You were found to have possessed tobacco in your area a couple of weeks before the escape. You admitted selling tobacco to other inmates for a profit. You have received several hundred dollars into your account to which a part of that amount was sent for selling tobacco to others.

The DHO continues to attempt to tangle the Petitioner up in all of this because the Petitioner sold tobacco to two inmates previously, but he never sold tobacco to McNair.

The DHO Examiner should stop and think about it. Why would McNair want any tobacco? All McNair had on his mind was escaping.

The DHO Examiner was being deceptive when he stated that the Petitioner sold some tobacco to other inmates, leaving the assumption or wrongfully implying that the Petitioner had sold tobacco to McNair, knowing good and

19.

well that the Petitioner did not sell McNair any tobacco. In fact the Petitioner never had any kind of dealings with McNair.

Petitioner admits that he sold Kenneth Stanford tobacco and he admits to selling an inmate who goes by the nick name "Click" five packs of Newport Cigarettes (Menthols) for $125.00.

Click broke them down and sold single cigarettes for 10 stamps a piece, which is $3.00 worth. He got $60.00 a pack, making a profit of $35.00 on each pack.

The point the Petitioner is trying to make is that none of this had anything what so ever to do with McNair. McNair was not even in the picture anywhere.

The DHO says that the Petitioner received several hundred dollars into his account which the DHO claims part of that amount was sent for selling tobacco to others. To prove the source of the deposits to Petitioners account he is providing a copy of his Inmate Trust Fund Account Statement activity for the whole year of 2006. The transaction details are Highlighted and shows a deposit of $125.00 from Western Union on 02/27/06.

The $720.00 that Kenneth Stanford had his sister send is not listed because SIS had it purged from the record. Petitioner does not know the whereabouts of the $720.00.

From his memory of the events, the Petitioner recalls SIS officer Garcia calling Kenneth Stanford and himself to the SIS office and asking about the $720.00 on or about 04/11/06 or 04/12/06. The SIS office should have an explanation as to what they did with the $720.00 deposit.

The Inmate Trust Fund Account Statement also documents that the Petitioner made over $200.00 a month from his job with UNICOR Federal Prison Industries.

Date: 11/30/2006
Time: 12:11:47 pm

Federal Bureau of Prisons
TRUFACS
**Inmate Statement**
Sensitive But Unclassified

Facility: COA

### General Information

| | | | |
|---|---|---|---|
| Inmate Reg#: | 18167074 | Living Quarters: | K01-110L |
| Inmate Name: | DUNWOODY, BILL | Arrived From: | OKL |
| Current Site Name: | Coleman FCC | Transferred To: | |
| Housing Unit: | K-1 | Account Creation Date: | 3/29/2002 |

### Transaction Details

| Alpha Code | Date Time | Reference# | Payment# | Receipt# | Transaction Type | Transaction Amount | Encumbrance Amount | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| POL | 11/02/2005 09:14:13 PM | ITS1102 | | | Phone Withdrawal | ($10.00) | | $902.90 |
| POL | 11/07/2005 08:09:02 AM | IS0013 | | | Payroll - UNICOR | $226.39 | | $1,129.29 |
| POL | 11/24/2005 09:41:07 AM | ITS1124 | | | Phone Withdrawal | ($9.00) | | $1,120.29 |
| POL | 12/03/2005 05:00:55 PM | ITS1203 | | | Phone Withdrawal | ($9.00) | | $1,111.29 |
| POL | 12/06/2005 07:15:34 PM | ITS1206 | | | Phone Withdrawal | ($11.00) | | $1,100.29 |
| POL | 12/08/2005 09:03:22 AM | IS0015 | | | Payroll - UNICOR | $193.71 | | $1,294.00 |
| POL | 12/09/2005 08:45:06 PM | ITS1209 | | | Phone Withdrawal | ($9.00) | | $1,285.00 |
| POL | 12/13/2005 11:27:51 AM | | 729 | | Gift | ($47.74) | | $1,157.26 |
| POL | 12/13/2005 11:27:51 AM | | 728 | | Gift | ($80.00) | | $1,205.00 |
| POL | 12/15/2005 01:01:53 PM | | 825 | | Gift | ($100.00) | | $1,057.26 |
| POL | 12/20/2005 08:28:02 PM | ITS1220 | | | Phone Withdrawal | ($9.00) | | $1,048.26 |
| POL | 12/21/2005 05:10:30 PM | 138 | | | Sales | ($134.90) | | $913.36 |
| POL | 12/24/2005 03:19:27 PM | ITS1224 | | | Phone Withdrawal | ($9.00) | | $904.36 |
| POL | 12/25/2005 08:17:25 AM | ITS1225 | | | Phone Withdrawal | ($15.00) | | $889.36 |
| POL | 12/29/2005 05:25:34 PM | 70148301 | | | Lockbox - CD | $25.00 | | $914.36 |
| POL | 01/08/2006 09:07:34 AM | ITS0108 | | | Phone Withdrawal | ($14.00) | | $900.36 |
| POL | 01/09/2006 01:03:17 PM | IS0006 | | | Payroll - UNICOR | $204.10 | | $1,104.46 |
| POL | 01/13/2006 07:49:05 PM | ITS0113 | | | Phone Withdrawal | ($14.00) | | $1,090.46 |
| POL | 01/15/2006 06:48:10 PM | ITS0115 | | | Phone Withdrawal | ($15.00) | | $1,075.46 |
| POL | 01/22/2006 01:22:06 PM | ITS0122 | | | Phone Withdrawal | ($20.00) | | $1,055.46 |
| POL | 01/27/2006 06:33:34 PM | ITS0127 | | | Phone Withdrawal | ($9.00) | | $1,046.46 |
| POL | 01/31/2006 05:31:53 AM | 70150401 | | | Lockbox - CD | $47.74 | | $1,094.20 |
| POL | 02/01/2006 08:51:38 PM | ITS0201 | | | Phone Withdrawal | ($14.00) | | $1,080.20 |
| POL | 02/08/2006 08:31:54 AM | IS0022 | | | Payroll - UNICOR | $202.48 | | $1,282.68 |
| POL | 02/26/2006 05:03:59 PM | ITS0226 | | | Phone Withdrawal | ($10.00) | | $1,272.68 |
| POL | 02/27/2006 12:07:05 PM | 3331070 | | | Western Union | $125.00 | | $1,397.68 |
| POL | 03/07/2006 06:25:00 PM | 119 | | | Sales | ($21.95) | | $1,375.73 |
| POL | 03/10/2006 09:14:28 AM | IS0037 | | | Payroll - UNICOR | $210.90 | | $1,586.63 |
| POL | 03/13/2006 01:08:40 PM | ITS0313 | | | Phone Withdrawal | ($20.00) | | $1,566.63 |
| POL | 03/26/2006 06:30:22 PM | ITS0326 | | | Phone Withdrawal | ($6.00) | | $1,560.63 |

Page 2

Date: 11/30/2006
Time: 12:11:49 pm

Facility: COA

Federal Bureau of Prisons
TRUFACS
**Inmate Statement**
Sensitive But Unclassified

**General Information**

| | | | |
|---|---|---|---|
| Inmate Reg#: | 18167074 | Living Quarters: | K01-110L |
| Inmate Name: | DUNWOODY, BILL | Arrived From: | OKL |
| Current Site Name: | Coleman FCC | Transferred To: | |
| Housing Unit: | K-1 | Account Creation Date: | 3/29/2002 |

**Transaction Details**

| Alpha Code | Date Time | Reference# | Payment# | Receipt# | Transaction Type | Transaction Amount | Encumbrance Amount | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| POL | 04/06/2006 05:02:58 PM | ITS0406 | | | Phone Withdrawal | ($10.00) | | $1,550.63 |
| POL | 04/09/2006 07:30:24 PM | ITS0409 | | | Phone Withdrawal | ($10.00) | | $1,540.63 |
| POL | 04/10/2006 03:27:24 PM | IS0033 | | | Payroll - UNICOR | $185.90 | | $1,726.53 |
| POL | 04/20/2006 10:28:26 AM | 70 | | | Sales | ($22.55) | | $1,703.98 |
| POL | 04/27/2006 06:30:04 AM | 10 | | | Sales | ($8.50) | | $1,695.48 |
| POL | 04/30/2006 07:53:24 AM | ITS0430 | | | Phone Withdrawal | ($9.00) | | $1,686.48 |
| POL | 05/04/2006 08:53:07 AM | 41 | | | Sales | ($4.40) | | $1,682.08 |
| POL | 05/09/2006 10:55:53 AM | IS0036 | | | Payroll - UNICOR | $68.26 | | $1,750.34 |
| POL | 05/11/2006 08:19:42 AM | 32 | | | Sales | ($2.45) | | $1,747.89 |
| POL | 05/18/2006 09:38:17 AM | 33 | | | Sales | ($5.90) | | $1,741.99 |
| POL | 05/24/2006 10:24:19 AM | 32 | | | Sales | ($3.60) | | $1,738.39 |
| POL | 05/30/2006 07:22:44 PM | ITS0530 | | | Phone Withdrawal | ($20.00) | | $1,718.39 |
| POL | 06/09/2006 07:56:47 AM | IS0039 | | | Payroll - UNICOR | $113.10 | | $1,831.49 |
| POL | 06/14/2006 01:54:33 PM | 73 | | | Sales | ($4.75) | | $1,826.74 |
| POL | 06/21/2006 04:33:12 PM | 181 | | | Sales | ($9.75) | | $1,816.99 |
| POL | 06/29/2006 09:34:53 PM | ITS0629 | | | Phone Withdrawal | ($20.00) | | $1,796.99 |
| POL | 07/06/2006 03:42:58 PM | 110 | | | Sales | ($9.85) | | $1,787.14 |
| POL | 07/19/2006 11:43:36 AM | 62 | | | Sales | ($5.90) | | $1,781.24 |
| POL | 07/24/2006 11:07:21 AM | 33321206 | | | Western Union | $120.00 | | $1,901.24 |
| POL | 07/26/2006 02:36:38 PM | 45 | | | Sales | ($13.17) | | $1,888.07 |
| POL | 08/02/2006 04:08:14 PM | 76 | | | Sales | ($5.55) | | $1,882.52 |
| POL | 08/11/2006 08:26:01 PM | ITS0811 | | | Phone Withdrawal | ($10.00) | | $1,872.52 |
| POL | 08/17/2006 08:34:50 AM | 54 | | | Sales | ($6.42) | | $1,866.10 |
| POL | 08/31/2006 07:58:03 AM | 29 | | | Sales | ($2.40) | | $1,863.70 |
| POL | 09/06/2006 09:54:35 AM | | 3088 | | Gift | ($50.00) | | $1,813.70 |
| POL | 09/07/2006 09:30:37 PM | ITS0907 | | | Phone Withdrawal | ($9.00) | | $1,804.70 |
| POL | 09/13/2006 08:00:55 AM | | 3188 | | Gift | ($25.00) | | $1,779.70 |
| POL | 09/13/2006 03:55:46 PM | 83 | | | Sales | ($4.10) | | $1,775.60 |
| POL | 09/18/2006 06:57:06 PM | ITS0918 | | | Phone Withdrawal | ($5.00) | | $1,770.60 |
| POL | 09/21/2006 09:13:34 AM | 47 | | | Sales | ($9.15) | | $1,761.45 |

Page 3

Date: 11/30/2006
Time: 12:11:49 pm

Federal Bureau of Prisons
TRUFACS
**Inmate Statement**
Sensitive But Unclassified

Facility: COA

**General Information**

| | | | |
|---|---|---|---|
| Inmate Reg#: | 18167074 | Living Quarters: | K01-110L |
| Inmate Name: | DUNWOODY, BILL | Arrived From: | OKL |
| Current Site Name: | Coleman FCC | Transferred To: | |
| Housing Unit: | K-1 | Account Creation Date: | 3/29/2002 |

**Transaction Details**

| Alpha Code | Date Time | Reference# | Payment# | Receipt# | Transaction Type | Transaction Amount | Encumbrance Amount | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| | **Total Transactions:** | **60** | | | | | | |
| OKL | 10/13/2006 03:19:50 AM | TX101306 | | | Transfer - In from TRUFACS | $1,761.45 | | $1,761.45 |
| | **Total Transactions:** | **1** | | | | | | |
| POL | 10/13/2006 03:19:50 AM | TX101306 | | | Transfer - Out to TRUFACS | ($1,761.45) | | $0.00 |
| | **Total Transactions:** | **1** | | | | | | |
| OKL | 10/18/2006 03:17:26 AM | ITS1018 | | | Phone Withdrawal | $11.46 | | $1,772.91 |
| OKL | 10/18/2006 03:17:26 AM | TX101806 | | | Transfer - Out to TRUFACS | ($1,772.91) | | $0.00 |
| | **Total Transactions:** | **2** | | | | | | |
| COA | 10/18/2006 04:17:26 AM | TX101806 | | | Transfer - In from TRUFACS | $1,772.91 | | $1,772.91 |
| COA | 10/25/2006 01:25:38 PM | TFN1025 | | | Phone Withdrawal | ($20.00) | | $1,752.91 |
| COA | 10/25/2006 05:53:44 PM | 67 | | | Sales | ($95.35) | | $1,657.56 |
| COA | 10/26/2006 07:41:37 PM | TFN1026 | | | Phone Withdrawal | ($30.00) | | $1,627.56 |
| COA | 10/29/2006 09:47:07 PM | TFN1029 | | | Phone Withdrawal | ($20.00) | | $1,607.56 |
| COA | 10/30/2006 02:49:55 PM | 25 | | | Sales | ($75.65) | | $1,531.91 |
| COA | 11/03/2006 03:47:52 PM | | | 1292 | Gift | ($50.00) | | $1,481.91 |
| COA | 11/06/2006 06:13:04 PM | 81 | | | Sales | ($143.50) | | $1,338.41 |
| COA | 11/07/2006 07:21:17 AM | TFN1107 | | | Phone Withdrawal | ($30.00) | | $1,308.41 |
| COA | 11/21/2006 07:19:01 PM | TFN1121 | | | Phone Withdrawal | ($30.00) | | $1,278.41 |
| COA | 11/26/2006 11:57:06 AM | TFN1126 | | | Phone Withdrawal | ($20.00) | | $1,258.41 |
| COA | 11/27/2006 02:18:02 PM | 20 | | | Sales | ($89.87) | | $1,168.54 |
| | **Total Transactions:** | **12** | | | **Totals:** | **$255.64** | **$0.00** | |

Your Honor,

      I am sending the court a printout of my TRUFACS inmate account statement. I have backed up from 02/20/2003 to 02/22/2008.

      I wanted to fully document and show the court where all of my money came from, and I want to show the court that I have not received any money for the so called Info & Coop that the DHO officer wrote in his final report Remarks.

      I am going to High Light and Note where my money came from, especially in the year of 2006.

      Richard McNair escaped on 04/05/06.

      I will even make sure I cover 2005 real good for the court.

      The attached account statement will certify and verify everything for the court relating to my income.

Sincerely,

Bill

William T. "Bill" Dunwoody

On Page 9 you will see where I sold Click 5 Packs of Cigarettes for $125.00. Also the $720.00 Keneth Stanford Sent me for the bags of tobacco I sold him is not on here. I do know the $720.00 was Sent to this account, because Lieutenant Garcia of the S.I.S at U.S.P Pollock told me it came to my account. LT. Garcia also knew the $720.00 Came from Keneth Stanford for the tobacco I sold him But now the $720.00 is not on my account. Would you Please ask LT. Garcia where it went and ask him to Verify the $720.00 was from Stanford for tobacco.

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

Facility: COA

Jan '08
to
Present

**Criteria:** Search Criteria Results

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/22/2008 10:03:08 AM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | ($1.10) | 42 | | | $81.48 |
| 02/22/2008 10:01:28 AM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | ($40.75) | 41 | | | $82.58 |
| 02/18/2008 12:13:18 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($6.00) | TFN0218 | | | $123.33 |
| 02/17/2008 05:16:03 AM | 18167074 | DUNWOODY, BILL | CLP | AMSERVI | Lockbox - CD | $50.00 | 70102102 | | | $129.33 |
| 02/16/2008 05:19:35 AM | 18167074 | DUNWOODY, BILL | CLP | AMSERVI | Lockbox - CD | $50.00 | 70102101 | | | $79.33 |
| 02/15/2008 10:17:50 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($5.00) | TFN0215 | | | $29.33 |
| 02/12/2008 03:13:56 PM | 18167074 | DUNWOODY, BILL | CLP | COA3036 | Sales | ($25.25) | 54 | | | $34.33 |
| 02/10/2008 05:14:05 AM | 18167074 | DUNWOODY, BILL | CLP | AMSERVI | Lockbox - CD | $25.00 | 70101602 | | | $59.58 |
| 02/05/2008 07:27:38 PM | 18167074 | DUNWOODY, BILL | CLP | COA3029 | Sales | ($24.85) | 91 | | | $34.58 |
| 02/01/2008 10:29:21 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0201 | | | $59.43 |
| 01/14/2008 12:09:43 PM | 18167074 | DUNWOODY, BILL | CLP | COA3036 | Sales | $0.00 | 179 | | | $69.43 |

**Total Number Transactions: 11**

WorkstationID: COAJGXK821

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

**Criteria:** Search Criteria Results

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/30/2007 05:15:33 AM | 18167074 | DUNWOODY, BILL | CLP | AMSERVI | Lockbox - CD | $50.00 | 70198702 | | | $69.43 |
| 12/06/2007 03:13:47 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN1206 | | | $19. |
| 12/05/2007 05:52:22 PM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | ($26.50) | 35 | | | $29.43 |
| 12/02/2007 05:15:27 AM | 18167074 | DUNWOODY, BILL | CLP | AMSERVI | Lockbox - CD | $50.00 | 70196802 | | | $55.93 |
| 12/01/2007 05:51:05 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($2.00) | TFN1201 | | | $5.93 |
| 11/28/2007 08:10:29 PM | 18167074 | DUNWOODY, BILL | CLP | COA3036 | Sales | ($32.10) | 120 | | | $7.93 |
| 11/26/2007 05:47:28 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($5.00) | TFN1126 | | | $40.03 |
| 11/19/2007 02:55:53 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($5.00) | TFN1119 | | | $45.03 |
| 11/16/2007 08:51:26 AM | 18167074 | DUNWOODY, BILL | CLP | COA3037 | Sales | ($2.45) | 27 | | | $50.03 |
| 11/15/2007 02:01:00 PM | 18167074 | DUNWOODY, BILL | CLP | COA5146 | Inmate Co-pay | ($2.00) | HICP1107 | | | $52.48 |
| 11/09/2007 10:52:45 AM | 18167074 | DUNWOODY, BILL | CLP | COA2007 | Payroll - IPP | $26.18 | HIPP1007 | | | $54.48 |
| 11/02/2007 10:56:09 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($7.00) | TFN1102 | | | $28.30 |
| 11/02/2007 05:19:29 AM | 18167074 | DUNWOODY, BILL | CLP | AMSERVI | Lockbox - CD | $35.00 | 70194901 | | | $35.30 |
| 10/30/2007 08:48:00 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($5.00) | TFN1030 | | | $0.30 |
| 10/23/2007 09:32:27 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($6.00) | TFN1023 | | | $5.30 |
| 10/23/2007 02:17:50 PM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | ($17.90) | 17 | | | $11.30 |
| 10/14/2007 11:35:45 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN1014 | | | $29.20 |

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/05/2007 10:31:44 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN1005 | | | $39.20 |
| 10/05/2007 08:53:25 AM | 18167074 | DUNWOODY, BILL | CLP | COA2007 | Payroll - IPP | $26.18 | HIPP0907 | | | $49.20 |
| 10/04/2007 02:39:54 PM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | ($17.45) | 28 | | | $23.02 |
| 10/01/2007 11:01:36 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN1001 | | | $40.47 |
| 09/20/2007 12:44:00 PM | 18167074 | DUNWOODY, BILL | CLP | COA3047 | Sales | ($21.95) | 18 | | | $60.4 |
| 09/19/2007 10:37:52 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN0919 | | | $82.42 |
| 09/18/2007 05:17:42 AM | 18167074 | DUNWOODY, BILL | CLP | AMSERVI | Lockbox - CD | $50.00 | 70191701 | | | $102.42 |
| 09/16/2007 09:35:49 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0916 | | | $52.42 |
| 09/16/2007 05:19:04 AM | 18167074 | DUNWOODY, BILL | CLP | AMSERVI | Lockbox - CD | $20.00 | 70191602 | | | $62.42 |
| 09/15/2007 09:21:01 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($8.00) | TFN0915 | | | $42.42 |
| 09/15/2007 05:21:16 AM | 18167074 | DUNWOODY, BILL | CLP | AMSERVI | Lockbox - CD | $50.00 | 70191601 | | | $50.4 |
| 09/10/2007 08:20:22 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($2.00) | TFN0910 | | | $0.42 |
| 09/10/2007 06:14:26 PM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | ($12.30) | 75 | | | $2 |
| 09/07/2007 10:12:46 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($7.00) | TFN0907 | | | $14.72 |
| 09/07/2007 08:46:38 AM | 18167074 | DUNWOODY, BILL | CLP | COA2000 | Payroll - IPP | $18.70 | GIPP0807 | | | $21.7 |
| 09/06/2007 07:05:58 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($7.00) | TFN0906 | | | $3.00 |
| 08/30/2007 02:23:09 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0830 | | | $10.02 |
| 08/28/2007 11:25:08 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($3.00) | TFN0828 | | | $20.02 |
| 08/27/2007 02:01:21 PM | 18167074 | DUNWOODY, BILL | CLP | COA3036 | Sales | ($1.05) | 9 | | | $23.02 |

WorkstationID: COA3GXK821

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/27/2007 02:00:54 PM | 18167074 | DUNWOODY, BILL | CLP | COA3036 | Sales | ($15.95) | 8 | | | $24.07 |
| 08/25/2007 09:41:26 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0825 | | | $40.02 |
| 08/23/2007 07:46:46 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($9.00) | TFN0823 | | | $50.0 |
| 08/23/2007 06:12:05 PM | 18167074 | DUNWOODY, BILL | CLP | COA3047 | Sales | ($0.90) | | | | $59.02 |
| 08/23/2007 06:10:45 PM | 18167074 | DUNWOODY, BILL | CLP | COA3047 | Sales | ($30.45) | 71 | | | $59.92 |
| 08/21/2007 11:32:18 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0821 | | | $90.37 |
| 08/12/2007 05:16:56 AM | 18167074 | DUNWOODY, BILL | CLP | AMSERVI | Lockbox - CD | $100.00 | 70189202 | | | $100.37 |
| 08/08/2007 06:38:13 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($6.00) | TFN0808 | | | $0.37 |
| 08/08/2007 11:44:06 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($3.00) | TFN0808 | | | $6.37 |
| 08/07/2007 06:08:15 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($5.00) | TFN0807 | | | $9.37 |
| 08/06/2007 07:19:13 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($5.00) | TFN0806 | | | $14.37 |
| 08/03/2007 06:29:30 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($7.00) | TFN0803 | | | $19.37 |
| 08/03/2007 08:44:12 AM | 18167074 | DUNWOODY, BILL | CLP | COA2007 | Payroll - IPP | $26.18 | GIPP0707 | | | $26.37 |
| 07/27/2007 01:06:37 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($1.00) | TFN0727 | | | $0.19 |
| 07/25/2007 06:07:35 PM | 18167074 | DUNWOODY, BILL | CLP | COA3047 | Sales | ($0.70) | 81 | | | $1.19 |
| 07/25/2007 06:06:45 PM | 18167074 | DUNWOODY, BILL | CLP | COA3047 | Sales | ($31.60) | 80 | | | $1.89 |
| 07/25/2007 11:15:59 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($5.00) | TFN0725 | | | $33.49 |
| 07/18/2007 08:10:37 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0718 | | | $38.49 |
| 07/14/2007 09:33:59 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0714 | | | $48.49 |

WorkstationID: COAJGXK821

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/12/2007 05:55:31 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($15.00) | TFN0712 | | | $58.49 |
| 07/12/2007 01:57:59 PM | 18167074 | DUNWOODY, BILL | CLP | COA3036 | Sales | ($17.10) | 11 | | | $73.49 |
| 07/10/2007 10:37:18 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($5.00) | TFN0710 | | | $90.59 |
| 07/09/2007 05:19:06 AM | 18167074 | DUNWOODY, BILL | CLP | AMSERVI | Lockbox - CD | $75.00 | 70186703 | | | $95.59 |
| 07/07/2007 09:01:22 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($6.00) | TFN0707 | | | $20.59 |
| 07/06/2007 09:55:46 AM | 18167074 | DUNWOODY, BILL | CLP | COA2007 | Payroll - IPP | $26.18 | GIPP0607 | | | $26.59 |
| 07/05/2007 09:52:08 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($5.00) | TFN0705 | | | $0.41 |
| 07/02/2007 08:47:04 PM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | ($19.50) | 112 | | | $5.41 |
| 07/02/2007 06:59:40 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($2.00) | TFN0702 | | | $24.91 |
| 06/27/2007 04:33:55 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0627 | | | $26.91 |
| 06/20/2007 07:39:15 PM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | $0.00 | 136 | | | $36.91 |
| 06/20/2007 07:37:40 PM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | ($15.55) | 135 | | | $36.91 |
| 06/20/2007 07:36:53 PM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | ($17.60) | 134 | | | $52.46 |
| 06/20/2007 01:29:55 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0620 | | | $70.0t |
| 06/16/2007 08:01:31 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($3.00) | TFN0616 | | | $80.06 |
| 06/08/2007 07:19:05 AM | 18167074 | DUNWOODY, BILL | CLP | COA2001 | Payroll - IPP | $26.18 | GIPP0507 | | | $83.06 |
| 06/06/2007 06:57:04 PM | 18167074 | DUNWOODY, BILL | CLP | COA3036 | Sales | ($109.05) | 54 | | | $56.88 |
| 06/04/2007 10:33:06 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0604 | | | $165.93 |
| 06/03/2007 05:16:45 AM | 18167074 | DUNWOODY, BILL | CLP | AMSERVI | Lockbox - CD | $175.00 | 70184302 | | | $175.93 |

WorkstationID: COAJGXK821

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/30/2007 11:27:36 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($2.00) | TFN0530 | | | $0.93 |
| 05/23/2007 02:52:10 PM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | ($1.20) | 25 | | | $2.93 |
| 05/23/2007 02:50:50 PM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | ($29.00) | 24 | | | $4.13 |
| 05/15/2007 03:05:09 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($6.00) | TFN0515 | | | $33. |
| 05/10/2007 01:23:53 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0510 | | | $39.13 |
| 05/04/2007 10:14:18 AM | 18167074 | DUNWOODY, BILL | CLP | COA2007 | Payroll - IPP | $4.25 | GIPP0407 | | | $49.13 |
| 05/02/2007 08:34:22 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0502 | | | $44.88 |
| 04/25/2007 05:40:52 PM | 18167074 | DUNWOODY, BILL | CLP | COA3043 | Sales | ($95.35) | 72 | | | $54.88 |
| 04/19/2007 02:56:16 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($14.00) | TFN0419 | | | $150.23 |
| 04/06/2007 08:08:03 AM | 18167074 | DUNWOODY, BILL | CLP | COA2001 | Payroll - IPP | $18.48 | GIPP0307 | | | $164.23 |
| 04/02/2007 10:53:12 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN0402 | | | $145.75 |
| 03/19/2007 02:50:31 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0319 | | | $165.75 |
| 03/14/2007 11:14:44 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0314 | | | $175.75 |
| 03/13/2007 02:47:49 PM | 18167074 | DUNWOODY, BILL | CLP | COA3036 | Sales | $0.00 | 42 | | | $185.75 |
| 03/13/2007 02:44:08 PM | 18167074 | DUNWOODY, BILL | CLP | COA3036 | Sales | ($14.60) | 41 | | | $185.75 |
| 03/13/2007 07:17:33 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($11.00) | TFN0313 | | | $200.35 |
| 03/09/2007 06:25:13 AM | 18167074 | DUNWOODY, BILL | CLP | COA2007 | Payroll - IPP | $11.28 | GIPP0207 | | | $211.35 |
| 03/06/2007 02:47:55 PM | 18167074 | DUNWOODY, BILL | CLP | COA3038 | Sales | ($7.25) | 54 | | | $200.07 |
| 03/06/2007 02:45:58 PM | 18167074 | DUNWOODY, BILL | CLP | COA3038 | Sales | ($63.35) | 53 | | | $207.32 |

WorkstationID: COAJGXK821

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/05/2007 12:02:28 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($10.00) | TFN0305 | | | $270.67 |
| 02/19/2007 12:34:14 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($17.00) | TFN0219 | | | $280.67 |
| 02/09/2007 08:49:59 AM | 18167074 | DUNWOODY, BILL | CLP | COA2007 | Payroll - IPP | $10.08 | GIPP0107 | | | $297.67 |
| 02/06/2007 06:00:08 PM | 18167074 | DUNWOODY, BILL | CLP | COA3036 | Sales | ($39.25) | 69 | | | $287.5 |
| 02/05/2007 04:28:15 PM | 18167074 | DUNWOODY, BILL | CLP | COA2013 | Gift | ($185.00) | | | 5690 | $326.84 |
| 02/04/2007 05:41:01 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN0204 | | | $511.84 |
| 02/03/2007 09:37:17 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN0203 | | | $531.84 |
| 02/01/2007 07:48:06 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN0201 | | | $551.84 |
| 01/23/2007 02:06:37 PM | 18167074 | DUNWOODY, BILL | CLP | COA3041 | Sales | ($113.50) | 14 | | | $571.84 |
| 01/20/2007 10:43:49 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN0120 | | | $685.34 |
| 01/05/2007 07:27:39 AM | 18167074 | DUNWOODY, BILL | CLP | COA2001 | Payroll - IPP | $7.20 | GIPP1206 | | | $705.34 |
| 01/04/2007 06:51:39 PM | 18167074 | DUNWOODY, BILL | CLP | COA3042 | Sales | ($38.10) | 17 | | | $698.14 |
| 01/03/2007 05:36:33 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN0103 | | | $736.24 |
| 01/01/2007 10:30:12 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN0101 | | | $756.24 |
| 12/18/2006 03:21:53 PM | 18167074 | DUNWOODY, BILL | CLP | COA3040 | Sales | ($33.90) | 36 | | | $776.24 |
| 12/16/2006 12:53:23 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN1216 | | | $810.14 |
| 12/14/2006 11:55:38 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN1214 | | | $830.14 |
| 12/11/2006 06:22:41 PM | 18167074 | DUNWOODY, BILL | CLP | COA3040 | Sales | ($50.75) | 81 | | | $850.14 |
| 12/08/2006 04:43:06 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN1208 | | | $900.89 |

WorkstationID: COAJGXK821

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

Facility: COA

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/06/2006 06:06:26 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($13.00) | TFN1206 | | | $920.89 |
| 12/04/2006 02:13:20 PM | 18167074 | DUNWOODY, BILL | CLP | COA3040 | Sales | ($14.65) | 15 | | | $933.89 |
| 12/01/2006 11:03:57 AM | 18167074 | DUNWOODY, BILL | CLP | COA2013 | Gift | ($200.00) | | | 2705 | $948.54 |
| 12/01/2006 10:48:06 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN1201 | | | $1,148.54 |
| 11/27/2006 02:18:02 PM | 18167074 | DUNWOODY, BILL | CLP | COA3036 | Sales | ($89.87) | 20 | | | $1,168.54 |
| 11/26/2006 11:57:06 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN1126 | | | $1,258.41 |
| 11/21/2006 07:19:01 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($30.00) | TFN1121 | | | $1,278.41 |
| 11/07/2006 07:21:17 AM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($30.00) | TFN1107 | | | $1,308.41 |
| 11/06/2006 06:13:04 PM | 18167074 | DUNWOODY, BILL | CLP | COA3040 | Sales | ($143.50) | 81 | | | $1,338.41 |
| 11/03/2006 03:47:52 PM | 18167074 | DUNWOODY, BILL | CLP | COA2013 | Gift | ($50.00) | | | 1292 | $1,481.91 |
| 10/30/2006 02:49:55 PM | 18167074 | DUNWOODY, BILL | CLP | COA3040 | Sales | ($75.65) | 25 | | | $1,531.91 |
| 10/29/2006 09:47:07 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN1029 | | | $1,607.56 |
| 10/26/2006 07:41:37 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($30.00) | TFN1026 | | | $1,627.56 |
| 10/25/2006 05:53:44 PM | 18167074 | DUNWOODY, BILL | CLP | COA3036 | Sales | ($95.35) | 67 | | | $1,657.56 |
| 10/25/2006 01:25:38 PM | 18167074 | DUNWOODY, BILL | CLP | TP_PHON | Phone Withdrawal | ($20.00) | TFN1025 | | | $1,752.91 |
| 10/18/2006 04:17:26 AM | 18167074 | DUNWOODY, BILL | CLP | SENTRY | Transfer - In from TRUFACS | $1,772.91 | TX101806 | | | $1,772.91 |
| 10/18/2006 03:17:26 AM | 18167074 | DUNWOODY, BILL | OKL | SENTRY | Transfer - Out to TRUFACS | ($1,772.91) | TX101806 | | | $0.00 |
| 10/18/2006 03:17:26 AM | 18167074 | DUNWOODY, BILL | OKL | SENTRY | Phone Withdrawal | $11.46 | ITS1018 | | | $1,772.91 |
| 10/13/2006 03:19:50 AM | 18167074 | DUNWOODY, BILL | POL | SENTRY | Transfer - Out to TRUFACS | ($1,761.45) | TX101306 | | | $0.00 |

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/13/2006 03:19:50 AM | 18167074 | DUNWOODY, BILL | OKL | SENTRY | Transfer - In from TRUFACS | $1,761.45 | TX101306 | | | $1,761.45 |
| 09/21/2006 09:13:34 AM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($9.15) | 47 | | | $1,761.45 |
| 09/18/2006 06:57:06 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0918 | | | $1,770.60 |
| 09/13/2006 03:55:46 PM | 18167074 | DUNWOODY, BILL | POL | POL8893 | Sales | ($4.10) | 83 | | | $1,775.60 |
| 09/13/2006 08:00:55 AM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Gift | ($25.00) | | 3188 | | $1,779.70 |
| 09/07/2006 09:30:37 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0907 | | | $1,804.70 |
| 09/06/2006 09:54:35 AM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Gift | ($50.00) | | 3088 | | $1,813.70 |
| 08/31/2006 07:58:03 AM | 18167074 | DUNWOODY, BILL | POL | POL8893 | Sales | ($2.40) | 29 | | | $1,863.70 |
| 08/17/2006 08:34:50 AM | 18167074 | DUNWOODY, BILL | POL | POL8893 | Sales | ($6.42) | 54 | | | $1,866.10 |
| 08/11/2006 08:26:01 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($10.00) | ITS0811 | | | $1,872.52 |
| 08/02/2006 04:08:14 PM | 18167074 | DUNWOODY, BILL | POL | POL1045 | Sales | ($5.55) | 76 | | | $1,882.52 |
| 07/26/2006 02:36:38 PM | 18167074 | DUNWOODY, BILL | POL | POL1045 | Sales | ($13.17) | 45 | | | $1,888.07 |
| 07/24/2006 11:07:21 AM | 18167074 | DUNWOODY, BILL | POL | AMSERVI | Western Union | $120.00 | 33321206 | | | $1,901.24 |
| 07/19/2006 11:43:36 AM | 18167074 | DUNWOODY, BILL | POL | POL8572 | Sales | ($5.90) | 62 | | | $1,781.24 |
| 07/06/2006 03:42:58 PM | 18167074 | DUNWOODY, BILL | POL | POL8893 | Sales | ($9.85) | 110 | | | $1,787.14 |
| 06/29/2006 09:34:53 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($20.00) | ITS0629 | | | $1,796.99 |
| 06/21/2006 04:33:12 PM | 18167074 | DUNWOODY, BILL | POL | POL5580 | Sales | ($9.75) | 181 | | | $1,816.99 |
| 06/14/2006 01:54:33 PM | 18167074 | DUNWOODY, BILL | POL | POL1045 | Sales | ($4.75) | 73 | | | $1,826.74 |
| 06/09/2006 07:56:47 AM | 18167074 | DUNWOODY, BILL | POL | POL2818 | Payroll - UNICOR | $113.10 | IS0039 | | | $1,831.49 |

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

Facility: C.

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/30/2006 07:22:44 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($20.00) | ITS0530 | *The $720.00* | | $1,718.39 |
| 05/24/2006 10:24:19 AM | 18167074 | DUNWOODY, BILL | POL | POL2055 | Sales | ($3.60) | 32 | *Kenneth Stanford* | | $1,738.39 |
| 05/18/2006 09:38:17 AM | 18167074 | DUNWOODY, BILL | POL | POL6575 | Sales | ($5.90) | 33 | *sent me for the* | | $1,741.99 |
| 05/11/2006 08:19:42 AM | 18167074 | DUNWOODY, BILL | POL | POL6575 | Sales | ($2.45) | 32 | *brags of Tobacco* | | $1,747.89 |
| 05/09/2006 | 18167074 | DUNWOODY, BILL | POL | POL2818 | Payroll - UNICOR | $68.26 | ISO036 | *I sold him in NOT* | | $1,750.34 |
| 05/04/2006 10:55:53 AM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($4.40) | 41 | *on here. The* | | $1,682.08 |
| 04/30/2006 08:53:07 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0430 | *truth will come* | | $1,686.48 |
| 04/27/2006 07:53:24 AM | 18167074 | DUNWOODY, BILL | POL | POL5580 | Sales | ($8.50) | 10 | *out when you* | | $1,695.48 |
| 04/20/2006 06:30:04 AM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($22.55) | 70 | *ask the S2S at* | | $1,703.98 |
| 04/10/2006 10:28:26 AM | 18167074 | DUNWOODY, BILL | POL | POL2818 | Payroll - UNICOR | $185.90 | ISO033 | *USP Pollack La. what* | | $1,726.53 |
| 04/09/2006 03:27:24 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($10.00) | ITS0409 | *they did with the* | | $1,540.63 |
| 04/06/2006 07:30:24 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($10.00) | ITS0406 | *$720.00* | | $1,550.63 |
| 03/26/2006 05:02:58 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS0326 | | | $1,560.63 |
| 03/13/2006 06:30:22 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($20.00) | ISO313 | *I sold Click* | | $1,566.63 |
| 03/10/2006 01:08:40 PM | 18167074 | DUNWOODY, BILL | POL | POL2818 | Payroll - UNICOR | $210.90 | ISO037 | *5 packs of* | | $1,586.63 |
| 03/07/2006 09:14:28 AM | 18167074 | DUNWOODY, BILL | POL | POL2818 | Sales | ($21.95) | 119 | *Cigarettes for* | | $1,375.73 |
| 02/27/2006 12:07:05 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | $125.00 | 3331070б | *$125.00* | | $1,397.68 |
| 02/26/2006 05:03:59 PM | 18167074 | DUNWOODY, BILL | POL | AMSERVI | Western Union | ($10.00) | ITS0226 | | | $1,272.68 |
| 02/08/2006 | 18167074 | DUNWOODY, BILL | POL | POL2818 | Payroll - UNICOR | $202.48 | ISO022 | | | $1,282.68 |

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/01/2006 08:51:38 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($14.00) | ITS0201 | | | $1,080.20 |
| 01/31/2006 05:31:53 AM | 18167074 | DUNWOODY, BILL | POL | AMSERVI | Lockbox - CD | $47.74 | 70150401 | | | $1,094.20 |
| 01/27/2006 06:33:34 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0127 | | | $1,046.46 |
| 01/22/2006 01:22:06 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($20.00) | ITS0122 | | | $1,055.46 |
| 01/15/2006 06:48:10 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($15.00) | ITS0115 | | | $1,075.46 |
| 01/13/2006 07:49:05 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($14.00) | ITS0113 | | | $1,090.46 |
| 01/09/2006 | 18167074 | DUNWOODY, BILL | POL | POL2818 | Payroll - UNICOR | $204.10 | IS0006 | | | $1,104.46 |
| 01/08/2006 09:07:34 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($14.00) | ITS0108 | | | $900.36 |
| 12/29/2005 05:25:34 PM | 18167074 | DUNWOODY, BILL | POL | AMSERVI | Lockbox - CD | $25.00 | 70148301 | | | $914.36 |
| 12/25/2005 08:17:25 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($15.00) | ITS1225 | | | $889.36 |
| 12/24/2005 03:19:27 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1224 | | | $904.36 |
| 12/21/2005 05:10:30 PM | 18167074 | DUNWOODY, BILL | POL | POL8572 | Sales | ($134.90) | 138 | | | $913.36 |
| 12/20/2005 08:28:02 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1220 | | | $1,048.26 |
| 12/15/2005 01:01:53 PM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Gift | ($100.00) | | | 825 | $1,057.26 |
| 12/13/2005 11:27:51 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Gift | ($47.74) | | | 729 | $1,157.26 |
| 12/13/2005 11:27:51 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Gift | ($80.00) | | | 728 | $1,205.00 |
| 12/09/2005 08:45:06 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1209 | | | $1,285.00 |
| 12/08/2005 09:03:22 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $193.71 | IS0015 | | | $1,294.00 |
| 12/06/2005 07:15:34 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($11.00) | ITS1206 | | | $1,100.29 |

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/03/2005 05:00:55 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1203 | | | $1,111.29 |
| 11/24/2005 09:41:07 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1124 | | | $1,120.29 |
| 11/07/2005 08:09:02 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $226.39 | IS0013 | | | $1,129.29 |
| 11/02/2005 09:14:13 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($10.00) | ITS1102 | | | $902.90 |
| 10/30/2005 06:47:07 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1030 | | | $912.90 |
| 10/26/2005 07:54:20 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1026 | | | $921.90 |
| 10/16/2005 01:15:40 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1016 | | | $930.90 |
| 10/07/2005 08:20:35 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $198.45 | IS0001 | | | $939.90 |
| 10/05/2005 08:11:37 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1005 | | | $741.45 |
| 09/25/2005 08:41:39 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0925 | | | $750.45 |
| 09/17/2005 02:51:03 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0917 | | | $759.45 |
| 09/09/2005 08:43:51 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $204.38 | IS0047 | | | $768.45 |
| 08/29/2005 05:06:06 PM | 18167074 | DUNWOODY, BILL | POL | POL5580 | Sales | ($81.00) | 59 | | | $564.07 |
| 08/26/2005 07:47:50 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0826 | | | $645.07 |
| 08/25/2005 07:46:40 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0825 | | | $654.07 |
| 08/12/2005 07:46:29 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0812 | | | $663.07 |
| 08/08/2005 09:22:07 AM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Payroll - UNICOR | $210.32 | IS0044 | | | $672.07 |
| 08/01/2005 05:49:49 PM | 18167074 | DUNWOODY, BILL | POL | POL8893 | Sales | $3.20 | 65 | | | $461.75 |
| 08/01/2005 05:47:44 PM | 18167074 | DUNWOODY, BILL | POL | POL8893 | Sales | ($52.70) | 64 | | | $458.55 |

WorkstationID: COAJGXK821

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

Facility: COA

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/21/2005 07:45:13 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0721 | | | $511.25 |
| 07/11/2005 05:49:31 PM | 18167074 | DUNWOODY, BILL | POL | POL8893 | Sales | ($56.15) | 77 | | | $520.25 |
| 07/08/2005 08:30:09 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $207.26 | IS0040 | | | $576.40 |
| 07/03/2005 12:36:40 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($10.00) | ITS0703 | | | $369.14 |
| 06/09/2005 09:00:57 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0609 | | | $379.14 |
| 06/07/2005 05:27:17 PM | 18167074 | DUNWOODY, BILL | POL | POL1797 | Sales | ($149.00) | 75 | | | $388.14 |
| 06/07/2005 05:27:17 PM | 18167074 | DUNWOODY, BILL | POL | POL1797 | SPO - Released | $35.30 | 655 | | | $537.14 |
| 06/06/2005 05:27:17 PM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Payroll - UNICOR | $305.01 | IS0035 | | | $232.13 |
| 05/27/2005 10:59:46 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0527 | | | $241.13 |
| 05/20/2005 05:48:24 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0520 | | | $250.13 |
| 05/19/2005 05:46:07 PM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Gift | ($100.00) | | | 2339 | $350.13 |
| 05/14/2005 12:39:26 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($10.00) | ITS0514 | | | $360.13 |
| 05/10/2005 02:48:02 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($15.00) | ITS0510 | | | $375.13 |
| 05/06/2005 07:30:18 PM | 18167074 | DUNWOODY, BILL | POL | POL2818 | SPO | ($35.30) | 655 | | | $184.81 |
| 05/06/2005 12:06:27 PM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $190.32 | IS0030 | | | $190.56 |
| 05/03/2005 07:41:38 AM | 18167074 | DUNWOODY, BILL | POL | POL1045 | Sales | ($5.75) | 39 | | | $242.66 |
| 05/03/2005 05:21:31 PM | 18167074 | DUNWOODY, BILL | POL | POL1045 | Sales | ($52.10) | 38 | | | $251.66 |
| 05/18/2005 05:18:33 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0427 | | | |
| 06/58/29 04/27/2005 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($15.00) | ITS0415 | | | |
| 04/15/2005 06:45:03 PM | 18167074 | DUNWOODY, BILL | | | | | | | | |

*12.*

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

Facility: COA

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/08/2005 07:13:24 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($20.00) | ITS0408 | | | $266.66 |
| 04/08/2005 09:01:54 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $205.94 | IS0026 | | | $286.66 |
| 03/19/2005 08:28:27 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($11.00) | ITS0319 | | | $80.72 |
| 03/16/2005 06:15:50 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($136.10) | 104 | | | $91.72 |
| 03/08/2005 06:21:34 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0308 | | | $227.82 |
| 03/08/2005 08:03:33 AM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Payroll - UNICOR | $165.11 | JV0092 | | | $236.82 |
| 02/18/2005 11:08:08 AM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Gift | ($184.85) | | | 1425 | $71.71 |
| 02/17/2005 10:38:47 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0217 | | | $256.56 |
| 02/07/2005 09:31:50 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | ($170.43) | JV0069-V | | | $265.56 |
| 02/07/2005 07:39:11 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $170.43 | JV0069 | | | $435.99 |
| 02/07/2005 07:39:11 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $170.43 | JV0069 | | | $265.56 |
| 02/05/2005 08:01:53 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0205 | | | $95.13 |
| 02/02/2005 05:48:38 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($96.05) | 72 | | | $104.13 |
| 01/22/2005 07:16:03 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($10.00) | ITS0122 | | | $200.18 |
| 01/20/2005 05:38:00 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($79.25) | 65 | | | $210.18 |
| 01/10/2005 09:07:05 AM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Payroll - UNICOR | $158.36 | JV0055 | | | $289.43 |
| 01/08/2005 06:43:42 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($15.00) | ITS0108 | | | $131.07 |
| 01/06/2005 05:18:13 PM | 18167074 | DUNWOODY, BILL | POL | POL4087 | Sales | ($142.50) | 36 | | | $146.07 |
| 12/27/2004 05:25:39 AM | 18167074 | DUNWOODY, BILL | POL | AMSERVI | Lockbox - CD | $20.00 | 70122903 | | | $288.57 |

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

Facility: COA

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/24/2004 03:01:49 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS1224 | | | $268.57 |
| 12/24/2004 06:01:16 AM | 18167074 | DUNWOODY, BILL | POL | AMSERVI | Lockbox - CD | $20.00 | 70112801 | | | $273.57 |
| 12/23/2004 07:29:05 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($20.00) | ITS1223 | | | $253.57 |
| 12/10/2004 07:07:12 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($20.00) | ITS1210 | | | $273.57 |
| 12/06/2004 01:53:51 PM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Payroll - UNICOR | $154.79 | IS0008 | | | $293.57 |
| 12/04/2004 07:11:01 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS1204 | | | $138.78 |
| 12/04/2004 12:05:31 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($8.00) | ITS1204 | | | $143.78 |
| 11/30/2004 09:41:02 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1130 | | | $151.78 |
| 11/26/2004 05:37:26 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1126 | | | $160.78 |
| 11/21/2004 09:34:21 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1121 | | | $169.78 |
| 11/15/2004 07:08:38 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($7.00) | ITS1115 | | | $178.78 |
| 11/15/2004 05:22:52 PM | 18167074 | DUNWOODY, BILL | POL | POL5580 | Sales | ($38.00) | 56 | | | $185.78 |
| 11/15/2004 05:19:31 PM | 18167074 | DUNWOODY, BILL | POL | POL5580 | Sales | ($141.49) | 55 | | | $223.78 |
| 11/11/2004 06:54:51 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($8.00) | ITS1111 | | | $365.27 |
| 11/08/2004 07:06:25 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1108 | | | $373.27 |
| 11/08/2004 10:52:38 AM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Payroll - UNICOR | $153.26 | IS0004 | | | $382.27 |
| 11/01/2004 08:51:03 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($7.00) | ITS1101 | | | $229.01 |
| 10/26/2004 08:42:50 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1026 | | | $236.01 |
| 10/23/2004 02:32:41 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1023 | | | $245.01 |

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/18/2004 05:28:55 PM | 18167074 | DUNWOODY, BILL | POL | POL5580 | Sales | ($25.30) | 43 | | | $254.01 |
| 10/14/2004 08:16:31 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1014 | | | $279.31 |
| 10/08/2004 08:10:25 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $146.74 | IS0001 | | | $288.31 |
| 10/07/2004 08:21:05 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1007 | | | $141.57 |
| 10/02/2004 04:36:02 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS1002 | | | $150.57 |
| 10/02/2004 12:39:22 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1002 | | | $156.57 |
| 09/24/2004 07:08:37 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0924 | | | $165.57 |
| 09/17/2004 08:30:09 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0917 | | | $174.57 |
| 09/16/2004 05:03:23 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($24.00) | 51 | | | $179.57 |
| 09/11/2004 03:20:13 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0911 | | | $203.57 |
| 09/09/2004 09:01:25 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $146.74 | IS0042 | | | $212.57 |
| 09/01/2004 10:36:40 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0901 | | | $65.83 |
| 08/29/2004 10:52:16 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($7.00) | ITS0829 | | | $68.83 |
| 08/27/2004 08:28:14 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($7.00) | ITS0827 | | | $75.83 |
| 08/26/2004 04:59:32 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($46.45) | 69 | | | $82.83 |
| 08/25/2004 10:45:24 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0825 | | | $129.28 |
| 08/18/2004 10:49:27 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($8.00) | ITS0818 | | | $132.28 |
| 08/15/2004 10:48:15 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($7.00) | ITS0815 | | | $140.28 |
| 08/12/2004 10:27:23 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0812 | | | $147.28 |

/15

WorkstationID: COAJGXK821

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

Facility: COA

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/12/2004 05:08:34 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($2.00) | 50 | | | $150.28 |
| 08/12/2004 05:07:34 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($31.83) | 49 | | | $152.28 |
| 08/11/2004 05:28:12 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS0811 | | | $184.11 |
| 08/09/2004 10:57:10 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $101.66 | IS0039 | | | $190.11 |
| 08/08/2004 10:42:15 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS0808 | | | $88.45 |
| 08/06/2004 07:25:33 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0806 | | | $94.45 |
| 08/04/2004 10:43:16 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0804 | | | $103.45 |
| 07/31/2004 07:32:13 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS0731 | | | $108.45 |
| 07/29/2004 05:36:57 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($44.15) | 57 | | | $114.45 |
| 07/24/2004 12:41:59 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0724 | | | $158.60 |
| 07/22/2004 05:16:34 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($59.66) | 89 | | | $167.60 |
| 07/19/2004 10:51:54 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($7.00) | ITS0719 | | | $227.26 |
| 07/18/2004 06:37:06 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0718 | | | $234.26 |
| 07/13/2004 02:04:48 PM | 18167074 | DUNWOODY, BILL | POL | POL1604 | Sales | ($26.03) | 89 | | | $243.26 |
| 07/12/2004 08:17:46 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS0712 | | | $269.29 |
| 07/10/2004 07:59:55 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0710 | | | $275.29 |
| 07/08/2004 12:22:29 PM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $203.34 | JV0142 | | | $278.29 |
| 06/27/2004 02:49:51 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($8.00) | ITS0627 | | | $74.95 |
| 06/21/2004 06:43:16 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS0621 | | | $82.95 |

*16.*

WorkstationID: COAJGXK821

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/17/2004 08:31:45 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0617 | | | $88.95 |
| 06/17/2004 05:15:35 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($47.41) | 38 | | | $91.95 |
| 06/13/2004 06:43:08 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS0613 | | | $139.36 |
| 06/07/2004 10:22:59 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $138.00 | IS0030 | | | $145.36 |
| 06/05/2004 11:00:34 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0605 | | | $7.36 |
| 05/27/2004 04:55:42 PM | 18167074 | DUNWOODY, BILL | POL | POL5412 | Sales | ($8.00) | 34 | | | $16.36 |
| 05/27/2004 04:53:21 PM | 18167074 | DUNWOODY, BILL | POL | POL5412 | Sales | ($101.08) | 33 | | | $24.36 |
| 05/26/2004 07:55:54 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0526 | | | $125.44 |
| 05/11/2004 06:25:48 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0511 | | | $130.44 |
| 05/09/2004 03:06:57 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0509 | | | $139.44 |
| 05/07/2004 12:41:32 PM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Payroll - UNICOR | $140.53 | IS0027 | | | $144.44 |
| 05/06/2004 05:21:21 PM | 18167074 | DUNWOODY, BILL | POL | POL5412 | Sales | ($14.55) | 50 | | | $3.91 |
| 05/02/2004 10:21:36 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0502 | | | $18.46 |
| 04/17/2004 02:51:47 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0417 | | | $21.46 |
| 04/15/2004 05:26:46 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | $2.95 | 38 | | | $30.46 |
| 04/15/2004 05:05:43 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($24.44) | 30 | | | $27.51 |
| 04/09/2004 07:15:58 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0409 | | | $51.95 |
| 04/08/2004 03:10:12 PM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Local Collections | $30.00 | 12774 | 72661 | | $60.95 |
| 04/08/2004 02:15:57 PM | 18167074 | DUNWOODY, BILL | POL | POL5412 | Sales | ($129.55) | 34 | | | $30.95 |

17.

WorkstationID: COAJGXK821

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/08/2004 08:29:36 AM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $150.42 | IS0023 | | | $160.50 |
| 04/05/2004 05:43:14 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0405 | | | $10.08 |
| 04/05/2004 03:22:23 PM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Local Collections | $15.00 | 12455 | 72656 | | $15.08 |
| 04/04/2004 09:16:15 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($1.00) | ITS0404 | | | $0.08 |
| 03/20/2004 12:06:00 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0320 | | | $1.08 |
| 03/11/2004 02:17:28 PM | 18167074 | DUNWOODY, BILL | POL | POL1604 | Sales | ($85.40) | 34 | | | $10.08 |
| 03/09/2004 05:42:34 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0309 | | | $95.48 |
| 03/08/2004 08:54:03 AM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Payroll - UNICOR | $100.05 | IS0018 | | | $104.48 |
| 02/27/2004 07:33:21 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0227 | | | $4.43 |
| 02/19/2004 06:16:21 PM | 18167074 | DUNWOODY, BILL | POL | POL5412 | Sales | $5.70 | 96 | | | $9.43 |
| 02/19/2004 05:59:09 PM | 18167074 | DUNWOODY, BILL | POL | POL5412 | Sales | ($4.50) | 88 | | | $3.73 |
| 02/19/2004 05:58:33 PM | 18167074 | DUNWOODY, BILL | POL | POL5412 | Sales | ($32.45) | 87 | | | $8.23 |
| 02/18/2004 06:48:36 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0218 | | | $40.68 |
| 02/14/2004 05:56:10 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0214 | | | $45.68 |
| 02/12/2004 05:21:04 PM | 18167074 | DUNWOODY, BILL | POL | POL5580 | Sales | ($71.85) | 29 | | | $54.68 |
| 02/06/2004 05:24:40 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0206 | | | $126.53 |
| 02/06/2004 01:45:55 PM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Payroll - UNICOR | $109.01 | IS0015 | | | $135.53 |
| 02/04/2004 08:16:31 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0204 | | | $26.52 |
| 01/24/2004 04:53:19 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0124 | | | $29.52 |

_18._

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/21/2004 07:49:22 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0121 | | | $32.52 |
| 01/19/2004 11:42:33 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($8.00) | ITS0119 | | | $35.52 |
| 01/15/2004 02:30:50 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($3.00) | 80 | | | $43.52 |
| 01/15/2004 02:27:56 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($56.60) | 79 | | | $46.52 |
| 01/12/2004 08:18:26 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0112 | | | $103.12 |
| 01/10/2004 05:08:28 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($15.00) | ITS0110 | | | $112.12 |
| 01/09/2004 06:29:19 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS0109 | | | $127.12 |
| 01/09/2004 01:05:35 PM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Payroll - UNICOR | $136.04 | IS0011 | | | $136.12 |
| 12/27/2003 02:50:20 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS1227 | | | $0.08 |
| 12/25/2003 06:39:03 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS1225 | | | $6.08 |
| 12/23/2003 07:38:03 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1223 | | | $11.08 |
| 12/22/2003 03:22:47 PM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Local Collections | $20.00 | 5200 | 93548 | | $20.08 |
| 12/20/2003 11:01:16 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($2.00) | ITS1220 | | | $0.08 |
| 12/18/2003 05:26:49 PM | 18167074 | DUNWOODY, BILL | POL | POL8572 | Sales | ($14.20) | 53 | | | $2.08 |
| 12/11/2003 05:42:09 PM | 18167074 | DUNWOODY, BILL | POL | POL5580 | Sales | ($40.55) | 41 | | | $16.28 |
| 12/11/2003 05:01:41 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1211 | | | $56.83 |
| 12/08/2003 10:39:39 AM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Payroll - UNICOR | $54.68 | IS0007 | | | $65.83 |
| 12/04/2003 07:31:21 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($42.10) | 124 | | | $11.15 |
| 11/26/2003 09:44:27 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($8.00) | ITS1126 | | | $53.25 |

*19.*

WorkstationID: COAJGXK821

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/24/2003 07:00:44 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | $0.00 | 168 | | | $61.25 |
| 11/24/2003 06:59:55 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($19.45) | 167 | | | $61.25 |
| 11/23/2003 11:54:14 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($4.00) | ITS1123 | | | $80.70 |
| 11/22/2003 12:22:05 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1122 | | | $84.70 |
| 11/22/2003 10:06:14 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1122 | | | $93.70 |
| 11/07/2003 07:33:26 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($9.00) | ITS1107 | | | $102.70 |
| 11/07/2003 02:16:52 PM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Payroll - UNICOR | $110.74 | IS0005 | | | $111.70 |
| 10/29/2003 04:47:58 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS1029 | | | $0.96 |
| 10/25/2003 07:29:53 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($4.00) | ITS1025 | | | $3.96 |
| 10/23/2003 05:18:41 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($9.75) | 39 | | | $7.96 |
| 10/20/2003 04:32:50 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS1020 | | | $17.71 |
| 10/18/2003 03:05:01 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS1018 | | | $22.71 |
| 10/16/2003 06:30:47 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($31.25) | 109 | | | $28.71 |
| 10/09/2003 05:49:17 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($14.00) | 49 | | | $59.96 |
| 10/09/2003 05:44:56 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($61.65) | 47 | | | $73.96 |
| 10/08/2003 06:40:40 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS1008 | | | $135.61 |
| 10/08/2003 09:19:40 AM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Payroll - UNICOR | $110.05 | IS0001 | | | $140.61 |
| 10/04/2003 10:53:04 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS1004 | | | $30.56 |
| 09/29/2003 06:34:47 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS0929 | | | $35.56 |

20.

WorkstationID: COAJGXK821

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/23/2003 04:57:14 PM | 18167074 | DUNWOODY, BILL | POL | POL5580 | Sales | ($21.10) | 27 | | | $41.56 |
| 09/09/2003 07:53:43 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0909 | | | $62.66 |
| 09/08/2003 09:58:17 AM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Payroll - UNICOR | $66.93 | JV0118 | | | $67.66 |
| 09/06/2003 08:33:10 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($4.00) | ITS0906 | | | $0.73 |
| 09/05/2003 07:59:41 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($2.00) | ITS0905 | | | $4.73 |
| 08/30/2003 10:38:42 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($8.00) | ITS0830 | | | $6.73 |
| 08/28/2003 05:20:11 PM | 18167074 | DUNWOODY, BILL | POL | POL5412 | Sales | ($19.70) | 40 | | | $14.73 |
| 08/22/2003 09:34:49 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS0822 | | | $34.43 |
| 08/21/2003 06:49:11 PM | 18167074 | DUNWOODY, BILL | POL | POL5412 | Sales | ($1.30) | 70 | | | $40.43 |
| 08/21/2003 06:47:56 PM | 18167074 | DUNWOODY, BILL | POL | POL5412 | Sales | ($11.70) | 69 | | | $41.73 |
| 08/19/2003 07:38:56 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0819 | | | $53.43 |
| 08/17/2003 02:36:02 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0817 | | | $56.43 |
| 08/14/2003 04:58:12 PM | 18167074 | DUNWOODY, BILL | POL | POL5580 | Sales | ($19.38) | 32 | | | $61.43 |
| 08/08/2003 08:29:32 AM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Payroll - UNICOR | $79.54 | JV0105 | | | $80.81 |
| 08/02/2003 09:14:37 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0802 | | | $1.27 |
| 07/31/2003 05:12:46 PM | 18167074 | DUNWOODY, BILL | POL | POL5580 | Sales | ($4.85) | 18 | | | $4.27 |
| 07/19/2003 03:07:47 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0719 | | | $9.12 |
| 07/17/2003 06:16:17 PM | 18167074 | DUNWOODY, BILL | POL | POL1268 | Sales | ($35.90) | 83 | | | $14.12 |
| 07/16/2003 06:55:30 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($4.00) | ITS0716 | | | $50.02 |

WorkstationID: COAJGXK821

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

Facility: COA

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/12/2003 04:29:44 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($8.00) | ITS0712 | | | $54.02 |
| 07/11/2003 09:48:27 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS0711 | | | $62.02 |
| 07/09/2003 08:04:26 AM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Payroll - UNICOR | $67.51 | JV0094 | | | $68.02 |
| 07/06/2003 10:44:08 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0706 | | | $0.51 |
| 07/05/2003 11:22:22 AM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0705 | | | $5.51 |
| 07/04/2003 12:45:40 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($10.00) | ITS0704 | | | $10.51 |
| 06/19/2003 02:20:23 PM | 18167074 | DUNWOODY, BILL | POL | POL1941 | Local Collections | $20.00 | 8554 | 93186 | | $20.51 |
| 06/14/2003 04:58:44 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($5.00) | ITS0614 | | | $0.51 |
| 06/14/2003 02:57:47 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($2.00) | ITS0614 | | | $5.51 |
| 06/12/2003 06:54:49 PM | 18167074 | DUNWOODY, BILL | POL | POL1045 | Sales | $0.00 | 70 | | | $7.51 |
| 06/12/2003 06:53:38 PM | 18167074 | DUNWOODY, BILL | POL | POL1045 | Sales | ($35.40) | 69 | | | $7.51 |
| 06/11/2003 06:28:26 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0611 | | | $42.91 |
| 06/11/2003 08:03:02 AM | 18167074 | DUNWOODY, BILL | POL | POL5286 | FRP Rejected | $10.08 | IIS018 | | | $45.91 |
| 06/09/2003 08:49:04 AM | 18167074 | DUNWOODY, BILL | POL | POL5286 | FRP Unicor Pymt | ($35.08) | IIS018 | | | $35.83 |
| 06/09/2003 08:49:04 AM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Payroll - UNICOR | $70.16 | JV0084 | | | $70.91 |
| 05/28/2003 09:29:17 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($2.00) | ITS0528 | | | $0.75 |
| 05/26/2003 02:25:37 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($2.00) | ITS0526 | | | $2.75 |
| 05/25/2003 09:55:12 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($4.00) | ITS0525 | | | $4.75 |
| 05/15/2003 07:23:18 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($2.00) | ITS0515 | | | $8.75 |

22.

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/08/2003 06:34:19 PM | 18167074 | DUNWOODY, BILL | POL | POL1604 | Sales | ($3.00) | 79 - | | | $10.75 |
| 05/08/2003 06:30:42 PM | 18167074 | DUNWOODY, BILL | POL | POL1604 | Sales | ($53.85) | 78 | | | $13.75 |
| 05/08/2003 09:10:58 AM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Payroll - UNICOR | $42.44 | IS0037 | | | $67.60 |
| 05/02/2003 09:52:55 AM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Payroll - IPP | $21.42 | JV0066 | | | $25.16 |
| 04/26/2003 01:04:13 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($2.00) | ITS0426 | | | $3.74 |
| 04/20/2003 10:14:29 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($1.00) | ITS0420 | | | $5.74 |
| 04/10/2003 07:53:17 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($2.00) | ITS0410 | | | $6.74 |
| 04/04/2003 08:24:35 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($2.00) | ITS0404 | | | $8.74 |
| 04/03/2003 10:13:19 AM | 18167074 | DUNWOODY, BILL | POL | POL8572 | Sales | ($21.70) | 22 | | | $10.74 |
| 04/02/2003 01:56:32 PM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Payroll - IPP | $31.60 | JV0053 | | | $32.44 |
| 03/27/2003 06:42:16 PM | 18167074 | DUNWOODY, BILL | POL | POL1797 | Sales | ($9.05) | 70 | | | $0.84 |
| 03/22/2003 03:04:36 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($6.00) | ITS0322 | | | $9.89 |
| 03/19/2003 03:25:18 PM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Local Collections | $15.00 | 2988 | 93415 | | $15.89 |
| 03/11/2003 08:16:36 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0311 | | | $0.89 |
| 03/06/2003 06:43:02 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($2.00) | ITS0306 | | | $3.89 |
| 03/03/2003 11:00:34 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0303 | | | $5.89 |
| 03/03/2003 02:30:04 PM | 18167074 | DUNWOODY, BILL | POL | POL2593 | FRP Quarterly Pymt | ($25.00) | IIS011 | | | $8.89 |
| 03/03/2003 01:21:11 PM | 18167074 | DUNWOODY, BILL | POL | POL2593 | Payroll - IPP | $25.64 | JV0044 | | | $33.89 |
| 02/25/2003 08:41:40 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($3.00) | ITS0225 | | | $8.25 |

*[Handwritten annotation over Receipt# column: "I started working in unicor right here" with an arrow]*

*[Handwritten page number: 23]*

Facility: COA

Federal Bureau of Prisons
TRUFACS
**View Inmate Transactions**
Sensitive But Unclassified

| Date/Time | Inmate Reg# | Inmate Name | Facility | User Id | TransactionType | Amount | Reference# | Receipt# | Payment# | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/20/2003 06:46:54 PM | 18167074 | DUNWOODY, BILL | POL | AMServic | Phone Withdrawal | ($2.00) | ITS0220 | | | $11.25 |
| 02/20/2003 09:44:48 AM | 18167074 | DUNWOODY, BILL | POL | POL1797 | Sales | ($22.85) | 15 | | | $13.25 |
| 02/14/2003 02:51:05 PM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Local Collections | $20.00 | 807 | 93382 | | $36.10 |
| 02/14/2003 02:51:05 PM | 18167074 | DUNWOODY, BILL | POL | POL5286 | Local Collections | $15.00 | 793 | 93382 | | $16.10 |
| 02/06/2003 09:42:20 AM | 18167074 | DUNWOODY, BILL | POL | DataMig | Conversion | $1.10 | | | | $1.10 |

**Total Number Transactions: 440**

WorkstationID: COAJGXK821

The Petitioner wishes to reiterate again, that he never had any dealings with McNair period, and that he is offering to submit himself for a Polygraph Examination to prove he is telling the truth. He has made several requests to the FBI to take a polygraph, but the FBI expressed that they are not interested in the Petitioner because they conducted an investigation on the Petitioner and determined he had no involvement with McNair's escape. Since there was nothing there, the FBI closed their investigation as to the Petitioner.

Attached please see Exhibit supporting that the Petitioner has been in communication with the FBI and the substance of the communications.

The Petitioner also wrote a letter for the FBI initially and gave that letter to Warden Fredrick Menifee and asked him to give it to the FBI. In that letter Petitioner told the FBI that he wanted to take a Polygraph Test. He wanted to clear himself of the lies that the SIS had falsely accused him of.

The FBI investigated the possibility of the Petitioner's involvement in the matter and dropped it. The FBI is one of the best investigative agencies in the United States of America. Here we have an inmate escaped from a United States Penitentiary Maximum Security Prison. Only recently has McNair been captured, after remaining at large for $1\frac{1}{2}$ years. This was a very High Profile Case. If the Petitioner was guilty of all that crap the SIS threw together and accused him of, the FBI would have hung the Petitioner out to dry. They would have charged him. The Petitioner pleaded that the FBI give him a Polygraph Test and the FBI informed the Warden that they were not interested in the Petitioner.

The FBI did not want the Petitioner because they knew he was not involved. However, instead of letting him back out to the compound to return to the inmate population after he was cleared by the FBI, the SIS wrote an Incident Report in Bad Faith and falsely charged the Petitioner with Aiding Escape, which

EXHIBIT-E

This is Proof showing √ have been in Contact with the F.B.I.

Also Proof √ ask to take a polygraph test

you will see the FBI Closed the Case

you will see the F.B.I was not interested in me.

*This is a Copy from the F.B.I. through the Freedom of Information Privacy Act Request*

12-13-06

Federal Bureau of Investigation
5353 Essen Lane, Suite 200
Baton Rouge, LA 70809

Federal Bureau of Investigation
428 E. Boston, 2nd. Floor
Covington, LA 70433

Federal Bureau of Investigation
401 Edwards St., Suite 822
Shreveport, LA 71101

Federal Bureau of Investigation:

　　　　I am contacting all FBI Field Offices within the state of Louisiana, as I am not certain which filed office is handling this investigation.

　　　　I am an inmate formerly confined at the United States Penitentiary in Pollock Louisiana, and have been recently transferred to the Federal Correctional Complex - USP2 in Coleman, Florida. I am contacting the FBI because I previously was the subject of an investigation involving an escaped inmate from the USP Pollock facility.

　　　　Though I was cleared of any wrongdoing by the FBI, I was severely disciplined by the prison system and transferred to another facility over this matter. I would like to speak with one of the agents that's over the Pollock investigation, and would like to offer to take a polygraph examination to prove my good faith and hopefully in return be able to clear myself from this unduly punishment imposed upon me through wrongful disciplinary action at the prison.

　　　　I am willing to answer as many questions as your examiner may choose to ask of me inregards to the USP Pollock investigation. Please write me back and provide the name and telephone number of the agent handling this investigation and I will contact him to further discuss my situation.

Respectfully, *William T. (Bill) Dunwoody*

William T. (Bill) Dunwoody
#18167-074 Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034



**U.S. Department of Justice**

Federal Bureau of Investigation

In Reply, Please Refer to
File No.  90C-NO-70900

300 Jackson Street
Alexandria, Louisiana 71301
318-443-5097
February 12, 2007

William T. Dunwoody
Unit K1    #18167-074
Federal Correctional Complex - USP2
PO Box 1034
Coleman, FL 33521-1034

Dear Mr. Dunwoody:

        I have received and read your letters dated 12/13/2006
and 1/21/2007.  Although the United States Marshal's Service
continues to pursue Richard Lee McNair, the FBI investigation of
the escape is now closed.  As such, we will not provide you with
an opportunity to take a polygraph examination.

        The complaint that you raise in your letters is that
you were "severely disciplined by the prison system and
transferred to another facility over the matter."  Your complaint
is of an administrative nature and should be handled by the
Bureau of Prisons.  The FBI has no jurisdiction over Bureau of
Prison administrative punishments.

                        Sincerely,

                        James Bernazzani
                        Special Agent in Charge


                        By
                        Ricardo A. Martinez
                        Supervisory Senior Resident Agent

March 12, 2007


Ricardo A. Martinez
Supervisory Senior Resident Agent
Federal Bureau of Investigation
300 Jackson St.
Alexandria, LA 71301


RE: Request for disclosure pursuant to
    5 USC § 552  The Freedom of Information Act
    and
    5 USC § 552 (a) The Privacy Act of 1974


Dear Special Agent Martinez,


        Thank you for your reply of February 12, 2007. Since the FBI has now closed it's investigation, I would like to make a request for disclosure of all information maintained by the FBI which pertains to me, or which makes reference or mention of my name, in relation to the escape investigation.

        This information is needed to help me prepare a defense to the wrongful prison disciplinary action which has me currently oppressed.

        I make this request for disclosure pursuant to 5 USC § 552, and 5 USC § 552 (a). A Vaughn Index is also requested should any portion be deemed non-disclosable. See: Vaughn vs. Rosen, 484 F 2d 820.

        If any costs in excess of $25.00 are incurred with this request please inform me of the additional costs for my approval prior to their being incurred. I request that all costs be waived as I am an indigent incarcerated person. If a waiver of fees cannot be granted, please consider me for a reduction of costs under relevant sections of the FOI/PA.

        Further, this information request is in the Public Interest.

        Thank you for your prompt attention in this matter.

Sincerely,

William T. (Bill) Dunwoody
18167-074  Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034

P.S.    Special Agent Martinez:

I understand what you mean when you said my complaint is of an administrative
nature and should be handled by the Bureau of Prisons. This is one time in my
life that I am innocent and I have been trying to prove it. When I was in
Pollock Louisiana under investigation, I gave a letter to the Warden -"Fredrick
Menifee" telling him I wanted to take a polygraph test and he told me he didn't
have anything to do with the investigation because it had been turned over to
the FBI, so I asked him if he would mail the letter to the FBI and he said he
would. The next week when he came around he told me the FBI got my letter.
Later on I asked him if the FBI was going to let me take a polygraph test and
he said they are not interested. I asked him what are they interested in and
he said "I don't know," and that was the end of the conversation. He left.
I did tell him I did not have anything to do with the escape. I told him I
didn't even know the guy was going to escape. Everything I have just said is
the truth.
With this said, would you please send me a copy of the letter the Warden for-
warded to the FBI at my request stating that I was asking to take a polygraph
test? Also would you please verify that I did ask to take a polygraph test
while the investigation was going on? It is necessary that I have this verified
for my defense of the prison disciplinary action.

I would also like to ask if at anytime this case is opened back up, would
you please consider giving me a polygraph test? If I was guilty of any of this
I would not be asking to take a polygraph test because if you lie, that examiner
will catch you. I do know the FBI has got top of the line examiners and you
don't pull the wool over their eyes.

Sincerly

William T. "Bill" Dunmeoorly

resulted in Petitioner losing 20 days of his Good Conduct Time Credits, and caused him to be placed on a High Accountability Status, where he is now required to check in with staff every two hours. He received a Disciplinary Transfer, lost his job with UNICOR, and his livelihood. How can it possibly be justified that the SIS can charge the Petitioner and sanction him when they had turned the case over to the FBI and the FBI cleared on him?

It is because of this that the Petitioner is claiming that SIS at USP Pollock abused the purpose and scope of the prisons disciplinary policy, and wrongfully used their authority to harm, oppress, and otherwise retaliate against the Petitioner all because they were angry at him for refusing to accept their proposition to work as an undercover informer for them. The Petitioner's incarceration does not require that he place himself in jeopardy nor does his incarceration require him to assume the role of an undercover agent or informant for any agency of the government. He should not be punished because he respectfully declined their offer.

22.

Supporting FACTS (state *briefly* without citing cases or law):  See attached continuation
pages.

_____

_____

_____

_____

Exhaustion:
[1] - Have you presented ground three to the Bureau of Prisons, either through the prison grievance system or other administrative proceeding?
      Yes  XX  No  ☐

If yes, please provide the results of the proceeding(s) and the relevant date(s).  Include any appeals:
  See Attached Exhibits.

_____

[2]-(Answer only if you are challenging an issue related to removal (immigration) proceedings) - Did you present ground three to the Board of Immigration Appeals?                Yes ☐      No ☐

If yes, please provide the results of the proceeding(s) and the relevant date(s). N/A

_____

(d).  Ground four:   Official Oppression / Abuse of Office or Abuse of Authority.
  Reckless Endangerment. Unlawful Restraint / False Imprisonment.

_____

_____

Supporting FACTS (state *briefly* without citing cases or law):  The Petitioner was wrongfully
 locked away in the prisons Special Housing Unit. There was no need, nor
 justified reason to have the Petitioner placed in isolation. The High
 Accountability Status currently on the Petitioner is also unreasonable
 and he should be relieved from such status. The Office of Inspector General
 and SIS both endangered the Petitioner when they tried to get him to work
 as an undercover informant. Then to retaliate for not cooperating with them
Exhaustion: constitutes abuse of office or authority. You cannot use your position
[1] - Have you presented ground four to the Bureau of Prisons, either through the prison grievance to oppress
system or other administrative proceeding?                                                    someone.
      Yes XX  No  ☐

XX
23.

**Continuation of Ground 3**

The DHO Examiner's finding are factually unfounded. The truth is that Richard McNair only made up the story of having 100 bags of tobacco hidded somewhere in UNICOR's warehouse so he could win over inmate **Joe Cuff's** assistance. McNair tricked inmate Cuff into rolling a pallet of Mailbags out to the warehouse. Cuff thought he was rolling out tobacco in the Mailbags, but in actuality he was rolling out McNair who had concealed himself inside of a Mailbag.

While Joe Cuff was in the SHU he told the SIS and everybody else that McNair told him that he was going to be sending a bunch of tobacco to the warehouse. He said it would probably add up to 100 bags.
McNair knew that Cuff was the guy who's job was to roll the pallets out to the dock. McNair worked a deal with Cuff to roll out certain pallets. Cuff only did so because he believed that tobacco was hidden inside them, and McNair had offered him a cut of the tobacco when they retrieved the tobacco from the pallets at some future date.

What inmate Cuff didn't realize was that McNair never had any tobacco. The story was all a hoax to entice Cuff into helping him. Once McNair had been rolled out to the dock area he was able to perfect his escape.

The DHO Examiner was wrong in his findings, and should not have connected the Petitioner to something that never existed. Common sense will tell you if McNair escaped and got away, the tobacco would not have done him any good. And if he had gotten caught trying to escape it still wouldn't have done him any good because they would have sent him on to another prison. So none of that stuff the DHO Examiner keeps using through out his DHO Report makes any sense.

The prison's SIS also conducted a search for the alleged tobacco and found nothing. It never existed. The DHO officer should have cleared the Petitioner instead of acting like it really existed when he knew from SIS that there never was any tobacco. It was only a fantasy.

Below is a part cut from the written DHO Report:

*This is from Page 2 of DHO report*

McNair's job was to sort mail bags. He was said to change his assignment by placing mail bags on pallets and shrink wrapping them to go to the warehouse. McNair had an alleged plan to hide tobacco on pallets to be hidden at the warehouse until May. The pallet(s) would then be brought back inside from the warehouse. The change in procedures occurred sometime around a week before McNair escaped. You are known to have been selling tobacco and had been seen in McNair's work site previously. Your expertise in UNICOR is palletizing items for transport.

The DHO tries to link the Petitioner to McNair because he says he has been known to have been selling tobacco and been seen in McNairs work site previously.

As previously stated the Petitioner admits to selling two inmates some tobacco previously, but those two inmates were not McNair.

The Petitioner's supervisor was named Mr. Veluman. There was a period of 2 weeks that Mr. Veluman was not at work and as such the inmates who worked for him had to work in other areas because they were not allowed in their regular area without their supervisor.

The Petitioner was reassigned to sit at the big table where McNair was working. There was plenty of room to accommodate the additional inmates. Normally only McNair worked at that table. The Petitioners presence in the area was only by following the orders which were given to him by staff. He did not seek to be in that area by personal choice.

If the Court will please check with the BOP you will find that Mr. Veluman was not at work at UNICOR on April 3rd. 4th., and 5th., and he had taken a leave of absence for 2 weeks. The McNair escape occurred on April 5th., 2006.

At the DHO Hearing the Petitioner asked the DHO Examiner if he had reviewed the cameras that were observing that particular area, and the DHO stated he had. This should be proof enough that the Petitioner was not involved with the escape, nor did he do anything which could be construed as being improper.

25

Below is another part of the DHO Report:

*This from Page 3 of DHO report*

It was common knowledge to inmates involved that pallets had been sent to the warehouse in lieu of being "staged" in the UNICOR trailer within the Rear Gate. Several inmates had knowledge that McNair had an alleged plan to hide tobacco on the pallets so that storage of the tobacco could occur at the outside warehouse until a later date. You have admitted dealing in sales of tobacco. Knowledge of the alleged plan indicates complicity in the plot to smuggle tobacco out and then back inside the institution, which was actually an escape plot on McNair's part.

The DHO Examiner states that several inmates had knowledge McNair had an alleged plan to hide tobacco on the pallet for storage at the warehouse. If you will notice, the DHO Examiner does not say that the Petitioner had knowledge of the alleged plan to hide tobacco. The several inmates he is referring to were the ones who worked in the mailbag section along with McNair. The Petitioner did not work in the mailbag section and did not have any knowledge of the so called plan to hide tobacco on a pallet for storage at the warehouse. The Petitioner only learned this information after hearing about it from other inmates while they were housed in the SHU.

The DHO does not say that the Petitioner did have any knowledge, but again he tries to tangle the Petitioner up in the story by saying that the Petitioner admitted to selling some tobacco, but it has nothing to do with anything about McNair. Then he says that knowledge of the alleged plan indicates complicity in the plot to smuggle tobacco out and then back inside the prison. There never was any tobacco smuggled. It was all a hoax made up by McNair. It never existed.

The Petitioner wishes for the Court to read the DHO Report and see where the DHO Examiner uses the word "alleged plan." In fact he uses the alleged plan several times in this report, but you will notice he admits it was actually an escape plot on McNairs part.

If SIS had never received that fictitious "drop note," then they would never have messed with the Petitioner, because he was not connected in any way to McNair or the escape.

They just hunt stuff to link people with, and this DHO Report

fully supports the Petitioner's explanation given herein.

While the Petitioner was in the SHU at USP Pollock an SIS Officer came by his door and the Petitioner spoke with him and told him he was not guilty of any of this. The SIS Officer said:

> "It don't make a fuck whether you are or not, you should have worked for us and you would be going to greener pastures."
> He said, "Dude that's the way the ball bounces, so now you're ass has got to suffer the consequences."

When the Petitioner was asked to go back out on the compound and work undercover he told them he did not want to do that. He will always remember what they told him about a wrong side and a right side and that the government is always right. They asked him, "Mr. Dunwoody, do you want to rethink the offer," and he told them No. "You will have to get somebody else to do that."

So now it should be more clear to the Court. What has occurred to the Petitioner is retaliation from the prisons SIS office and the Office of Inspector General because he declined to assist them in an undercover capacity. This is a deliberate act created out of spite by employees of a government agency and they are causing harm to the Petitioner.

This clearly constitutes Official Oppression, Abuse of Authority, Reckless Endangerment, Falsifying Government Reports or Documents to knowingly and intentionally subject an innocent person to wrongful disciplinary action and criminal investigation.

If yes, please provide the results of the proceeding(s) and the relevant date(s).  Include any appeals:
See Attached Exhibits.

_____

_____

[2]-(Answer only if you are challenging an issue related to removal (immigration) proceedings) - Did you present ground four to the Board of Immigration Appeals?          Yes ☐          No ☐

N/A

If yes, please provide the results of the proceeding(s) and the relevant date(s). _____

_____

8.    WHEREFORE, based upon the grounds raised above, Petitioner prays that the court will grant the

following relief:  Restore Good Conduct Time Credits, Lift and Relieve the

Petitioner of all sanctions, and Expunge the Incident Report and the

Entire Disciplinary Action from the Petitioners' Record. Order the

Federal Bureau of Prisons to take the Petitioner off of the 2 - Hour

High Accountability Watch.  Restore Petitioners' Pay Grade to the status

as before, and allow him employment opportunity with UNICOR Federal Prison

Industries at the institution where he is currently confined, with all

benefits and seniority status that he previously held when he was at
USP Pollock.          **DECLARATION**   Also the $720.00 seized by SIS
should be returned to the Petitioner's account.

I declare under penalty of perjury that I have read the above and the information contained herein is true and correct.

4-23-08
(Date)

"Bill"
_William T. _____
Signature of Petitioner

**IF MAILED BY PRISONER:**

I declare or state under penalty of perjury that this petition was (check one):

☒ delivered to prison officials for mailing,  or  ☐ deposited in the prison's internal mail system on:

4-23-08   (date).

"Bill"
_William T. _____
Signature of Petitioner

Revised 07/02

XX

28.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA


WILLIAM THATCHER "BILL" DUNWOODY

          (Petitioner)

    -vs-


HARLEY LAPPIN, DIRECTOR, ET AL.,

          (Respondents)        Case No._____


## NOTICE AND PERSONAL STATEMENT OF THE PETITIONER


To the Honorable Judge of Said Court:


      I worked for Mr. J. Veluman in UNICOR. There were 6 of us who worked in this section. There was a big fence between us and the mailbag section and the sewing section. The fence went from the floor to the top, around 12 feet high. The gates stayed locked at all times.

      We repaired sewing machines and other types of machines too. My job was to put one or two sewing machines on a pallet and put screws through the legs of the sewing machines which would screw into the wooden pallet. This would keep the machines from falling off the pallet when it was being transported from one prison to another.

      I also would put sides and a top on the pallet, but always left both ends of the pallet open so they could see all the way through the pallet.

      In all my close to 4 years I worked at this job I never had any

problems and my work was accepted as good and proper.

My job had nothing to do with Mailbags. I was separated from the Mailbag Department by a 12 foot high fence with locked gates. I never helped McNair fix or work on any pallets or Mailbag pallets.

There are cameras all over UNICOR. There are cameras in the mailbag section where McNair worked. I am not on camera helping McNair do anything to a pallet. The reason I know this is I never helped him do anything to a pallet. I never told McNair nothing about a pallet.

To be honest, I have never talked to McNair about anything that had to do with fixing a mailbag pallet. In fact I have only spoke very few words to McNair. I did not run around with McNair. I did not know his real name was Richard McNair till after he escaped. I saw him on TV.

I cut the following part from the DHO Report. They are accusing me of stuff that never happened and there is no proof that it happened because I know in my heart I never did any of these things that SIS Officer T. Garrow is accusing me of. *This is from Page 2 of DHO report*

The DHO finds on April 5, 2006, at or about 6:30 a.m., you were found to have committed the prohibited act of Aiding Escape, code 102(A). The DHO relied on the written report from the investigating staff member who stated you were found to be involved in aiding the escape of Richard McNair. You provided expertise in preparing a pallet for use by McNair to effectuate his escape from this institution. You willingly contributed to McNair's efforts to prepare for and make his escape.

He said that I willingly contributed to McNair's efforts to prepare for and make his escape. There is no proof to none of this because I know for a fact I did not contribute to nothing.

He said I provided expertise in preparing a pallet for use by McNair to effectuate his escape. That is an outright lie. He's lying through his teeth. I know for a fact he cannot prove this because I know for a fact I did not have anything to do with any of this junk the SIS and DHO fabricated.

30.

I am asking you to please make these people show proof of all these lies they railroaded me on. It is important that you know I am telling the truth. This is one time in my life that I am not guilty and if you check into this you will find out I am telling you the truth.

Below is another part I cut out from the DHO Report. This is not only crazy, but it is bizarre. He is trying to say because I sat at the table a few times I am guilty of helping McNair.

This is from Page 2 of DHO report

The DHO believes you committed the prohibited act of code 102(A). The decision was based on the written report from the investigating staff member who stated you aided an escape from this facility. Staff noted that you suddenly were sitting in McNair's work area which was not an area you would normally be in. This occurred one or two days before his escape. Your job in UNICOR was to create ways in which to palletize sewing machines for transport. You were responsible for creating means in which to place products on pallets and make them transportable.

He says I was suddenly sitting in McNair's work area which was not an area I would normally be in. Then he says this occurred one or two days before his escape. My boss Mr. J. Veluman was at another prison checking out some sewing machines. He was gone for a few weeks. When he is not there at UNICOR we are not allowed to go back to our work area. Besides the gate is locked. They keep the gate locked even when we are back there.

We have to stay out on the main floor where the sewing machines and mailbag sections are. They don't want us talking to the sewing machine operators because it will slow production down. They do not want us talking to nobody while they are working.

Sometimes they would find us something to do, but most of the time they would tell us to go in the back and sit down out of the way of the main bosses. We were told several times to go back to the big table and sit down. This is the table McNair worked at, but we never paid no attention to him.

Most of the time we would read a magazine or look at a parts book. I spoke only very few words to him.

31.

If my boss had been at UNICOR, the 6 of us would not have been out there. So what I am saying is I was told to sit there. I only set down at that table a few times. I did not set there all the time.

Would you please contact Mr. J. Veluman at UNICOR in Pollock, Louisiana United States Penitentiary and ask him if he was at work at USP Pollock the week McNair escaped, and that will prove why I was setting down at that table.

It states in the DHO Report that I was setting there one or two days before McNair escaped. That should not make any difference anyway, because I heard in the SHU that McNair had his pallet fixed along time before he escaped. They have cameras and they know when McNair done his work.

You can ask J. Veluman and he will tell you he was not there the week of the 3rd., 4th., and 5th.  McNair escaped on the 5th. of April, 2006.

The DHO officer is way out of line on this and the SIS too. The only reason they picked me out is that "drop note" Kenneth Stanford mailed the SIS. Ken owed me some money and I ended up with all of this headache.

They took 20 days Good Conduct Time Credits.

They put me on Maximum Custody.

They put me on a High Accountability Status. I have to carry a card with me and check in every 2 hours with staff. If I miss a 2 hour check they will put me in lockdown in the SHU for failure to check in with them.

I lost my UNICOR job and my longevity and my Grade 1 which I had built myself up to over $200.00 a month.

I cannot work in UNICOR anymore unless this is expunged.

They gave me a disciplinary transfer which moved me farther from my family, but I have been told that this will mess me up on my Halfway House placement. I was suppose to get 6 months Halfway House, but I was told due to this I will not be able to go to the Halfway House and I need it to save some money up. That is why I had my job working at UNICOR.

32.

If I got to go to the Halfway House I would have 3 years and 10 months left before I am released. I have never had any Incident Reports "shots." I don't drink or take drugs. All of the staff say I have been a model prisoner.

My boss Mr. Veluman told me he did not think I had anything to do with that escape.

Miss. J. Epplin interfered in my DHO Hearing. She was not suppose to be at my DHO hearing. I had them call Mr. Veluman, which is my boss. I asked that he come to be my staff representative and witness. I did not ask for J. Epplin, but she stayed at the hearing and interfered with me asking to have the cameras reviewed.

She said Dunwoody, you sold some tobacco so you're hit. I tried to explain that my selling tobacco to Ken did not have anything to do with McNair, but she said you're hit.

I am just thankful I can explain all this to a federal judge. I am sorry this is so long, but it is the only way I can get the truth out. I promise you I am telling the truth.

I am wore out with this, but I am not giving up because the truth will stand when nothing else will. Please help me get this off me.

If I was guilty of all this stuff they made up I would not even bother with all this paperwork, but I hate to be railroaded for something I did not have any part in.

Also I want to add that they caught that McNair guy a few months ago. I am sure they have questioned him and I am sure he told them I did not play no part in his escape because the truth is I did not know McNair was going to escape. I am still offering to take a polygraph test to prove I am telling the truth about everything.

33.

EXHIBIT F

BP-S305.052 DHO

**DISCIPLINE HEARING OFFICER REPORT**
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

*[handwritten right margin:]* ✓ I did Not request J Epplin

| INSTITUTION | USP Pollock | INCIDENT REPORT NUMBER | | 1483526 |
|---|---|---|---|---|
| INMATE NAME | Dunwoody, Bill | REG NO | 18167-074 | UNIT C 4 |
| DATE OF INCIDENT | 4-5-06 | DATE OF INCIDENT REPORT | | 7-12-06 |
| OFFENSE CODE(S) | 102 (A) | | | |
| SUMMARY OF CHARGES | Aiding Escape | | | |

**I.   NOTICE OF CHARGE(S)**

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on

(date) 7-12-06          at (time)  10:15am  (by staff member)  M. Taylor, Lieutenant

B. The DHO Hearing was held on (date)          9-1-06          at (time)       10:29am

C. The inmate was advised of his/her rights before the DHO by (staff member):

L. Gremillion, Counselor                    on (date)     7-12-06          and a copy

of the advisement of rights form is attached.

**II.   STAFF REPRESENTATIVE**

A. Inmate waived right to staff representative.    Yes:    X    No:

B. Inmate requested staff representative and   D. Mott/J. Epplin          appeared.

*[handwritten right margin:]* ✓ REQUESTED MY BOSS J. Veluman

C. Requested staff representative declined or could not appear but inmate was advised of
option to postpone hearing to obtain another staff representative with the result

that:  N/A                    N/A                    was appointed.

D. Staff representative

**III.   PRESENTATION OF EVIDENCE**

A. Inmate admits         denies     X   the charge(s).

B. Summary of inmate statement:

Inmate Dunwoody stated he was ready to proceed and understood his rights.  He requested
no staff representative nor witnesses, initially, but on the date of the hearing
requested a staff rep.  Staff present and staff called for were present.  Inmate
Dunwoody stated he received a copy of the Incident Report.  Inmate Dunwoody was advised
of delays encountered in this process.  These delays were reported not to have affected
Dunwoody's defense.

You told the DHO, you adamantly deny any involvement and had requested that this matter
be expedited for disposition.

Even though you had not requested a staff rep before the hearing, your request on this
date was honored with the presence of D. Mott, J. Epplin and J. Veillon.  Ms. Mott and
Ms. Epplin had been present on other staff rep issues and Mr. Veillon was your
supervisor in UNICOR.  All present had been apprised of all information available in
this matter.  Mr. Veillon had said that you had worked for him 3 or 4 years in UNICOR
and not caused him any concern.  He affirmed that you said you were not involved in any
way.  Sanction options were discussed.

C. Witness(es):

*[handwritten at bottom:]* ✓ I told J Epplin I did not Want her for my Staff rep. She interfered with me and my real staff rep, MR. J. Veluman. J Epplin stayed for my DHO hearing. She was not suppost to been in my DHO hearing. She said Dunwoody your hit Cause you Sold some tobacco. IT did NOT HAVE Nothing to do with McNair escaping

I herein certify and verify that all of my statements are true and correct and sworn to under penalty of perjury 28 USC § 1746.

Signed this *13th* day of March, 2008.

_William Thatcher "Bill" Dunwoody_

SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public, in and for the county of Sumter, state of Florida, on this *13th* day of March, 2008.

NOTARY PUBLIC - STATE OF FLORIDA

*April 2, 2010*
My Commission Expires

NOTARY PUBLIC-STATE OF FLORIDA
David J. Kent
Commission # DD535554
Expires: APR. 02, 2010
Bonded Thru Atlantic Bonding Co., Inc.

Petitioners address:

William Thatcher "Bill" Dunwoody
18167-074  Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034

BP-S288.052 INCIDENT REPORT FORM
MAY 1994
U.S. DEPARTMENT OF JUSTICE

# 1488524

FEDERAL BUREAU OF PRISONS

EXHiBiT
G

| 1. Name Of Institution: | USP Pollock | | |
|---|---|---|---|
| | Part I - Incident Report | | |

| 2. Name Of Inmate<br>Bill Dunwoody | 3. Register Number<br>18167-074 | 4. Date Of Incident<br>04/05/2006 | 5. Time<br>8:30 a.m. |
|---|---|---|---|
| 6. Place Of Incident<br>Unicor | 7. Assignment<br>SHU Unassg | 8. Unit<br>C-4 | |

9. Incident: Escape From a Secure Institution (assisted)          Code: 102a

11. Description Of Incident (Date: 07/12/06 Time: 08:00 AM Staff become aware of incident)

On July 12, 2006, an SIS investigation was concluded into the escape of inmate Richard
McNair, Reg. No. 13829-045, from USP Pollock. Information obtained during this
investigation indicates inmate Bill Dunwoody, Reg. No. 18167-074, was actively involved
in assisting inmate McNair build the pallet he used to escape by placing mail bags on
it. Inmate Dunwoody additionally assisted inmate McNair in this escape by distracting
staff from walking back to McNair's area. Inmate Dunwoody is noted as willingly
performing actions which contributed to inmate McNair's escape.

| 12. Signature Of Reporting Employee | Date And Time<br>07/12/06 8:15 a.m. | 13. Name And Title (Printed)<br>T. Garrow, SIS Lieutenant | |
|---|---|---|---|
| 14. Incident Report Delivered To Above Inmate By | | 15. Date Incident<br>Report Delivered<br>7-12-06 | 16. Time Incident<br>Report Delivered<br>10:15 am |

Part II - Committee Action

17. Comments Of Inmate To Committee Regarding Above Incident
I'm not guilty of any of this.

18. A. It Is The Finding Of The Committee That You:
___ Committed The Following Prohibited Act.

___ Did Not Commit A Prohibited Act.

B. ✓ The Committee Is
Referring The Charge(s) To The DHO
For Further Hearing.
C. ___ The Committee Advised The
Inmate Of Its Finding And Of The
Right To File An Appeal Within 15
Calendar Days.

19. Committee Decision Is Based On The Following Information *Consideration for
sanction other than those available to the UDC.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO
finding inmate committed prohibited act)
Loss of GCT 41 days, Disc. Transfer, loss of privileges 2 years.

21. Date And Time Of Action 7-12-06  2:05 p-   (The UDC Chairman's Signature Next To
His Name Certifies Who Sat On The UDC And That The Completed Report Accurately Reflects
The UDC Proceedings.)

L. Grantham
Chairman (Typed Name/signature)         M. Dandrew
                                         Member (Typed Name)         Member (Typed Name)

| Part III - Investigation | 22. Date And Time    vestigation Began<br>7/12/2006 10:15 a. |
|---|---|

23. Inmate Advised Of Right To Remain Silent: You Are Advised Of Your Right To Remain Silent At All Stages Of The Disciplinary Process But Are Informed That Your Silence May Be Used To Draw An Adverse Inference Against You At Any Stage Of The Institutional Disciplinary Process. You Are Also Informed That Your Silence Alone May Not Be Used To Support A Finding That You Have Committed A Prohibited Act.

The Inmate Was Advised Of The Above Right By M. Taylor At (Date/time) 7/12/06 10:15 a.m

24. Inmate Statement And Attitude
Inmate Dunwoody #18167-074 was identified and read his right to remain silent, stating that he fully understood. Inmate Dunwoody was provided with a copy of the report and the report was read to him. Inmate Dunwoody refused to provide a statement to this investigator.

Inmate Dunwoody displayed a poor attitude during this investigation.

25. Other Facts About The Incident, Statements Of Those Persons Present At Scene, Disposition Of Evidence, Etc.

Inmate Dunwoody did not request any witnesses. See attached documents.

26. Investigator's Comments And Conclusions
Based on the reporting staff member's statement in section 11 of this report, the attached documents and the inmate's refusal to provide a statement, this investigator believes the charges to be true and correct as written.

27. Action Taken
Refer to UDC/DHO for further disposition. The Inmate will remain in SHU pending a hearing.

Date And Time Investigation Completed 7/12/2006   10:20 a.m.

Printed Name/signature Of Investigator  M. Taylor

_____
Signature

Lieutenant
Title

  

BP-S293.052  **INMATE RIGHTS AT DISCIPLINE HEARING**  CDFRM
MAY 94
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

Institution:

As an inmate charged with a violation of Bureau of Prisons rules or regulations
referred to the Discipline Hearing Officer (DHO) for disposition, you have the
following rights:

1. The right to have a written copy of the charge(s) against you at least 24
hours prior to appearing before the Discipline Hearing Officer;

2. The right to have a full-time member of the staff who is reasonably
available to represent you before the Discipline Hearing Officer;

3. The right to call witnesses (or present written statements of unavailable
witnesses) and to present documentary evidence in your behalf, provided
institutional safety would not be jeopardized;

4. The right to present a statement or to remain silent. Your silence may be
used to draw an adverse inference against you. However, your silence alone may
not be used to support a finding that you committed a prohibited act;

5. The right to be present throughout the discipline hearing except during a
period of deliberation or when institutional safety would be jeopardized. If
you elect not to appear before the DHO, you may still have witnesses and a
staff representative appear on your behalf;

6. The right to be advised of the DHO's decision, the facts supporting that
decision, except where institutional safety would be jeopardized, and the DHO's
disposition in writing; and,

7. The right to appeal the decision of the DHO by means of the Administrative
Remedy Procedure to the Regional Director within 20 calendar days of notice of
the DHO's decision and disposition.

I hereby acknowledge that I have been advised of the above rights afforded me at a
hearing before the Discipline Hearing Officer. I have further been advised that if
I have previously received either a presumptive or effective parole date from the
Parole Commission, a finding by the DHO that I committed the prohibited act(s) may
result in a rescission or retardation by the Parole Commission of the presumptive
or effective parole date.

Signed: Dunwoody _____ Reg. No.: 18167-074 _____ Date: 7-13-06

Inmate Signature: X _____

Notice of rights given to inmate(Date/time): _____ 205 p~

by: __L. Gremillion__ _____
                Staff Printed Name/Signature

(This form may be replicated via WP)              Replaces BP-S293(52) of JAN 88.

1

Below in Section 11, the prison's SIS has made up all these
false accusations.

S4P-S286.052 INCIDENT REPORT CFORM
MAY 1994                                    # 1488524
J.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| 1. Name Of Institution: | USP Pollock |
| Part I - Incident Report | |

| 2. Name Of Inmate Bill Dunwoody | 3. Register Number 18167-074 | 4. Date Of Incident 04/05/2006 | 5. Time 8:30 a.m. |
| 6. Place Of Incident Unicor | 7. Assignment SHU Unassg | 8. Unit C-4 | |

9. Incident: Escape From a Secure Institution (assisted)                    Code: 102a

11. Description Of Incident (Date: 07/12/06  Time: 08:00 AM Staff become aware of incident)

On July 12, 2006, an SIS investigation was concluded into the escape of inmate Richard
McNair, Reg. No. 13829-045, from USP Pollock. Information obtained during this
investigation indicates inmate Bill Dunwoody, Reg. No. 18167-074, was actively involved
in assisting inmate McNair build the pallet he used to escape by placing mail bags on
it. Inmate Dunwoody additionally assisted inmate McNair in this escape by distracting
staff from walking back to McNair's area. Inmate Dunwoody is noted as willingly
performing actions which contributed to inmate McNair's escape.

| 12. Signature Of Reporting Employee | Date And Time 07/12/06 8:15 a.m. | 13. Name And Title (Printed) T. Garrow, SIS Lieutenant |
| 14. Incident Report Delivered To Above Inmate By | 15. Date Incident Report Delivered 7-12-06 | 16. time Incident Report Delivered 10:15 am |

Part II - Committee Action

17. Comments Of Inmate To Committee Regarding Above Incident
*I'm not guilty of any of this.*

I have never helped McNair build a pallet. I have never helped
McNair place mail bags on a pallet. I have never distracted staff
from walking back to McNair's area. I NEVER HELPED MCNAIR DO NOTHING!

I ask that the Court subpoena and review the video's recorded by
the prison's cameras, and the court will find all these accusations
to be false.

The FBI did not find me helping McNair, so how is it so CONVENIENT
for the prison's SIS to?  IT NEVER HAPPENED.

*Even though the DHO did not find me guilty of
distracting staff, the SIS still tried to Pin it on
me. The SIS made this up just like they did
everything else because I did not do it and
there is no proof to support any of this.*

BP-S308.052   **ADMINISTRATIVE DETENTION ORDER**   CDFRM
MAY 94
U.S. DEPARTMENT OF JUSTICE                           FEDERAL BUREAU OF PRISONS

Institution: _____ USP Pollock

Date/Time: _____ 04-12-06 04:30

Housing Unit: _____ Unit C-4

TO:    Special Housing Unit Officer

FROM:  Stephen J Dixon, Lieutenant _____, (Name/Title)

SUBJECT: Placement of __Dunwoody, Bill_____, Reg. No. __18167-074__, in
         Administrative Detention

_____ (a) Is pending a hearing for a violation of Bureau regulations;
XXXXXX   (b) Is pending investigation of a violation of Bureau regulations;
_____ (c) Is pending investigation or trial for a criminal act;
_____ (d) Is to be admitted to Administrative Detention

_____(1) Since the inmate has requested admission for protection;
         I hereby request placement in Administrative Detention for my own protection.

Inmate Signature/Register No.: _____

Staff Witness Printed Name Signature: _____

_____(2) Since a serious threat exists to individual's safety as perceived by staff,
         although person has not requested admission; referral of the necessary
         information will be  forwarded to the UDC/DHO for appropriate hearing.

____ (e) Is pending transfer or is in holdover status during transfer.
____ (f) Is pending classification; or
____ (g) Is terminating confinement in Disciplinary Segregation and has been ordered into
         Administrative Detention by the Warden's designee.

It is this officer's decision based on all the circumstances that the above named inmate's
continued presence in the general population poses a serious threat to life, property, self,
staff, other inmates, or to the security or orderly running of the institution because
_You are being placed in Administrative Detention pending an investigation into your_
involvement in an escape at USP Pollock.

Therefore, the above named inmate is to be placed in Administrative Detention until further
notice. The inmate received a copy of this Order on (date/time) _____ 04-12-06 05:00 PM
Staff Witness Signature/Printed Name _____ Date __04-12-06___

*In the case of DHO action, reference to that order is sufficient. In other cases, the
officer will make an independent review and decision, which is documented here.

Record Copy - Inmate Concerned (not necessary if placement is a result of holdover status)
Copy - Captain; Copy - Unit Manager; Copy - Operation Supervisor - Administrative
Unit; Copy - Central File

(This form may be replicated via WP)

                                        Replaces BP-308(52) of JAN 94

DISCIPLINE HEARING OFFICER REPORT
U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

) D.HO REPORT (

EXHiBiT
H

| INSTITUTION | USP Pollock | INCIDENT REPORT NUMBER | | 1483526 | |
|---|---|---|---|---|---|
| INMATE NAME | Dunwoody, Bill | REG NO | 18167-074 | UNIT | C 4 |
| DATE OF INCIDENT | 4-5-06 | DATE OF INCIDENT REPORT | | | 7-12-06 |

| OFFENSE CODE(S) | 102 (A) |
|---|---|
| SUMMARY OF CHARGES | Aiding Escape |

### I.   NOTICE OF CHARGE(S)

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on (date) 7-12-06   at (time) 10:15am (by staff member) M. Taylor, Lieutenant   at (time) 10:29am

B. The DHO Hearing was held on (date) 9-1-06

C. The inmate was advised of his/her rights before the DHO by (staff member): L. Gremillion, Counselor   on (date) 7-12-06   and a copy of the advisement of rights form is attached.

### II.   STAFF REPRESENTATIVE

| A. Inmate waived right to staff representative. | Yes: | X | No: | |
|---|---|---|---|---|

B. Inmate requested staff representative and  D. Mott/J. Epplin   appeared.

C. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:  N/A   was appointed.

| D. Staff representative | N/A |
|---|---|

### III.   PRESENTATION OF EVIDENCE

| A. Inmate admits | | denies | X | the charge(s). |
|---|---|---|---|---|

B. Summary of inmate statement:

Inmate Dunwoody stated he was ready to proceed and understood his rights.  He requested no staff representative nor witnesses, initially, but on the date of the hearing requested a staff rep.  Staff present and staff called for were present.  Inmate Dunwoody was advised of delays encountered in this process.  These delays were reported not to have affected Dunwoody stated he received a copy of the incident report.  Inmate Dunwoody was advised Dunwoody's defense.

You told the DHO, you adamantly deny any involvement and had requested that this matter be expedited for disposition.

Even though you had not requested a staff rep before the hearing, your request on this date was honored with the presence of D. Mott, J. Epplin and J. Veillon.  Ms. Mott and Ms. Epplin had been present on other staff rep issues and Mr. Veillon was your supervisor in UNICOR.  All present had been appraised of all information available in this matter.  Mr. Veillon had said that you had worked for him 3 or 4 years in UNICOR and not caused him any concern.  He affirmed that you said you were not involved in any way.  Sanction options were discussed.

C. Witness(es):

Page 1 of 4

DISCIPLINE HEARING OFFICER REPORT                    FEDERAL BUREAU OF PRISONS
U.S. DEPARTMENT OF JUSTICE

| 1. The inmate requested witness(es). | Yes: | | No: | X |
|---|---|---|---|---|

2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.)

N/A

3. The following persons requested were not called for the reason(s) given.

| N/A | | | | |
|---|---|---|---|---|
| 4. Unavailable witnesses were requested to submit written statements and those statements received were considered. | Yes | No | N/A | X |

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:

The SIS Report authored by T. Garrow. Hardwritten statement submitted by inmate Dunwoody.

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:

N/A

**IV. FINDINGS OF THE DHO**

| X | A. The act was committed as charged. |
|---|---|
| | B. The following act was committed: |
| | C. No prohibited act was committed: Expunge according to Inmate Discipline PS. |

**V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)**

The DHO finds on April 5, 2006, at or about 8:30 a.m., you were found to have committed the prohibited act of Aiding Escape, code 102(A). The DHO relied on the written report from the investigating staff member who stated you were found to be involved in aiding the escape of Richard McNair. You provided expertise in preparing a pallet for use by McNair to effectuate his escape from this institution. You willingly contributed to McNair's efforts to prepare for and make his escape.

The DHO believes you committed the prohibited act of code 102(A). The decision was based on the written report from the investigating staff member who stated you aided an escape from this facility. Staff noted that you suddenly were sitting in McNair's work area which was not an area you would normally be in. This occurred one or two days before his escape. Your job in UNICOR was to create ways in which to palletize sewing machines for transport. You were responsible for creating means in which to place products on pallets and make them transportable.

You were found to have possessed tobacco in your area a couple of weeks before the escape. You admitted selling tobacco to other inmates for a profit. You have received several hundred dollars into your account to which a part of that amount was sent for selling tobacco to others.

McNair's job was to sort mail bags. He was said to change his assignment by placing mail bags on pallets and shrink wrapping them to go to the warehouse. McNair had an alleged plan to hide tobacco on pallets to be hidden at the warehouse until May. The pallet(s) would then be brought back inside from the warehouse. The change in

DISCIPLINE HEARING O___ ___ER REPORT    FEDER___ ___REAU OF PRISONS
U.S. DEPARTMENT OF JUS___    ___E

procedures occurred sometime around a week before McNair escaped.  You are known to have been selling tobacco and had been seen in McNair's work site previously.  Your expertise in UNICOR is palletizing items for transport.

It was common knowledge to inmates involved that pallets had been sent to the warehouse in lieu of being "staged" in the UNICOR trailer within the Rear Gate.  Several inmates had knowledge that McNair had an alleged plan to hide tobacco on the pallets so that storage of the tobacco could occur at the outside warehouse until a later date.  You have admitted dealing in sales of tobacco.  Knowledge of the alleged plan indicates complicity in the plot to smuggle tobacco out and then back inside the institution, which was actually an escape plot on McNair's part.



*I HAD NO KNOWLEDGE*

A "drop note" (unknown origin or author) was received in the Lieutenant's Office on April 10, 2006 which referenced you.  The note stated that you had helped McNair escape. Further stated was the information that you had been paid to help him and to get information, perhaps to provide a contact in Tennessee.  Money was said to have been sent to your account for these services.  You had recently received several hundred dollars into your account.

You willingly performed actions which contributed to McNair's escape from this institution.

Accordingly, it is the finding of the DHO that you committed the prohibited act as charged.

| VI.  SANCTION OR ACTION TAKEN |
|---|

Disallow Good Conduct Time: 20 days (mitigating circumstances applied due to probable "fringe" involvement)
Disciplinary Segregation: 60 days
Loss of Privileges: Visits-6 months with Commissary-6 months suspended pending clear conduct for 180 days
RECOMMEND Disciplinary Transfer due to involvement in aiding escape

| VII.  REASON FOR SANCTION OR ACTION TAKEN |
|---|

You were sanctioned with Disallowance of Good Conduct Time, Disciplinary Segregation and loss of privileges as punishment.  The action on the part of any inmate to escape or aid an escape from any facility creates an inability of the Bureau of Prisons and assigned institutions to maintain proper inmate accountability at all times.  Inmates on escape status present themselves as a danger to society and will commit other crimes to facilitate their continued "freedom."

The sanctions imposed by the DHO are to let you know that you, and you alone, are responsible for your actions.

DISCIPLINE HEARING ~~R REPORT~~    BP-S305.052 MAY 94
                                    FEDER~~.~~    ~~REAS OF PRISONS~~
U.S. DEPARTMENT OF JUS~~.~~ ~~E~~

| VIII. APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate. | | Yes | X | No | | |
|---|---|---|---|---|---|---|

| IX. DISCIPLINE HEARING OFFICER | | | | Date |
|---|---|---|---|---|
| Printed Name | | Signature | | 9/14/06 |
| Milton B. White, DHO | | | | |
| DELIVERED TO INMATE | DATE | 9/21/06 | TIME | |

Replaces BP-304(52) of JAN 88

(This form may be replicated in WP)

```
   CLP53           *          INMATE DISCIPLINE DATA          *      10-30-2007
PAGE 001 OF 001 *     CHRONOLOGICAL DISCIPLINARY RECORD       *      13:38:24

REGISTER NO: 18167-074 NAME..: DUNWOODY, BILL
FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO    MOS PRIOR TO 10-30-2007

--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1488526 - SANCTIONED INCIDENT DATE/TIME: 04-05-2006 0830
DHO HEARING DATE/TIME: 09-01-2006 1029
FACL/CHAIRPERSON.....: POL/WHITE M
APPEAL CASE NUMBER(S): 429889
REPORT REMARKS.......: INMATE DENIED HAVING ANY PART IN AIDING ESCAPE OF
                       ANOTHER WHEN FOUND TO HAVE RECIEVED MONEY FOR INFO/COOP

    102A ESCAPING-SECURE CUST/VIOLENCE - FREQ: 1
         DIS GCT     / 20 DAYS / CS
         COMP:010 LAW:P    MITIGATING CIRCUMSTANCES APPLIED DUE TO "FRINGE"
                             INVOLVEMENT
         DS          / 60 DAYS / CS
         COMP:     LAW:    CONSIDERATION OF TIME IN AD
         LP COMM     / 6 MONTHS / CS / SUSPENDED 180 DAYS
         COMP:     LAW:
         LP VISIT    / 6 MONTHS / CS
         COMP:     LAW:    LOSS OF VISITS THRU 3-1-2007
         TRANSFER    / CS
         COMP:     LAW:    RECOMMEND DISCIPLINARY TRANSFER BASED UPON AIDING
                             ESCPAE OF ANOTHER
```

```
G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```



*ExHiBiT I*

**U.S. Department of Justice**             **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| From: | Dugwoody William T. | 18167-074 | K1 | USP2 Coleman |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**    I am requesting that this matter be expunged because my due process rights were violated as well as my civil and constitutional rights, and BOP policy and procedure has not been properly followed. The DHO report states that staff noticed I was suddenly sitting in McNair's work area which was not an area I would normally be in. They said this occurred one or two days before his escape. The reason we sat down at that table is because our boss Mr. J. Veluman was not at work that week and we couldn't go behind the fence to our work area. We were all told to find a place to sit and I sat at that table because others from my work area were there. Please call Mr. J. Veluman at USP Pollock, Louisiana – Unicor 10 and you will find he was not there on April 3rd., 4th., and 5th. I crate machines for Mr. Veluman. I have never helped or told McNair anything about a pallet. Also, McNair never smuggled any tobacco to the warehouse. It is a known fact that he made that story up to trick Inmate Joe Cuff into helping him. So all this talk about tobacco is useless. I sold some tobacco but it was in no way connected to McNair. You can check and see if they found any tobacco at the warehouse, because there never was any. The reason I got picked as a target is because an inmate dropped a note on me to SIS telling them I was involved in McNair's escape. By the way, he did not sign his name. It was all a bunch of lies because I did not have anything to do with McNair escaping. I have spoke to McNair a few times but that is all. Just as a ballpark figure, I probably have not spoken over 30 or 40 words to McNair in my whole life. I didn't even know the guy. I didn't even know his name was McNair till after he escaped and I saw it on TV. When the internal affairs questioned me I told him I would like to take a polygraph test, I also wrote a letter and gave it to Warden F. Menifee and asked him to give it to the FBI. In the letter I told the FBI I wanted to take a polygraph test. I wanted to clear myself of all these lies the SIS has falsely accused me of. The FBI investigated

10 DATE 30-06 [continued next page] *(PAGE 2)*    *William Dugwoody Bill*    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED NOV – 7 2006

RECEIVED NOV 27 2006 Regional Counsel's Office - SERO Bureau of Prisons

---

DATE             REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 429989-R3

**Part C - RECEIPT**

         CASE NUMBER: _____

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

DATE        ✪        SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
JUNE 2002

Page 2 *Continued from yellow copy*

my alleged involvement in this case and dropped it. The FBI is one of the best investigative agencies in the United States of America. Here we have an inmate escaped from a federal prison (USP) and as far as I know he is still out there. This is a very high profile case. If I was guilty of all that crap the SIS threw together and accused me of, the FBI would have hung me out to dry. I want to know how they can do this, and if something is not done about this, the court is going to want to know why this SIS guy (T. Garrow) can charge me with this after the FBI which is the best investigating agency in the whole world did not charge me after they investigated my case. I asked the DHO officer if I could take a polygraph test and he said no. Basically he had to go along with the SIS and find me guilty but he did tell me, for sure that I needed to file my administrative appeal. I could tell he felt bad about having to find me guilty because instead of taking 41 days he took the least he was legally allowed which was 20 days of my good conduct time. He did not take my telephone and he let me keep my commissary and visits. If he deep down thought I was guilty he would have taken all my privileges and the full 41 days. So I filed a 15 page appeal to the South Central Regional Office explaining why I am not guilty, but that office returned it back to me to write over because I had exceeded the amount of pages allowed. It is impossible to fully explain my innocence on just one continuation page, especially with all these lies the SIS made up. It is rediculous. I want this to be known for the record: I am willing to take  the polygraph test from whoever you choose. Also I am going to send a copy of this BP-10 and attachments to the FBI that investigated this case because this is one time in my life that I am innocent and the SIS used me as a fall guy to protect their jobs. From the day the SIS received the [drop note] from the unknown inmate they have built their case on (speculation) and (assumed) everything. They use the word (indicates) alot. They use the word (expertise) alot.  I crated all of Mr. J. Veluman's machines for 3 or so years and I did a good job. In fact I was the best. So now this McNair guy escapes and they find it so convenient to use my expertise and accused me of being the one who built his pallet or told him how to do it. What SIS failed to look at is this McNair guy has escaped several times in the past. Basically he is an escape artist. I don't think McNair needed anyones expertise. I think McNair used his own expertise just like he did all those other times. Ever since that inmate told them all that false information in a drop note, they have tried to find things that would indicate I had something to do with McNair escaping. In other words if that inmate had never wrote a note to the SIS making up all that junk, the SIS would never picked me out as a target. SIS is claiming that if I sat down at the table where McNair worked then they automatically say it indicates that I am helping McNair and since I am good at crating machines then it is convenient for them to use my expertise. In all my years of crating machines in Unicor I have never been classified as an expert, but now that McNair escaped all of the sudden the SIS has labeled me as an expert in palletizing. I know for a fact I have never helped McNair fix a pallet. I have never showed McNair how to fix or build a pallet. So would someone please review the cameras in Unicor? If I had known McNair was planning to escape I sure wouldn't have been sitting at that table and knowing the cameras were all over the place.  Look, all I am asking, would somebody please let me take a polygraph test? I would like for the best expert there are to give it to me. I will anser any and as many questions that they want to ask me about this McNair case. If I was guilty of all this stuff the SIS is accusing me of I would not be volunteering to take a polygraph test because I would be caught lying. I am innocent of all these charges and I am telling the truth so please give me a chance to prove I am telling the truth. That is all I am asking. I am being severely punished for something I did not do. They have me on High Accountability. I have to check in with the prison staff every 2 hours. If I were to forget to check in I would be put in lockdown in the Special Housing Unit. I've lost my job at Unicor. I've lost all my longivity. I lost my Grade 1 Paygrade. I had worked hard for several years to build up to $200.00 a month income. I've now lost that too. I was getting ready to transfer to an FCI to be closer to home so I could see my sones and grandkids and my mom which is 85 years old. Instaed they increased my secuity custody points to High Max and gave me a disciplinary transfer. Now I am in another USP in Florida. This escape is now on my record permanaently. I am held in lockdown everywhere I go during my transfer. I can not work in Unicor again because of this. This has became a very real hardship to me and it is not fair to me to make me have to go through this. I am asking that the Regional Director please expunge this disciplinary case from my record. I've got alittle more than 5 years left before I am eligible for Halfway House Placement I would be crazy to involve myself in something like this. I would not jeaporidize my freedom for something like this. Would you please make arrangements for me to take a polygraph test so I can prove my innocence? Thank you.

10-30-06
date

William T. Dunwoody
William Thatcher Dunwoody  (Bill)

Also the SIS kept me locked up in the S.H.U over these false Charges for 6 Months

Regional Administrative Remedy Appeal No. 429889-R3
PART B - RESPONSE

This is in response to your Regional Administrative Remedy Appeal receipted November 27, 2006. You appeal the actions of the Discipline Hearing Officer (DHO) on September 1, 2006, finding you committed the prohibited act of Escape, Aiding, Code 102A. You request the incident report be expunged.

Specifically, you complain you did not commit the prohibited act and review of the videotape would verify this. You have offered no information to indicate the reporting officer would have any reason to fabricate the incident. Further, you have offered no information concerning how his account of the incident could have been misinterpreted. It is further noted you never asked to review any videotape during the discipline process. The time to raise a defense of the charges against you is at the time of your hearing. Program Statement 5270.07, Inmate Discipline and Special Housing Units, provides the DHO shall consider all evidence presented at the hearing. The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. The DHO considered your statement provided during the DHO proceedings. The DHO found you committed the prohibited act based on the greater weight of the evidence which was the reporting officer's statement and supporting documents. The DHO adequately explained to you the specific evidence relied on to find you committed the prohibited act, and we find no need to elaborate further.

We find the required disciplinary procedures were substantially followed, the evidence supports the DHO's finding, and the sanctions were appropriate for the offense.

Accordingly, your Regional Administrative Remedy Appeal is denied. If dissatisfied with this response, you may appeal to the Office of General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, D.C. 20534. Your appeal must be received in the Office of General Counsel within 30 calendar days of the date of this response.

_____ 12/21/06 _____          _____ _____
Date                              Regional Director, SERO

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: NOVEMBER 7, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTHEAST REGIONAL OFFICE

TO  : BILL DUNWOODY, 18167-074
      COLEMAN II USP    UNT: K-1    QTR: K01-110L
      P.O. BOX 1024
      COLEMAN, FL 33521

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 429889-R2        REGIONAL APPEAL
DATE RECEIVED    : NOVEMBER 7, 2006
SUBJECT 1        : DHO APPEAL - COMBINED (PROCEDURES, EVIDENCE & SANCTIONS)
SUBJECT 2        :
INCIDENT RPT NO: 1488526

REJECT REASON 1: YOUR APPEAL IS UNTIMELY. REGIONAL APPEALS (BP-10)
                 MUST BE RECEIVED WITHIN 20 DAYS OF THE WARDEN/CCM
                 RESPONSE OR RECEIPT OF THE DHO REPORT. THIS TIME
                 INCLUDES MAIL TIME.

REJECT REASON 2: SEE REMARKS.

REMARKS          : YOU MUST PROVIDE STAFF VERIFICATION ON BOP
                   LETTERHEAD THAT YOU ARE NO RESPONSIBLE FOR
                   THE UNTIMELY FILING OF THIS APPEAL.

*I did*

*you will see on next page*

*RECEIVED 11/17/2006*
*11/17/2006*
*Given to Inmate*
*MRT*



**UNITED STATES GOVERNMENT**

# memorandum

**FEDERAL BUREAU OF PRISONS**
**Federal Correctional Complex**
**Coleman, Florida  33521**

November 20, 2006

**MEMORANDUM FOR Administrative Remedy Coordinator, SCRO**

FROM:          D. J. Kent, Correctional Counselor

SUBJECT:       Administrative Remedy No. 429889-R1

The purpose of this memorandum is to verify the delivery date of the aforementioned administrative remedy. On October 25, 2006, inmate Dunwoody, Bill, Reg. No. 18167-074, received the administrative remedy response for his regional appeal. The appeal response time should commence on October 25, 2006.

```
          REJECTION NOTICE - ADMINISTRATIVE REMEDY
```

DATE: OCTOBER 11, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTH CENTRAL REGIONAL OFFICE

TO  : BILL DUNWOODY, 18167-074
      POLLOCK USP    UNT: C    QTR: Z05-206UAD
      P.O. BOX 1000
      POLLOCK,  LA 71467


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 429889-R1      REGIONAL APPEAL
DATE RECEIVED  : OCTOBER 4, 2006
SUBJECT 1      : DHO APPEAL - EVIDENCE
SUBJECT 2      : DHO APPEAL - SANCTION
INCIDENT RPT NO: 1488526

REJECT REASON 1: YOU MAY ONLY SUBMIT ONE CONTINUATION PAGE, EQUIV. OF ONE
                 LETTER-SIZE (8.5 X 11) PAPER.   TEXT ON ONE SIDE.   THE
                 TEXT MUST BE LEGIBLE.

REJECT REASON 2: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 10 DAYS OF THE DATE OF THIS REJECTION NOTICE.


*Delivered to inmate on 10/25/06,*
*response date should begin on 10/25/06*

*D. Kw, CC*

**ON THE NEXT PAGE**
*is the 1st appeal I sent. I was in the SHU with no*
*type writter. I explained the truth, but they would*
*not except the truth. They told me to put it all*
*on one 8.5 x 11 page, so I did. The appeal you*
*just read is the one I re-did. The only way*
*to explain the real truth is to explain it in*
*detail. I want everybody to know the real truth.*

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal** DHO

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Dunwoody William T.        18167-074        S.H.U        USP Pollock LA.

LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL** ALL OF THIS STARTED WHEN This INMATE dropped A NOTE ON ME. HE did This BECAUSE HE owed ME MONEY. FROM THEN ON THE EVidENCE HAS BEEN BASED ON SPECULATION. BECAUSE I Sold SomE TOBACCO, THEY Think I HELPED MCNAIR. MCNAIR NEVER Smuggled ANY TOBACCO. HE LiEd to JOE CUFF So HE Could TRICK Him. THE FBI iNVESTigATED my CASE And THEY WAS NO PROOF TO CHARGE ME. I EVEN ASK THE F.B.I IF I Could TAKE A PolyGRAPh TEST. THEY TOLD THE WARDEN THEY WAS NOT going TO CHARGE ME. I AM NOT GUILTY OF ANY OF This. Could you PLEASE MAKE ARRANGEMENTS FOR ME TO TAKE A PolyGRAPh TEST. I will BE gLAd TO PAY FOR iT. I FOUND OUT THE REAL TRUTH, How MCNAiR TRICKEd ONE PERSON WHEN HE ESCAPED. PLUS How THEY ARE TRYING TO TiE ME WiTh iT.
9-28-06        PLEASE READ THE 14 PAGES OF INFORMATION

DATE        William T. Dunwoody

        SIGNATURE OF REQUESTER

**Part B - RESPONSE**

This was the 1st appeal I wrote

DATE        REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE        CASE NUMBER: 429883-R1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

        LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

DATE        SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN        PRINTED ON RECYCLED PAPER        BP-230(13)
JUNE 2002

To; the Regional Director
I am sorry this is so long but it is the only way I Can explain what and how everything really happened.

Please take your time and read this because in here is the honest to God truth and after you read this I am sure you will have A Clear Picture of everything.

I have found Certen things out since I have been in the S.H.U for almost 6 months; that the S.I.S don't even know about. Espically how McNair tricked Joe Cuff into thinking he was sending tobacco to the warhouse. McNair never had any tobacco.

William Fletcher Dunwoody    18167-074

Part A - Reason for Appeal                    9-30-06

V. Specific evidence relied on to support findings (Physical evidence) (observations) (Written documents etc.)

(1). They are trying to say I provided expertise in Preparing A Pallet for use by Richard McNair to effectuate his escape.

First of all this is absolutely not true. They are saying this Cause they saw me sit down at the big table where McNair worked. I did not have A Clue McNair was Planning to escape. Before I go any futher I need to explain why I was sitting at that table to begin with. I work Behind the fence in unicor and the gate stays locked. we repair sewing machines that Come from other Prisons. When we get an order to ship out some machines, I Crate them up and I leave both ends open where you Can see through the Pallet. I have been working in unicor for 3 or more years. I have A Perfect work record and I did A good job. I had not had any Problems till this McNair guy Came along. I have never had any (shots) incident report till now. My boss is J. Veluman. Sometimes he has to go to other Prisons about sewing machines. He is usually gone 1 week Sometimes 2 weeks. When he is not there we are not allowed to go to our work area behind the fence. They are 6 of us that work Behind the fence. we Can't go to our work area so we have to find us A Place to sit down out on the floor. The section boss over the sewing machines don't like anybody

sitting around their workers and the tool room man Don Henry told us the factory manager said he did'nt want us sitting in the chairs by the tool room (against the fence) so we just go find us somewhere to sit down. One day they said go back there and sit down. There is a big table in the back in unicor-11 and there was plenty of room to sit down.. It is 12 feet long and 6 feet wide and there was only one guy that was working on the table. Yes, sad but true it was McNair. He worked on one side of the table and we sat on the other side of the table, against the wall. I did'nt sit there that much. We would usually look at a book or a magazine but it was boring and I would move around, I would walk back and talk to Miss Copeland in V.T sewing class. She was my VT sewing teacher and I would sit down over there. If one of the bosses needed me to help them, I would help them I did not know that McNair guy. I probably have never spoken 30 or 40 words to him, in my whole life. To be honest with you I did'nt even know his name was Richard McNair. I never hung out with him on the compound or anywhere. I could'nt figure out why they picked me out of everybody to question and lock up but somebody dropped a note which was all a big fat lie but the S.I.S had to follow through because I know that is their job but you have these no good people that drop notes all the time espically if they owe somebody some stamps or Commissary

(3.)

They dropped that note several days after McNair had escaped. Anybody Can make up anything they want to and drop it in the mail box. I think it was somebody that owed me some money but they sure got all this stirred up. In this first finding the S.I.S states I Provided expertise in Preparing A Pallet for McNair to escape. That is absolutely not true. I have never discussed nothing with McNair. I did not have A Clue, McNair was going to escape, I honestly did'nt know anything about McNair Planning to escape. I wish you would let me take A Polygraph test Cause I am A innocent bystandard and yes, I sold some tobacco but it did not have Nothing to do with McNair. All this stuff about McNair Smuggling tobacco to the Warehouse is NOT TRUE. I found out since I have been in the S.HU for 52 months that McNair just made all that up to trick Joe Cuff. Back to this I Provided expertise, is just Plain Crazy. All I Can figure out is because I did A good job at Cratina sewing machines I am suppost to have told McNair how to do it. It is all A big fat lie. I guess Cause they saw me sitting down back there and I Crate sewing machines and some low life droped A note and I sold some tobacco A month or more before McNair escaped them, I helped him. They think I helped him but honest to God I did'nt have nothing to do with any of this. I have told the Warden I want to take A Polygraph test. I told the F.B.I I wanted to take A Polygraph test

(4)

2.) Staff noted that I suddenly were sitting in McNair's work area which was not an area I would normally be in. This occured 1 or 2 days before his escape, And again they bring up the fact that I Crated sewing machines. Big deal. Now what I found out from some of the inmates that saw the Pictures of the Pallet that McNair escaped in, it did not have anything to do with expertise. They told me he laid A material holder down, and stacked mail bags around it and then he wraped it with Plastic wrap. I have never Crated any sewing machines like that. In fact, I never even thought of anything like that, I heard McNair is an escape artist. I heard he has escaped several times before. I did'nt even know this guy so do you honestly think he is going to Come up to me and say help me Escape. I don't think so. About this stuff where I was sitting at that table 1 or 2 days before he escaped. I already explained to you about my boss being gone and we sat here and there. I sat down at that table every now and then and not all day. My boss was not there and that is the reason they saw me sitting at the table. would you Please Check these dates and you will find my boss J. Veluman was not there during that week. McNair escaped April 5th So Check (April 3) (April 4th) (April 5th) I wish A million times I had not set down there but that don't mean I did anything wrong.

5.)

(3.) It says I had some tobacco in my area A Couple of weeks before the escape. Yes they found some tobacco, in my area during A shake down. It wasn't much but nothing was never said about it. Then one day the AW told me I could have been blamed for it but they was no Proof that it was mine. I had alot of respect for Mr. Chain and still do so I told him the truth. I told him it was mine. That is how they know I had possessed some tobacco, because I told the AW Chain it was mine but I could have lied to, him and said it was'nt mine. They not only found tobacco in my area, they found it all over the unicor. Everybody had tobacco, hid out there. I was the only one (man enough to admitt to it.) It was'nt that much anyway. Please let me make this Clear: My tobacco had nothing to do with McNair! Yes, I sold some tobacco and after along time went by he (Keneth Stanford) finally sent me my money but I did'nt get to Keep it. By the time Keneth Stanford finally sent my money, it got here around the time that McNair guy escaped. Plus someone droped A note and they called me to the SIS office. Garcia was the SIS guy. He ask me where that money came from and who sent it. I told him I sold Keneth Stanford some tobacco and he sent me the money. He called Keneth over and ask him about it and Keneth told him the truth. He told him he bought it so Garcia told us to go on.

(6)

(3) I will tell you about the tobacco I sold. I had saved several bags of tobacco from way before they even stoped selling tobacco in the Commissary, but I did'nt go to the Commissary that often, so I would sell some stamps to several different people and I would tell them what I wanted from the Commissary, and they would get it. I would let them pick me up some bags of tobacco which is $7.25 a bag. I saved these bags up over a period of time. To be honest with you, I saved them up to sell. Keneth Starford came up to me one day and wanted to buy 2 bags of tobacco. He said he would give me $100.00 a bag. This was during the month that everybody was allowed to have tobacco but it was the fast month and at the end of the month. I sold it to him but he ask me if it would be alright if he paid me in 2 or so weeks and I said yes. I had sold him stamps before and he had always paid me. Pluse he told me he had the money on the street but it would be a while before he could get it. To make a long stou short he came back and got 2 more for $85.00, and then 2 for $75.00. It rocked around for weeks and he was suppost to sent it to my street address in Tennessee but he said it came back wrong address. I knew he was lying so I told him to just send it to my prison account and he finally did but it took a while

(7.)

(3.) To be honest with you, I think he was the one who droped that note on me Cause he knew that money was Coming and he knew I lived in Tennessee Cause I gave him that address in Tennessee. It was all A big bunch of lies anyway and he did it after McNair escaped. Anyway, the main thing I want everybody to understand is the tobacco I had did not have NOTHing to do with McNair. Man everybody had tobacco and it's still out There man. While they are making such A big thing about McNair Sending tobacco to the Warehouse I will tell you this. I found out McNair never Sent any tobacco to the Warehouse and I Will tell you about that now.

(4.) They are talking about McNair had an alleged Plan to hide tobacco on Pallets, to be hed at the Warehouse, until May. Then latter on the Pallets would be brought back to Unicor. Then they say I was known to have been selling tobacco and had been seen in McNair's work sits Previously. Then again they bring up my expertise in Palletizing. First of all just because my boss was not there And I sat down at the table where McNair was (on the other side) and just because I sold some tobacco and just because I Can Crate A Severe machine Then I am guilty. I do not Understand this. Do you honestly think if I had any idea McNair was going to escape I would be sitting there

(8.)

(4.) I mean stop and think about, anybody in their right mind would not be sitting around somebody at the table where they are at if they knew that person was going to escape. I did not have A clue McNair was planning to escape. Then they say just because I sold some tobacco and McNair was sending tobacco to the warehouse then I knew about his escape or helped him. Do you know how many people hid some tobacco or sold some tobacco — (alot.) They just keep bring up over and over how I knew how to put sewing machines on A crate and crate them up. I mean what is the big deal. Anybody can crate up A sewing machine if they can use A saw and put A few screws in. Then keep using tobacco and <u>my expertise in Pailleting and cause I sat at that table A few times</u> to build A case against me.

no wonder the F.B.I did'nt fool with this case after they investigated and I even ask the F.B.I to let me take A Polygraph test. The F.B.I said they was'nt any use in it.

I found out that all that talk about McNair sending tobacco to the warehouse was all A big scheme McNair came up with. It was just A big smoke screen to trick the guy Rolling the Pallets to the shipping dock. I am going to explain to you how it happened.

(9.)

5.) The last 5½ months I have been in the S.H.U. over these false Charges. I have had my ears open and I have found out alot. I have studied this Case very Careful. I Know for A fact that McNair, never sent any tobacco to the warehouse and he never intended on sending any tobacco. They was never any tobacco sent to the warehouse Period. McNair thought this tobacco scheme up to trick Joe Cuff. Joe Cuff worked in the mailbag section and he helped roll the pallets out to the shipping dock. McNair told Cuff he was thinking about sending some tobacco to the warehouse, in the mailbag pallets. I heard he told Cuff he was going to send 100 bags but he told Cuff that big number to get Cuffs attention, Cause he offered Cuff A precentage. I don't Know how big A precentage of tobacco or money he offered Cuff but Cuff took him up on his offer. I don't Know the exact words or Conversation they had but I did find out that Cuff would roll which ever mailbag McNair told him to roll and he would roll them when McNair told him to. I don't really think Cuff would have been able to tell the difference in the weight of the pallets but just in Case he Could have then he would have not said anything Cause he would think it was A pallet with tobacco when really it would be McNair. Also he (McNair) Knew, when he told Cuff to be sure and get this or that pallet, then Cuff would. All Cuff had on his mind was tobacco or Money. McNair Tricked Cuff.

(10.)

(5.) I was told that when McNair got ready to leave (escape), he went to Cuff and told him to be sure to get that pallet over there. He told Cuff it was wrapped and ready to go. He told Cuff he had A 9:00 Call out and he would'nt be here to show him which Pallets was ready but he made it clear that one over there needed to be got. I don't know if McNair told Cuff it had tobacco in it. Then McNair went and got in his Pallet and Cuff rolled some Pallets out to be took to the warehouse and McNair was in one of them. McNair lied to Cuff about the Call out because he never had A Call out, it was just another one of McNairs lies. I have heard several inmates call it the McNair Smoke Screen and McNairs (tobacco Smoke Screen) Cause he never sent any tobacco and never intended to. I know you are A very intelligent Person to be in the Position you are in (BOB) But just use A little common sense on what I am fixing to tell you.

(1.) Why would McNair spend all that money on tobacco and send it to the warehouse to set for several months when he was Planning to escape right then or real soon because it would not benefit him in any way because he was Planning on being long gone and if he was caught he knew he would'nt be around to see any tobacco.

(2.) Why would McNair send all that tobacco to the warehouse and risk getting it caught. He knew if it was caught then his ride out would be over.

(11.)

3) After Joe Cuff told the SIS about McNain offering him
A Percentage of the supposted tobacco, the S.I.S got
it in their head that McNain was smuggling
tobacco to the warehouse. So being that none of
the mail box Pallets has never came back to unicor,
then all they need to do is, go to the warehouse
and open every one of the Pallets that was sent
and see if they find any tobacco. If they haven't
opened up them Pallets, then they should have.
There is no tobacco and they never was any. It
was just another one of McNains lies and schemes
to trick Joe Cuff into rolling him out. That McNain
guy is A rotten low life scum. Now that I have
explained that fact to you — would you please
check this out. just Call and ask the SIS if they
found any tobacco at the warehouse. It would
not have matter if they did find tobacco Cause
I did not have any dealings with McNain Period.
All this stuff about me smuggling tobacco
is definitely not true. what got all this
stuff started against me was somebody wrote
A note and Put it in the mail box. That is what
got all this in their head and the note was
one big ~~fat~~ fat lie.

1) I did not help McNain do nothing
2. I did not have any dealings in tobacco with McNain
3, That note is A lie. He owed me money so he saw
his chance to get rid of me. (Cheap shot)

(12.)

(6.) (A drop note) unknown origin or author
was dropped on me. First of all these People
will drope a note on anybody especially if they
owe you some stamps or Commissary. They
are the note droppin bunch of People I have ever
seen in my life. first of if I had helped that
McNair guy escape do you honestly think I
would be running around telling everybody. NO
I would'nt but I am not going to help NoBody
escape to start with. All this Crap about A
Contact in tennessee and helping him get
information. Listen, that is the most ridiculous
thing I have ever heard of. Hell, the new's said
McNair went to Canada. The Person that droped
that note knew I worked in unicor and they
knew I lived in tennessee Plus they knew I had
some money sent to me. That Person was NO
other than Keneth Stanford. He Knew all of
these things I just told you. yes he owed
me some money. and NO it did NOT have
NOThiNG to do with McNair. I will
take A Polygraph test any day to Prove I am
telling the truth. It also said about the note, that
money was said to have been sent to your account for
this service and then it said I received several
hundred dollars into my account. yes Keneth Stanford
sent me that money and they Checked it out and it
Proved to Come from Keneth Stanford for the tobacco I
sold him. but I did not get to Keep it Cause Keneth
droped A Note and lied about all this. HE CHECKED IN TOO

(13.)

√ thought Keneth was A pretty good guy to start with but everybody starting Catching on to all of his lies and √ have been told, √ am not the only one he has droped A note on and make up stuff.

√ wrote A letter to the F.B.I. √ give the letter to the Warden (Fredrick Menifee) and he mailed it to the the F.B.I. They was investigating this Case at the time. √ told them the truth about everything and √ told them √ was innocent of these charges the S.I.S had Came up with. √ told the F.B.I. that √ wanted to take A polygraph test Cause √ knew √ had not done any of this and √ knew in my heart √ would pass it. you don't just ask the F.B.I to take A Polygraph test if you are guilty are you plan on lying cause they are experts and they will Catch you in A lie FAST. The F.B.I investigated my Case and decided the evidence was weak so they told the Warden they was not interested in the Polygraph test Cause basically they dropped the Case.

√ want to ask you to do something for me. would you Please let me take A Polygraph test. The Person giving me the test Can ask me any Kind of Questions about this McNair Case and √ will answer them. √ will even paid for the test out of my own money. √ would like the best expert to give me the test. Please give me A Chance to Prove √ am innocent

All of this started against me because of the (drop Note) Keneth Stanford dropped on me. I sold Keneth Stanford some tobacco. I let him name his on price. I had some tobacco saved up that I had sold some stamps for Commissary. He owed me $720.00. I let him have it on Credit. He was suppost to send me the money to my Tennessee address. He lied to me and said it Came back (wrong address) So I told him to send it to me here at the Prison. I found out that he owed alot of People on the Compound so he pulled a slick move. He knew about my Tennessee address and he knew I had that money Coming to my account. He also knew I worked in unicor, so he made all that Crap up about me helping McNair and all that stuff about sending money to me and information from Tennessee and he knew I worked in unicor. He just Plain out and out lied. He wanted to get me off the Compound so he dropped that note on me. He knew when they questioned me about the money his name would Come up and he figured the most he would get would be a 300 shot. He would end up getting his $720.00 back and and be in the SHU. He lied and used me Then, the SIS started looking at me and I Can't blame them <u>But</u> because of that drop Note everything from then on was SPECULATION ASSUMED and <u>INDICATES</u>. McNair never smuggled tobacco to the warehouse So that word <u>INDICATES</u> is no good. <u>NOT GUILTY</u>

Just because I sit down at that table because my Boss was not at work, don't mean nothing but the DHO used the word SPECULATION, He used the word EXPERTISE alot. What McNair did was, not taking alot of EXPERTISE. He just looked for something to Put in the Pallet. In the DHO report the drop Note said McNair had Paid me to get information, Perhaps a Contact in TENN. and I had received several hundred dollars into my account. That is ridiculous. My family in Tennessee had not sent me any money. Stanford sent me that money. That is the reason he dropped the note, so he would get his money back. I did sell this half Mexician 5 packs of Newports for $125.00. He had his brother send me the money from Texas. I Can't remember his name. He had a funny nik-name "Click". It was around the first of the year. They had already quit selling newports in the store. He did tell me he was from Texas and he did send me the $125.00 I am not leaving nothing out. I am telling you every thing and the truth. Stanford sent me that money and dropped that note on me. That drop Note is Ridiculous, but it got me locked up. He wanted me locked up, but when it back fired on him and they Put him in the SHU, he either Checked in or they won't let him go back on the Compound Cause he owes alot of money. When them 4 men questioned me I told the truth but I thought one guy was trying to set me up Cause he said I was looking at 5 years and

he started talking about tobacco in mail bags. I didn't have a clue what he was talking about, but latter on I found out. He tried to get me to go to the compound and work under cover. I told him I didn't want to. I didn't want my head cut off. He said he would give me a time cut and and let me go to a low prison. when I turned it down he told me they was a wrong side and a right side and he said the goverment is always right so I knew he was out to get me then, but I told them the truth and I told him I would take a polygraph test too. He said he just might do that but I never saw him again. Alot of staff don't think I had anything to do with this. Basically, the DHO officer "MR white" told me he had to go along with the SIS. He did tell me I needed to file my appeal and some staff told me the same thing. I am being used as a fall guy. they are conspiring and condoning the blatant violation of my constitutional rights, federal law and BOP policy by all of this. All I am asking can I please take a polygraph test.

Sincerely

William T. Dunwoody

"Bill"

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

| From: | DUNWOODY WILLIAM T. | 18167-074 | K1 | USP2 Coleman |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**     On 1-3-07, I received a response from the Regional Director. He denied my administrative remedy, BP-10 12-21-06. I don't think he understood how I was trying to explain my innocence. He stated I did not offer any information to indicate the reporting officer would have any reason to fabricate the incident. He states further I have offered no information concerning how his account of the incident could have been misinterpreted. It's plain and simple. The SIS received a note from an unknown inmate or author on April 10,2006, which was 5 days after Richard McNair escaped. Then on April 12,2006, SIS put me in the SHU under investigation for the note dropped on me which was all made up and resulted in SIS locking me up. If you will look at the DHO report Section V. pg. 3, par. 6-F, you will see what I am talking about. I was never asked about this dropped note! I never knew there was any note dropped on me till after I got the final DHO report back, which was 5 1/2 months after I had been locked up in the SHU. I found out that inmate Keneth Stanford dropped the note because he owed me some money for tobacco I had sold him and this was his way of getting me off the compound and locked up. It is a known fact that inmates drop notes on each other all the time and the notes are not always true and in this case it was a bunch of fabricated lies. I also want to add the tobacco I sold Keneth Stanford was in no way connected to McNair, the guy who escaped. It further states I never asked to reveiw any videotape during the discipline process. That is all wrong, because I did ask the DHO officer to reveiw the video, because I gave him my personal statement and he read it. **See Exhibit A**-Personal statement. In Exhibit A you will see where I have high lighted the part where I asked the DHO officer to please reveiw the video as far back as needed. I also explained my innocence and told him I wanted to take a **polygraph test**. The DHO officer left the room so I could talk in private to my staff rep. Mr. Veluman. Ms. Epplin did not leave the room though. I told my staff rep. I wanted the camera reviewed and Ms. Epplin spoke up and said "we have already reveiwed the camera." She said "forget the camera Dunwoody, your **HIT**" and I said "how is that?" I never had anything to do with any of this. She said "they have you selling tobacco" She asked me if I ever sold any tobacco and I said "yes", but it did not have anything to do with this McNair escaping. I told her I sold Keneth Stanford some tobacco but it was around two months before that McNair guy escaped. She acted like she did not want to hear anything I had to say. I then showed my staff rep. a copy of my account slip and told him I would pay for it if the FBI would give me a polygraph test. Ms. Epplin got my account slip and questioned me where I got this money. I told her I saved it from working in Unicor and it was all on record. I was not aware of BOP policy rules because I had never had a inicident report, nor had I ever been to a DHO hearing. Ms. Epplin was not supposed to have been in my DHO hearing. She ask me, if I wanted her to be my staff rep. and I told her "NO". I told her I wanted my boss Mr. Veluman to be my staff rep. Then Epplin called Veluman on the phone and

| 1-17-07 | (see addendum) | *William T. Dunwoody (Bill)* |
|---|---|---|
| DATE | | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**

RECEIVED

JAN 2 3 2007

Administrative Remedy Section
Federal Bureau of Prisons

*This was my last appeal To Washington Central office*

| DATE | GENERAL COUNSEL |
|---|---|
| ORIGINAL: RETURN TO INMATE | CASE NUMBER: 429889-A1 |

**Part C - RECEIPT**

CASE NUMBER: _____

| Return to: | | | | |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| DATE | | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL |
|---|---|---|

USP LVN     ✪ PRINTED ON RECYCLED PAPER

BP-231(13)
JUNE 2002

**ADDENDUM**

Dunwoody, William T.                                          BP-11 Washington D.C.
18167-074

---

**Continue:** she let him. I told him I wanted him to represent me in my DHO hearing. He then came over and talked to me. He told me he did not think I had anything to do with McNair escaping. I remember Epplin showing my staff rep. papers and pointing to certain parts of the papers. She innferenced between my staff rep. and I feel she was working on behalf of the SIS. She just plain took over the meeting my staff rep. and I was supposed to have before the DHO officer came back in. She also kept some crucial evidence from being brought out. When I ask my staff rep. about reveiwing the camera and she interrupted **AGAIN** and said "forget the camera Dunwoody your **HIT**." Epplin did not give me a chance to explain to my staff rep.. She interrupted a **THRID TIME** with the same comment. Epplin violated my rights to a fair DHO hearing by interfering between my staff rep. and I. Plus she was in the DHO hearing when she was not supposed to been there to start with. I told her plainly the first time I did not want her for a staff rep., **ONLY** Mr. Veluman, I am now asking you to please reveiw the videotape. If you will do this, you will find I did not have no part in helping McNair **BUILD HIS PALLET** which proves my innocence. I have repeatedly asked for a **polygraph test** and I still asked for a **polygraph test** to prove my innocence in the escape. There is **NO PROOF** that that I helped McNair make that pallet and both the video and the **polygraph test** will prove my case. Yet SIS has never asked me about any of this exceptabout some tobacco and if I knew McNair. I told SIS I wanted to take a **polygraph test** and all this tobacco stuff has nothing to do with McNair, he never had any tobacco. It was a plot he made up and DHO even stated in my DHO report it was a plot. **SEE Section V. pg. 3, par. 5-E.** The FBI did not want to charge me and I stated again I wanted to take a **polygraph test** and the Warden stated they were not interested. If you will look on the DHO report **Section V. par. 3-C, 4-D,** and **5-E,** you will find where the DHO officer uses tobacco to find me guilty. He claims McNair smuggled tobacco to the warehouse. What everybody is failing to recognize is, McNair never had any tobacco to begin with. It was just a few words that came out of his mouth to Joe Cuff. It was all an illusion. McNair had to think of something to get inmate Joe Cuff's attention so McNair came up with the ideal to convince Cuff he was going to smuggle tobacco to the warehouse in mail bags pallets. He then promised Cuff a percentage of the tobacco when the pallets came back but Cuff would have to roll certain pallets to the dock when McNair told him. All Cuff thought about was the money. What Cuff did not realize was in all actuallity it was McNair he would be rolling to the dock instead of tobacco. If the SIS tore all the mail bags apart at the warehouse that was sent and did not find all them big loads of tobacco then everything speaks for itself. It is irrelevent how I factor in all of this. I am innocent of all these charges. I askthis Counsel to reveiw the records,BP-10 evidence, personal statement, reveiw the records of SIS, reveiw the cameras and enlight of the fact I have repeatedly asked for a **polygraph test.** On my BP-10, I explained why I had to sit at the table where McNair was working. Please call Mr. Veluman at USP Pollack La. Unicor and he will verify he was not there on 3rd, 4th, and 5th of April. When Mr. Veluman is not there at Unicor and is out traveling to different prisons to repair equipment for those prisons, we are **NOT ALLOWED IN MR. VELUMANS AREA WHILE HE IS GONE AND REQUIRED TO SIT AT THE TABLE IN McNAIR'S WORK AREA.** Mr. Veluman will verify this Fact as to why I was outthere in the other area. This is the **ONLY** reason the cameras see me sitting at the table and does not show me helping McNair build that pallet. In which the video shows just that.

I feel my rights have been violated both in my DHO process for the obstruction of a fair due process of law by Ms. Epplin. My life and liberty has been taken, I lost my $200.00 plus month Unicor job, in which, I had a perfect work record, where I received the hightest bonuses to be given out. The 102 A incident report which took my security level up high. I am now on high accountability card and have to check in every two hours starting at 8:00 am to 10:00 pm. I am not allowed to work at Unicor until this shot is off me. This has put a mental strain and hardship on me. I was saving my money in Unicor, so I would have some money when I got out of prison. I also lost all of my longevity I have amassed at Unicor. I was in the process of getting transferred to a lower security prison a FCI, because my points was being lowered due to several things including I had **NEVER HAD ANY INCIDENT REPORTS** and I have **ONLY** have 5 years left till I go to the halfway house and most of all I have been a very model prisoner throughout my sentence in the BOP.

Furthermore, my Fifth Amendment rights have been violated also by the gross error and incompetence of the investigating team, that took my life and liberty without **ANY** evidence. I was wrongfully tried and convicted without staff investigating my claims and pleas for a **polygraph test** to **PROVE** my innocence. I ask this Counsel to reveiw the Facts and proceed with what deems essential to the ends of justice.

So done, NOTICED, AFFIRMED and CLAIMED, true and correct, presented post-paid via U.S. Postal Mail to the General Counsel 320 First St. NW, Washington D.C. 20534    , this _17th_ day of _January_ , 2007.

_1-17-07_
Date

_William T. Dunwoody Bill_
"As good as Aval"

_Also the D.Ho officer took 20 days of my good time, and I am innocent._

**Administrative Remedy Number 429889-A1**
**Part B - Response**

You appeal the September 1, 2006, decision of the Discipline
Hearing Officer (DHO) regarding incident report #1488526, in
which you were found to have committed the prohibited act of
Escape from Escort; Escape from a Secure Institution (Low,
Medium, and High Security Level and Administrative Institutions);
or Escape from a Minimum Institution <u>With</u> Violence - Aiding,
Attempting or Making Plans to (code 102A).  You request
expungement of the incident report.

Our review of your disciplinary proceedings indicates substantial
compliance with Program Statement 5270.07, <u>Inmate Discipline and</u>
<u>Special Housing Units</u>.  The DHO's decision was based upon the
greater weight of the evidence as detailed in Section V of the
DHO report.  We find it reasonable for the DHO to have made this
determination.  Records indicate you appeared before the DHO,
were advised of your rights, and made a statement.  The DHO gave
greater weight of the evidence to the reporting officer's account
of the incident.  Although you dispute the charge, the evidence
is sufficient to support the finding.

Based on our review of the disciplinary record, we find the
required disciplinary <u>procedures</u> were <u>substantially followed</u>.
Each of your <u>Due Process rights</u> were upheld during the discipline
process.  The <u>greater weight</u> of the evidence supports the DHO's
decision, and the sanctions imposed were commensurate to the
severity level of the offense and in compliance with policy.

Your appeal is denied.


_March 21, 2007_
Date

_Harrell Watts, Administrator_
National Inmate Appeals

Your Honor in the above envelope "Copy"
are 3 letters I sent the general Counsel national appeal
office. Also is the reply I got back marked X in
Paragraph 7. I showed Proof I ask to take a
Polygraph test from the F.B.I. I showed Proof the F.B.I.
investigated me in the ading an escape and found
nothing to Charge me with So the F.B.I. Closed the Case
I showed Proof the FBI was not interested in me which
it is obvious I am not guilty because the Prison Staff
is the one who turned me over to the F.B.I to be
investigated. I ask the general Counsel to overturn the
blatant error by the DHO. I also told them if they did
not overturn this then my only alternative is take
this matter before a Federal Judge with my 2241.
They are not stepping up and doing the right thing By
clearing me of these False Charges or I Charge-Aiding escape



(Bill) Dunwoody
Unit K1
rectional Complex - USP2
34
, 33521-1034

**958**

RETURN RECEIPT
REQUESTED

AT TOP OF ENVELOPE TO THE RIGHT
RN ADDRESS, FOLD AT DOTTED LINE
TIFIED MAIL

50 0004 5530 6119

OFFICIAL LEGAL MAIL

Office of General Counsel
Bureau of Prisons
320 First Street, NW
Washington, DC 20534



$4.96

EXHiBiT

K

12-13-06

Federal Bureau of Investigation
5353 Essen Lane, Suite 200
Baton Rouge, LA 70809

Federal Bureau of Investigation
428 E. Boston, 2nd. Floor
Covington, LA 70433

Federal Bureau of Investigation
401 Edwards St., Suite 822
Shreveport, LA 71101

Federal Bureau of Investigation:

I am contacting all FBI Field Offices within the state
of Louisiana, as I am not certain which filed office is handling
this investigation.

I am an inmate formerly confined at the United States
Penitentiary in Pollock Louisiana, and have been recently trans-
ferred to the Federal Correctional Complex - USP2 in Coleman,
Florida. I am contacting the FBI because I previously was the sub-
ject of an investigation involving an escaped inmate from the USP
Pollock facility.

Though I was cleared of any wrongdoing by the FBI, I was
severely disciplined by the prison system and transferred to
another facility over this matter. I would like to speak with one
of the agents that's over the Pollock investigation, and would
like to offer to take a polygraph examination to prove my good
faith and hopefully in return be able to clear myself from this
unduly punishment imposed upon me through wrongful disciplinary
action at the prison.

I am willing to answer as many questions as your exam-
iner may choose to ask of me inregards to the USP Pollock invest-
igation. Please write me back and provide the name and telephone
number of the agent handling this investigation and I will con-
tact him to further discuss my situation.

Respectfully, *William T. (Bill) Dunwoody*

William T. (Bill) Dunwoody
#18167-074 Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034

*I received this copy from the F.B.I through the FOI/PA*

# RECEIVED

MAR 0 5 2007

Administrative Remedy Section
Federal Bureau of Prisons

2-25-07

To: General Counsel
Administrative Remedy Coordinator

My name is William T. Dunwoody (Bill), #18167-074, an inmate at Coleman 2 USP.   I currently have a BP-231 before the General Counsel submitted on January 17, 2007. I am writing to supplement my administrative remedy action now before the General Counsel with the enclosed letter from the Federal Bureau of Investigation (FBI) that I received within the last week. The letter concerns me and the issues that are part of my action now before your office.

My present complaint concerns how the Federal Bureau of Prisons has disciplined me, as if I was somebody involved in another inmate's escape while I was at USP Pollock, Louisiana. I lost my UNICOR job, with high pay and bonuses. My security level was substantially increased to the point of being on Two-Hour Security Check regardless of where I am. I was to the point of being classified for FCI placement where I could be close to my ill and elderly mother. I also lost a significant amount of my good time, and other things. In six years of being in federal prison I have never received any disciplinary action taken against me prior to this fiasco.

The enclosed letter from the FBI plainly states that the FBI investigation has been completed. Obviously, the Federal Bureau of Investigation has determined, and reported that conclusion to the Bureau of Prisons, that I was not involved with the inmate's escape from Pollock USP. I have tried to truthfully explain how my name came up in this mess and have also volunteered to take a polygraph test.

Again, it is clear that the Bureau of Prisons has information by way of the FBI that I was not involved in any way with the escape, thus it is now your responsibility to immediately rectify and reverse the injustice done to me. I also have the right to receive any information by way of the investigation that clears me of any involvement in the escape, and I now make that request to receive any exculpatory information concerning me and the Pollock USP escape in possession of the Bureau of Prisons by way of the FBI investigation or any other investigation to be mailed to me immediately.

It is obvious that I was never involved in the escape yet I was disciplined for having some, "Fringe involvement" the DHO errored in this matter. The Region errored by not reversing the DHO decision. It is now the General Counsel's responsibility to overturn the blatant error by the DHO.

My only alternative in responding to further deliberate indifference in this case will be to file a Civil Rights Claim and a 2241 Writ of Habeas Corpus action. I don't deserve any of the disciplinary action brought down on me stemming from the escape. I can only hope that your office will administer its responsibilities appropriately.

Sincerely,

William T. (Bill) Dunwoody



**U.S. Department of Justice**

In Reply, Please Refer to
File No. 90C-NO-70900

300 Jackson Street
Alexandria, Louisiana 71301
318-443-5097
February 12, 2007

William T. Dunwoody
Unit K1    #18167-074
Federal Correctional Complex - USP2
PO Box 1034
Coleman, FL 33521-1034

Dear Mr. Dunwoody:

  I have received and read your letters dated 12/13/2006 and 1/21/2007.  Although the United States Marshal's Service continues to pursue Richard Lee McNair, the FBI investigation of the escape is now▮▮▮▮▮  As such, we will not provide you with an opportunity to take a polygraph examination.

  The complaint that you raise in your letters is that you were "severely disciplined by the prison system and transferred to another facility over the matter."  Your complaint is of an administrative nature and should be handled by the Bureau of Prisons.  The FBI has no jurisdiction over Bureau of Prison administrative punishments.

        Sincerely,

        James Bernazzani
        Special Agent in Charge

        By
        Ricardo A. Martinez
        Supervisory Senior Resident Agent

**UNITED STATES GOVERNMENT**
**MEMORANDUM**
**FEDERAL BUREAU OF PRISONS**

*Rcd.*
*3/16*

*K1*

DATE:    March 6, 2007

REPLY TO    Administrative Remedy Coordinator
ATTN OF:    National Inmate Appeals, Central Office

SUBJECT:    Administrative Remedy Appeal - Case No. # 429889-A1

William T. Dunwoody, Reg. No.# 18167-074
FCC - USP2I
Coleman, FL

_____1. Your appeal was answered on _____. If you have not received your copy by now, you may ask the institution Administrative Remedy Coordinator to provide you with a copy from the Warden's Administrative Remedy File.

_____2. The appeal you reference was filed on _____ a response is still in progress. If more than 40 days have elapsed since the filing date, you are entitled to consider your appeal denied. However, some cases cannot be decided within this time period. In that event, the time for response may be extended for an additional 20 days. Staff will provide you with a computer-generated notice of extension to inform you of the extension.

_____3. Our records indicate that the appeal you reference has not been filed with this office.

_____4. You have not provided sufficient information for us to respond to your inquiry. If your inquiry concerns an administrative remedy, please provide the case number, the date filed in this office or date mailed by you, your name and register number, and the subject of your administrative remedy. If you cannot provide all of this information, please provide as much as possible.

_____5. A review of your inquiry reveals it contains issues you should first bring to the attention of institution staff. If you are unable to resolve the issue(s) informally, you may present your complaint to the Warden via the Administrative Remedy Procedure. This procedure is available to inmates confined in federal facilities to complain about any aspect of their confinement.

_____6. Extensions are granted only if an inmate's submission is untimely by no fault of his own. Requests for extensions are only considered when submitted with the complete appeal packet.

__X__7. Central Office Administrative Remedy Appeal responses are the final agency position. If you are dissatisfied with the response, you may pursue any legal recourse you deem appropriate.

_____8. We can only address issues within the jurisdiction of the Federal Bureau of Prisons. Your issue is one for _____ jurisdiction.

_____9. Your appeal was rejected and returned to you on _____.

_____10. Other:

*red ink numbers 19, 20, and 21 have been cut out of the incident report*

SPECIAL EXHIBIT L

# VERY IMPORTANT EXHIBITS

Your Honor,

I want to bring it to the court's attention, when I was given the below Incident Report by these two officers they stated the following.

Section 19, The alleged violation is serious and warrant consideration for sanctions other than these available to the UDC.
Also below in Section 20, Loss of Privileges - 2 years, Loss of Good Time 41 days, and Disciplinary Transfer.

19. *Committee Decision Date Based On The Following* *serious* *consideration for sanction other than those available to the UDC.*

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act) *loss of privileges 2 years.*
*Loss of GCT 41 days. Disip. Transfer,*

21. Date And Time Of Action *1-12-06    205p~*    (The UDC Chairman's Signature Next To His Name Certifies Who Sat On The UDC And That The Completed Report Accurately Reflects The UDC Proceedings.)
*L. Gravillion*    *M. Bondren*
Chairman (Typed Name/signature)    Member (Typed Name)    Member (Typed Name)

I agree these charges are serious, and the aiding escape 102A charge is serious. I want to bring this fact to the court's attention.
It is common knowledge for the DHO to give out the most harsh sanctions for such serious charges as these. You've got to remeber the McNair guy was still on the run and at that time he had never been caught. The prison's SIS accused me of helping McNair escape in several ways, so from what I am accused of it would be sure to say the DHO would punish me with the most harsh sanctions he could.

In this case the DHO could and would give out the following. Keeping in mind that 41 days loss of Good Conduct Time as recommended above, loss of privileges for 2 years, which consist of Commissary, Telephone, and Visits.
I want to show the court what the DHO gave me and it is obvious the DHO knew deep down I was not guilty.

1.

(item on next page)

**DISCIPLINE HEARING OFFICER REPORT**
U.S. DEPARTMENT OF JUSTICE

BP-S305.052 MAY 94
FEDERAL BUREAU OF PRISONS

procedures occurred sometime around a week before McNair escaped. You are known to have been selling tobacco and had been seen in McNair's work site previously. Your expertise in UNICOR is palletizing items for transport.

It was common knowledge to inmates involved that pallets had been sent to the warehouse in lieu of being "staged" in the UNICOR trailer within the Rear Gate. Several inmates had knowledge that McNair had an alleged plan to hide tobacco on the pallets so that storage of the tobacco could occur at the outside warehouse until a later date. You have admitted dealing in sales of tobacco. Knowledge of the alleged plan indicates complicity in the plot to smuggle tobacco out and then back inside the institution, which was actually an escape plot on McNair's part.

A "drop note" (unknown origin or author) was received in the Lieutenant's Office on April 10, 2006 which referenced you. The note stated that you had helped McNair escape. Further stated was the information that you had been paid to help him and to get information, perhaps to provide a contact in Tennessee. Money was said to have been sent to your account for these services. You had recently received several hundred dollars into your account.

You willingly performed actions which contributed to McNair's escape from this institution.

Accordingly, it is the finding of the DHO that you committed the prohibited act as charged.

| VI. SANCTION OR ACTION TAKEN |
|---|

Disallow Good Conduct Time: 20 days (mitigating circumstances applied due to probable "fringe" involvement)
Disciplinary Segregation: 60 days
Loss of Privileges: Visits-6 months with Commissary-6 months suspended pending clear conduct for 180 days
RECOMMEND Disciplinary Transfer due to involvement in aiding escape

| VII. REASON FOR SANCTION OR ACTION TAKEN |
|---|

You were sanctioned with Disallowance of Good Conduct Time, Disciplinary Segregation and loss of privileges as punishment. The action on the part of any inmate to escape or aid an escape from any facility creates an inability of the Bureau of Prisons and assigned institutions to maintain proper inmate accountability at all times. Inmates on escape status present themselves as a danger to society and will commit other crimes to facilitate their continued "freedom."

The sanctions imposed by the DHO are to let you know that you, and you alone, are responsible for your actions.

2.

Also I want to show the court the entry the Disciplinary Hearing
Officer (DHO) wrote in my computer sentry records - Chronological Disciplinary
Data.

```
   CLP53        *         INMATE DISCIPLINE DATA           *     10-30-2007
PAGE 001 OF 001 *  CHRONOLOGICAL DISCIPLINARY RECORD        *     13:38:24

REGISTER NO: 18167-074 NAME..: DUNWOODY, BILL
FUNCTION...: PRT      FORMAT: CHRONO   LIMIT TO    MOS PRIOR TO 10-30-2007

---------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 1488526 - SANCTIONED INCIDENT DATE/TIME: 04-05-2006 0830
DHO HEARING DATE/TIME: 09-01-2006 1029
FACL/CHAIRPERSON.....: POL/WHITE M
APPEAL CASE NUMBER(S): 429889
REPORT REMARKS.......: INMATE DENIED HAVING ANY PART IN AIDING ESCAPE OF
                       ANOTHER WHEN FOUND TO HAVE RECIEVED MONEY FOR INFO/COOP
    102A ESCAPING-SECURE CUST/VIOLENCE - FREQ: 1
        DIS GCT      / 20 DAYS / CS
        COMP:010 LAW:P  MITIGATING CIRCUMSTANCES APPLIED DUE TO "FRINGE"
                        INVOLVEMENT
        DS           / 60 DAYS / CS
        COMP:     LAW:   CONSIDERATION OF TIME IN AD
        LP COMM      / 6 MONTHS / CS / SUSPENDED 180 DAYS
        COMP:     LAW:
        LP VISIT     / 6 MONTHS / CS
        COMP:     LAW:   LOSS OF VISITS THRU 3-1-2007
        TRANSFER    / CS
        COMP:     LAW:   RECOMMEND DISCIPLINARY TRANSFER BASED UPON AIDING
                        ESCPAE OF ANOTHER
```

        The DHO states I received money for Info / Coop. (information &
cooperation). The truth is, the DHO knew without a doubt that I was not guilty,
but he had to go along with the SIS because the pressure was on alot of people.
The DHO even made the comment, "that his hands were tied."
        The bottom line is that the SIS had to write some Incident Reports
and the DHO had to find them guilty.
        The DHO told me he had to find me guilty, but that he was going to
work with me. He also told me he strongly suggests that I file my appeals.
        Deep down the DHO felt bad about having to find me guilty. The only
thing he could do was take it easy on me as he could. Instead of taking the
recommended 41 days on my Good Time he took 20 days. The DHO said that was the
least he could take by law, which was half. And instead of taking the recommended
loss of privileges for 2 years, the DHO told me that he wasn't going to take any
of my privileges. He told me he wasn't going to take my Telephone, Commissary
or Visits. Then he told me this is such a High Profile Case with alot or attention,
that he has to take something. I told him that since I was so far away from
home that I never get any Visits being that I was in Louisiana at that time, so
I told him if he just had to take something to take my Visits. The DHO said he'd
just take them for 6 months. He told me he was not going to take my Telephone
or Commissary. He said he could tell by looking at my history of never having

3.

any disciplinary actions he was going to suspend the phone and commissary for 6 months. He could tell by <u>looking</u> at my file record I had remained "shot <u>free</u>," and that it would be no problem for me to <u>maintain clear</u> conduct for 6 months. He knew that I <u>was a Role Model Inmate</u>.

The DHO was <u>right because</u> I'<u>m still to this day "shot free"</u> other than for this one, which I was <u>unjustly</u> given. The DHO wrote it down as he gave me 60 days in the SHU in disciplinary segregation, but he didn't enforce it. He allowed the time that I had already been in the SHU count toward the 60 days DS time. It was all just so it would look <u>good on paper</u>. And as far as the Disciplinary Transfer, that's <u>automatic</u> for a charge of this nature, so that's why I was moved to another facility.

Please note when the DHO just took <u>20 days</u> GCT, he wrote "<u>mitigating circumstances applied due to "FRINGE" involvement.</u>" The DHO tried to sugar coat it by using the word "<u>FRINGE involvement.</u>" Please notice how he used quotation marks on the word "<u>FRINGE.</u>"

I want to show the Court, that there can <u>be no such thing as "FRINGE"</u> involvement in this Aiding Escape Charge. <u>I either helped Richard McNair escape,</u> <u>or I didn't</u>. There can be no in between. I know and everybody else knows if I had any involvement in helping McNair escape the FBI would have <u>charged</u> me even if it had been "fringe" for the so called receiving money for info & coop.

I now would like to walk the Court through everything the DHO said he believes I am guilty of. Then when I am through I want you to ask yourself where does this DHO find fringe involvement?

I know why he wrote "<u>fringe.</u>" This is a display showing how he believes I committed the prohibited <u>act</u>, or he tries to make it appear that I committed the prohibited act of Code 102A - Aiding an Escape.

V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)

1. The DHO finds on April 5, 2006, at or about 8:30 a.m., you were found to have committed the prohibited act of Aiding Escape, code 102(A). The DHO relied on the written report from the investigating staff member who stated you were found to be involved in aiding the escape of Richard McNair. You provided expertise in preparing a pallet for use by McNair to effectuate his escape from this institution. You willingly contributed to McNair's efforts to prepare for and make his escape.

2. The DHO believes you committed the prohibited act of code 102(A). The decision was based on the written report from the investigating staff member who stated you aided an escape from this facility. Staff noted that you suddenly were sitting in McNair's work area which was not an area you would normally be in. This occurred one or two days before his escape. Your job in UNICOR was to create ways in which to palletize sewing machines for transport. You were responsible for creating means in which to place products on pallets and make them transportable.

3. You were found to have possessed tobacco in your area a couple of weeks before the escape. You admitted selling tobacco to other inmates for a profit. You have received several hundred dollars into your account to which a part of that amount was sent for selling tobacco to others.

4. McNair's job was to sort mail bags. He was said to change his assignment by placing mail bags on pallets and shrink wrapping them to go to the warehouse. McNair had an alleged plan to hide tobacco on pallets to be hidden at the warehouse until May. The pallet(s) would then be brought back inside from the warehouse. The change in

4.

procedures occurred sometime around a week before McNair escaped. You are known to have been selling tobacco and had been seen in McNair's work site previously. Your expertise in UNICOR is palletizing items for transport.

5. It was common knowledge to inmates involved that pallets had been sent to the warehouse in lieu of being "staged" in the UNICOR trailer within the Rear Gate. Several inmates had knowledge that McNair had an alleged plan to hide tobacco on the pallets so that storage of the tobacco could occur at the outside warehouse until a later date. You have admitted dealing in sales of tobacco. Knowledge of the alleged plan indicates complicity in the plot to smuggle tobacco out and then back inside the institution, which was actually an escape plot on McNair's part.

6. A "drop note" (unknown origin or author) was received in the Lieutenant's Office on April 10, 2006 which referenced you. The note stated that you had helped McNair escape. Further stated was the information that you had been paid to help him and to get information, perhaps to provide a contact in Tennessee. Money was said to have been sent to your account for these services. You had recently received several hundred dollars into your account.

7. You willingly performed actions which contributed to McNair's escape from this institution.

8. Accordingly, it is the finding of the DHO that you committed the prohibited act as charged.

If I was guilty of all this the FBI would not only have charged me, but they would have hung me out to dry. This is no doubt confusing to the court because after the DHO wrote all of his Findings and Evidence which I have High Lighted some serious ones that the FBI would have prosecuted me over, if I was guilty, but I am not guilty.

My question is this. Where does the DHO come up with "MITIGATING CIRCUMSTANCES APPLIED TO "FRINGE" INVOLVEMENT?"

Then he cut the recommended 41 days loss of Good Conduct Time in half or one day less than half to just 20 days. This is the first time in history an inmate has ever been found guilty of helping another inmate escape by providing expertise in preparing a pallet for use, to effectuate an escape from a BOP institution, and the DHO is actually trying to help me out by not taking so many days of my GCT, and not taking my Telephone or Commissary.

It is common knowledge that in all cases before the DHO restrictions are always placed against an inmates privileges, and for such a serious charge Code 102A - Aiding Escape, which is at the top of the list for being the most serious class of charge, inmates always get all of their privileges taken from them, telephone, commissary, visits, etc., and the sanctions would normally be the most severe and to the maximum.
Several staff members have told me they could not figure out how I came out of this without getting loaded down with the Maximum sanctions. The answer is plain and simple, the DHO knew deep down in his heart I was not guilty of any of this, but his hands were tied and he had to go along with the SIS and find some inmates guilty.

Officer and other staff were getting fired and transferred because they broke the Bureau of Prisons security rule, by not locking down the transport items in the truck or trailer til after 4:00 count, or overnight and

after all inmates could be accounted for.

        This was not my fault. None of this was my fault. I didn't even know
the McNair guy was planning to escape, but because of Keneth Stanford writing
that bunch of lies in his "drop note," I have been punished for no reason.

        I have offered to take a Polygraph Test from the very beginning and
I will still take one. In fact I would love to take a Polygraph Examination
to prove I am innocent.

        I have one more thing I want to bring to the Courts attention:
In Section VII, below, you will see where the DHO officer states that I was
sanctioned with Disciplinary Segregation. This is another sugar coating because
I never did any of the 60 days as written in the report. In fact, I was trans-
ferred a few weeks later after the DHO hearing. It is unheard of for an inmate
not to actually do the punishment administered. The 60 days of Disciplinary
Segregation was suppose to begin immediately after the DHO hearing on the matter.

        Also the DHO wrote Loss of Privileges as Punishment. I did not lose
my privileges, I was still able to use my telephone and I still went to the
commissary. I only lost one (1) privilege, that I never used, (Visiting), so
basically I never lost any privilege.

> **VII. REASON FOR SANCTION OR ACTION TAKEN**
>
> You were sanctioned with Disallowance of Good Conduct Time, Disciplinary Segregation and
> loss of privileges as punishment. The action on the part of any inmate to escape or aid
> an escape from any facility creates an inability of the Bureau of Prisons and assigned
> institutions to maintain proper inmate accountability at all times. Inmates on escape
> status present themselves as a danger to society and will commit other crimes to
> facilitate their continued "freedom."
>
> The sanctions imposed by the DHO are to let you know that you, and you alone, are
> responsible for your actions.

        I want to apologize to the Court for this being so long and drawn out,
but I felt it necessary to draw a picture of how the DHO really felt deep down,
and with his actions he portrayed, which instead of handing out the proper and
harsh punishment for such a serious offense, he did just the opposite with me.
It is Picture Clear, that the DHO felt bad about having to find me guilty
because the DHO knew in his heart that I was not guilty.

        One SIS officer told me, sometimes we have to do things we really
don't want to do.

                                        Sincerely,

                                        "Bill"

                                        William T. "Bill" Dunwoody

6.

*IMPORTANT*

SPECIAL EXHIBIT *M*

Your Honor, I am showing the court proof of when I sold inmate Click the 5 packs of Newport cigarettes. I do not know inmate Click's full name. All I know him by is his nick name.

I do remember he told me he would have his brother send the $125.00 to my account. We both agreed when the money reached my account I would give him the cigarettes. As you can see below the money reached my account on February the 27th., 2006 (02/27/06).

| POL | 02/08/2006 08:31:54 AM | IS0022 | Payroll - UNICOR | $202.48 |
|-----|------------------------|----------|-------------------|---------|
| POL | 02/26/2006 05:03:59 PM | ITS0226 | Phone Withdrawal | ($10.00) |
| POL | 02/27/2006 12:07:05 PM | 33310706 | Western Union | $125.00 |
| POL | 03/07/2006 06:25:00 PM | 119 | Sales | ($21.95) |
| POL | 03/10/2006 09:14:28 AM | IS0037 | Payroll - UNICOR | $210.90 |

His brother sent the $125.00 by Western Union. Also you can see where all of my money came from which was my UNICOR job at the prison.

You can see on 02/08/06 I received $202.48 from UNICOR, and on 03/10/06 I received $210.90.

I am sending you proof of where all my money came from. I am showing the court a clear picture that by my selling inmate Click 5 packs of Newport's did not have anything to do with Richard McNair escaping.
McNair was not in the picture. Besides I received this money in February, which proves it had nothing to do with McNair. McNair escape occurred in April, and the amount of $125.00 is a far cry from the so called "several hundred dollars" as the DHO stated in his DHO Report.

I also want to point out, the reason the price went up on Newport Cigarettes is that the prison commissary had stopped selling Newports a month or so before. Although the tobacco in bags was still available for a while longer. So before 02/27/06 they had sold out of Newport Menthol cigarettes. In fact I think they had sold out of all cigarettes in the pack and the last bags of tobacco they put in stock was an off brand name and nobody liked it. That is why Keneth Stanford wanted to buy the bags of Bugler.

Also I think it is very important for me to bring it to the court's attention what the DHO officer wrote in his "Report Remarks." You can see I have attached what the DHO remarks were.
He wrote "Inmate denied having any part in aiding escape of another when found to have received money for info and coop.
The DHO is referring to the way the drop note was written, which were the lies that Keneth Stanford wrote in the drop note, and that is what got all of this started in the first place.

*1.*

In the disciplinary hearing officer "DHO" report, remarks section, he said I was found to have received money for info and coop. Which he is referring to "information and cooperation."

The DHO officer states in his full DHO Report, I had recently received several hundred dollars into my account. Below I have cut both statements out so I can show you how they never was any money for this so called info and coop.

A "drop note" (unknown origin or author) was received in the Lieutenant's Office on April 10, 2006 which referenced you. The note stated that you had helped McNair escape. Further stated was the information that you had been paid to help him and to get information, perhaps to provide a contact in Tennessee. Money was said to have been sent to your account for these services. You had recently received several hundred dollars into your account.

```
   CLP53         *        INMATE DISCIPLINE DATA        *       10-30-2007
   PAGE 001 OF 001 *    CHRONOLOGICAL DISCIPLINARY RECORD    *    13:38:24

   REGISTER NO: 18167-074  NAME..: DUNWOODY, BILL
   FUNCTION...: PRT      FORMAT: CHRONO    LIMIT TO     MOS PRIOR TO 10-30-2007
   ----------------------------------------------------------------------
   REPORT NUMBER/STATUS.: 1488526 - SANCTIONED INCIDENT DATE/TIME: 04-05-2006 0830
   DHO HEARING DATE/TIME: 09-01-2006 1029
   FACL/CHAIRPERSON.....: POL/WHITE M
   APPEAL CASE NUMBER(S): 429889
   REPORT REMARKS.......: INMATE DENIED HAVING ANY PART IN AIDING ESCAPE OF
                          ANOTHER WHEN FOUND TO HAVE RECIEVED MONEY FOR INFO/COOP
       102A ESCAPING-SECURE CUST/VIOLENCE - FREQ: 1
          DIS GCT    / 20 DAYS / CS
          COMP:010 LAW:P  MITIGATING CIRCUMSTANCES APPLIED DUE TO "FRINGE"
                          INVOLVEMENT
          DS         / 60 DAYS / CS
          COMP:    LAW:    CONSIDERATION OF TIME IN AD
          LP COMM    / 6 MONTHS / CS / SUSPENDED 180 DAYS
          COMP:    LAW:
          LP VISIT   / 6 MONTHS / CS
          COMP:    LAW:    LOSS OF VISITS THRU 3-1-2007
          TRANSFER   / CS
          COMP:    LAW:    RECOMMEND DISCIPLINARY TRANSFER BASED UPON AIDING
                          ESCPAE OF ANOTHER
```

The $125.00 I received on 02/27/06 can not be the several hundred dollars the DHO officer is referring to. To be honest with the court, I don't have a clue where the DHO officer finds this several hundred dollars he's talking about, much less link any of the money I received from working in the prison UNICOR, to info and coop.

The only other money I was suppose to have received was the $720.00 Keneth Stanford sent me fore several big bags of tobacco. The $720.00 does not show up on my TRUFACS account statement. I do not know what happened to the $720.00. They either gave it back to Keneth or they kept it.

This is how I remember it. Keneth told me he was going to have his sister

2.

send me the $720.00. He told me she took care of his money. Several days later
Keneth asked me if the money had ever reached my account and I said No.
Then around 2 days later he asked me if it ever got put on my account. I walked
over to the telephone and pushed 118. This is how we check our account to get the
current balance. After I checked my account I told him the money was not on my
account. He told me it should have already reached my account. I could tell he
acted upset, but at the same time it was well known he was Bi-Polar or had some
kind of mental disorder because he was in a habit of making up lies telling
other inmates he knew certain celebrities personally.

I remember he got caught up in several lies, but he always paid me for
the stamps I let him have on credit. I never paid any attention to his tales.
You hear all kinds of tales in prison. I do remember around this time inmate
McNair had already escaped a few days earlier. McNair escaped on 04/05/06 and the
last time I checked my account for Keneth Stanford was around the 7th, or 8th.
of April, because I remember watching it on the T.V. local news about Richard
McNair escaping.

This is when Keneth Stanford put the drop note in C-4 unit mail box,
because I heard how it happened 5 months later, while I was in the SHU under
investigation and after I had my DHO hearing, I found out why they locked me up.
I found out there had been a "drop note" written about me.

I was told Keneth Stanford's conscience was bothering him and he confessed
the truth to his cellmate while he was in the SHU. I never got a chance to talk
to Keneth Stanford because they moved him to another floor and then he asked to
be transferred. So he left and went to another prison.

I told an officer about what I had found out and he said, "Dunwoody,
it's a little too late for that. You done had your DHO hearing and you gonna be
transferred any day now." I told the officer Keneth Stanford made up all them lies
in the drop note so I would get locked up because he owed me money and he panicked
when I told him it was not on my account.

Maybe the officer thought I was lying to him. The officer told me to
just bring it up in my appeal.

I am now asking the Court to compare
Keneth Stanford's handwriting to the
Drop Note. I remember seeing his
handwriting before, and he makes his
g's and y's different.
I think if the prison's SIS or SIA
were to obtain something written by
Keneth Stanford, and forward those
samples to the Court you will see he
is the one that wrote the drop note.

I am sending the court a print out of my TRUFACS inmate statement.
As I told you, the $720.00 was sent to my account because it states in my DHO
Report that a "drop note" of unknown origin or author was received in the
lieutenants office on April 10, 2006 which referred to me. The money however
does not show up on my statement because SIS expunged the deposit.
Keneth Stanford had sent the drop note by placing it in the C-4 mailbox, and it
probably took 2 days to get there. He mailed the drop note after he had me check



my account because he acted very upset.

McNair escaped on 04/05/06. Keneth mailed the drop note around the 7th. or 8th. of April and it reached the lieutenants office on the 10th. of April. Then Lieutenant Garcia of the SIS called me to his office and asked me what the $720.00 was for that I had received in my account. And I told him Keneth Stanford sent it to me because he had bought several big bags of Bugler Tobacco from me on credit over a period of time. He also asked me if I knew Richard McNair, and I told him No. I did not recognize the name at the time, and only later learned from news reports on the T.V. exactly who McNair was. I never knew his name until I saw him on the T.V. news, so that is why I told Lt. Garcia No, that I didn't know who Richard McNair was.

I had only seen McNair in passing. I probably had not spoken 30 or 40 words to the guy in my whole life. Lt. Garcia then put me in another room and called Keneth Stanford into his office. He asked him about the $720.00. Keneth told him the truth about everything, that he had a family member (his sister) send the money to my account because he bought the bag of tobacco on credit from me. It is a known fact that the SIS and the FBI traced where the money came from and they found out that Keneth Stanford had indeed sent me the money, and they also found out what family member sent it. They also found out it was in no way, shape-form-or-fashion, connected to Richard McNair escaping.

When the FBI investigated me, after the prison SIS turned me over to them, the FBI checked all of this out, and found out the $720.00 was actually money sent to me from Keneth Stanford's family member and it was indeed for tobacco that Keneth had bought from me on credit. They knew it did not match the fictitious drop note. The drop note is what got all of this started.

So when they got through with their investigation that was the end of it. They wrote a letter to the Warden and told him they were not going to charge me with Aiding in the Escape.

It is very obvious if the FBI had found in their investigation I had received money for info and coop, or anything else involving me in the escape, they would have most definitely charged me with Aiding an Escape. So how is it right for the SIS to charge me with Aiding an Escape after one of the best investigating agencies "the FBI" did not charge me?

There has been several staff members at USP Pollock and USP Coleman that have told me that they Know it was obvious I didn't have anything to do with the escape. They told me if I had played a role in the escape I would still be in Louisiana because the FBI would have charged me being that the McNair guy was still out there, and it was a High Publicized Case.

The DHO officer told me he had to convict me. What is so bad about it is he knew I was not guilty. One SIS officer told me sometimes they have to do things they don't really want to do.

I am asking the court to please get a copy of the drop note and get something with Keneth Stanford's handwriting on it and compare the writing. The drop note is all one big lie made up by Keneth Stanford.

4.

William T. "Bill" Dunwoody

*in red ink numbers (23)(24)(26)(9)(11) and (17) are statements cut out of the incident report*

SPECIAL EXHIBIT ___N___

Your Honor,

Below in Section 23, you will see where I was advised of the right to remain silent. I ask that the court please read Section 23.

---

23. Inmate Advised Of Right To Remain Silent: You Are Advised Of Your Right To Remain Silent At All Stages Of The Disciplinary Process But Are Informed That Your Silence May Be Used To Draw An Adverse Inference Against You At Any Stage Of The Institutional Disciplinary Process. You Are Also Informed That Your Silence Alone May Not Be Used To Support A Finding That You Have Committed A Prohibited Act.   7-12-18  *72  205pm*

The Inmate Was Advised Of The Above Right By M. Taylor At (Date/time) 7/12/06 10:15 a.m

---

Below in Section 24, M. Taylor states that Inmate Dunwoody refused to provide a statement to this investigation. Also M. Taylor states Inmate Dunwoody displayed a poor attitude during this investigation.

---

24. Inmate Statement And Attitude
Inmate Dunwoody #18167-074 was identified and read his right to remain silent, stating that he fully understood. Inmate Dunwoody was provided with a copy of the report and the report was read to him. Inmate Dunwoody refused to provide a statement to this investigator.

Inmate Dunwoody displayed a poor attitude during this investigation.

---

Below is Section 26, the investigator states he believes the charges in Section 11, to be true and correct as written because of Inmate Dunwoody's Refusal to Provide a Statement.

---

26. Investigator's Comments And Conclusions
Based on the reporting staff member's statement in section 11 of this report, the attached documents and the inmate's refusal to provide a statement, this investigator believes the charges to be true and correct as written.

---

This investigator is not telling the truth about my refusing to give a statement. After I had been informed of the disciplinary charge against me as outlined in Section 11 below, I made the following statement: "I'm not guilty of any of that."

---

9. Incident: Escape From a Secure Institution (assisted)                                Code: 102a

---

11. Description Of Incident (Date: 07/12/06  Time: 08:00 AM Staff become aware of incident)

On July 12, 2006, an SIS investigation was concluded into the escape of inmate Richard McNair, Reg. No. 13829-045, from USP Pollock. Information obtained during this investigation indicates inmate Bill Dunwoody, Reg. No. 18167-074, was actively involved in assisting inmate McNair build the pallet he used to escape by placing mail bags on it. Inmate Dunwoody additionally assisted inmate McNair in this escape by distracting staff from walking back to McNair's area. Inmate Dunwoody is noted as willingly performing actions which contributed to inmate McNair's escape.

A record of my statement exists in Section 17 - (below)  "I'm not guilty of any of that."

---

17. Comments Of Inmate To Committee Regarding Above Incident
*I'm not guilty of any of that.*

---

1.

There was nothing else to say because the FBI had already investigated me and concluded that I was not guilty of aiding the escape of Richard McNair. This investigator for the prison was well aware that I had been investigated thoroughly by the FBI. If I had been found guilty of any of these false charges that the prison's SIS had dreamed up, the FBI would have most definitely charged and prosecuted me. The prison's SIS is the one that turned me over to the FBI to be investigated to start with.

This is totally preposterous for the SIS to even try such a rediculous thing, but as you can see they make up their own rules as they go along.

This investigator states that he thinks I am guilty because I did not provide a statement to him. What does he expect me to say? I am not suppose to be getting an Incident Report to start with.

The Warden told me he was waiting on something in writing from the FBI stating they were releasing me from their investigation and they were not going to charge me with anything. The FBI mailed this statement to the Warden.

The FBI closed this investigation and I was suppose to have been let out of lock-up in the SHU and went back to the compound, but it is obvious that several staff member's jobs were on the line and they were under pressure, so they wanted to make it look good on them and as you can see, they drummed up a bunch of false accusations.

They all were in on this together because the DHO officer made the statement, "his hands were tied, he had to find me guilty, " but he strongly suggested I file my Appeal or Appeals.

Now I am asking the Court to please help me, by seeing a clear picture of how they railroaded me.

*Bill*

William T. "Bill" Dunwoody

2.

"Copy"

<u>EXHiBiT - O</u>

Here are 3 Pages of my Written Personal Statement I gave the Discipline hearing officer "DHO" When I went to my DHO hearing. The DHO officer read all 3 Pages.

William T. Dunworty
"Bill"

BP-S305.052 MAY 94

DISCIPLINE HEARING OFFICER REPORT   CDFRM

U.S. DEPARTMENT OF JUSTICE   FEDERAL BUREAU OF PRISONS

| 1. The inmate requested witness(es). | Yes: | | No: | | X |

2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.)

N/A

3. The following persons requested were not called for the reason(s) given.

N/A

| 4. Unavailable witnesses were requested to submit written statements and those statements received were considered. | Yes | | No | | N/A | X |

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:

The SIS Report authored by T. Garrow. Handwritten statement submitted by inmate Dunwoody.

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:

N/A

## IV. FINDINGS OF THE DHO

| X | A. The act was committed as charged. |

B. The following act was committed:

C. No prohibited act was committed: Expunge according to Inmate Discipline PS.

## V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)

The DHO finds on April 5, 2006, at or about 8:30 a.m., you were found to have committed the prohibited act of Aiding Escape, code 102(A). The DHO relied on the written report from the investigating staff member who stated you were found to be involved in aiding the escape of Richard McNair. You provided expertise in preparing a pallet for use by McNair to effectuate his escape from this institution. You willingly contributed to McNair's efforts to prepare for and make his escape.

The DHO believes you committed the prohibited act of code 102(A). The decision was based on the written report from the investigating staff member who stated you aided an escape from this facility. Staff noted that you suddenly were sitting in McNair's work area which was not an area you would normally be in. This occurred one or two days before his escape. Your job in UNICOR was to create ways in which to palletize sewing machines for transport. You were responsible for creating means in which to place products on pallets and make them transportable.

You were found to have possessed tobacco in your area a couple of weeks before the escape. You admitted selling tobacco to other inmates for a profit. You have received several hundred dollars into your account to which a part of that amount was sent for selling tobacco to others.

McNair's job was to sort mail bags. He was said to change his assignment by placing mail bags on pallets and shrink wrapping them to go to the warehouse. McNair had an alleged plan to hide tobacco on pallets to be hidden at the warehouse until May. The pallet(s) would then be brought back inside from the warehouse. The change in

Page 2 of 4

*This is Page 2 from my D.H.O Report.*
*This is Proof I gave the D.H.O this hand*
*(Written) Statement.*

Re: ~~Resident Report~~ #4883 26?. 2?A)

~~personal~~ Statement of William (Bill) Dunwoody

TO THE
AHO Officer
18167-074

## EXHiBiT - O

I hereby submit the following statement in my behalf.

# EXHiBiT - O

was Given
TO THE AHO
OFFiCER

There is absolutely no evidence to find me guilty of the above Code Cause I never, in anyway assisted McNair in his escape in anyway whatsoever

Video for 4-5-96 AM and any day before this date will show I never assisted Richard McNair in building A Pallet for his escape. In fact I have never started or built Pallets in Unicor Period Nor did I distract any Unicor Staff or impede them

I did not know Richard McNair was going to escape

If No Video is being Provided to the OHO then I submit to your honor that it is obvious evidence that the SIS has no Video thats can Show me assisting Richard McNair, because I never helped him do anything Period.

Video will Clearly show I am innocent and I ask your honor OH's to Please review it, or go back as needed.

EXHiBiT
O

1.

(2)

Also I submit that if they are any Confidential statements from other Prisoners in this matter that they are false and unreliable and made Pursuant to grandiose favors and gifts from investigating officials looking into the escape incident. I know this because I was offered housing in a low security facility and time cut for my working on the compound which I did not do. I submit these offers were made to all Prisoners and it is Possible they took them to get any kind of favors. There will be nothing to support or Corroborate any such information.

Also I ask this Honorable DHS to verify any Prior Confidential informants Credibility and reliability as Per Policy.

I have been at this Prison for close to 5 years and I have never had a shot, Nor any shots from Pretrial or transit coming here. I have a exemplary record in the Bop. I have a Perfect work record. I have Programed. I have Completed and received Certificates in Vt sewing educational. Certified drivers license trucking training and other educational. rehab courses like the 40 hour drug class. I have a good rapport with staff and always treated them respectfully.

J.

(3.)

I only have 5½ years left before I go to the halfway house and I for sure would not jeopardize any of this to help someone escape. I am not going to help NOBody ESCAPE PERIOD!

I have ask to take A Polygrape test several times. I even told the warden I would like to take A Polygraph test.

I would like to take A Polygraph test now to prove I am innocent

It is obvious that there is no evidence in this Case because the F.B.I investigated this Case thoroughly and was also Present during the questioning of me and they Concluded that There was nothing to Prosecute me over. I even told the F.B.I I would take A Polygraph test and they never had anything more. The warden told me he did'nt think they were interested in it. Also Please note that I don't have much time left and had there been evidence to Prosecute the F.B.I and US Attorney would have Proceeded with A indictment. This Case was Turned over to the F.B.I

Very Truly
William "Bill" Dunworth 13167-074

EXHIBIT P



**U.S. Department of Justice**

Federal Bureau of Investigation

In Reply, Please Refer to
File No.

2901 Leon C. Simon Blvd.
New Orleans, Louisiana 70126
(504) 816-3000
April 03, 2007

Mr. William Thatcher (Bill) Dunwoody
18167-074 Unit K1
Federal Correctional Complex-USP2
P.O. Box 1034
Coleman, FL. 33521-1034

Dear Mr. Dunwoody:

This is in response to your Freedom of Information Act (FOIA)/Privacy Act request received by this Office on April 04, 2007.

We have referred your request to FBI Headquarters (FBIHQ) for processing. The Record/Information Dissemination Section (RIDS) at FBIHQ will maintain your request in the order it was received and will assign it for processing and response in turn. In addition, RIDS will assign your request a FOIPA Number and advise you of that number as soon as possible. Any future correspondence concerning this request should be directed to FBI Headquarters, RID Section, 935 Pennsylvania Avenue, NW, Washington, D.C. 20535-0001.

Sincerely,

James Bernazzani
Special Agent in Charge

By: R. Scott Sellers
    Chief Division Counsel



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

August 08, 2007

MR WILLIAM THATCHER DUNWOODY
**18167-074 UNIT K1
FEDERAL CORRECTIONAL COMPLEX-USP2
POST OFFICE BOX 1034
COLEMAN, FL 33521

Request No:  1077507-000
Subject:  DUNWOODY, WILLIAM
THATCHER

Dear Requester:

The purpose of this letter is to advise you of the status of your pending Freedom of Information/Privacy Acts (FOIPA) request at the Federal Bureau of Investigation (FBI).  Currently the FBI is searching for, retrieving, scanning, and evaluating files that may be responsive to your request. Many factors may contribute to the time required to process your request; however, the greatest single factor is the number of documents associated with your request.

Once your files have been evaluated as potentially responsive, your request will be forwarded to the "perfected backlog", where your request will wait for assignment to an analyst.

You may inquire as to the status of your request by calling the FBI's FOIPA Public Information Center at 540-868-4593.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information Dissemination Section
Records Management Division



U.S. Department of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

May 8, 2007

MR WILLIAM THATCHER DUNWOODY
**18167-074 UNIT K1
FEDERAL CORRECTIONAL COMPLEX-USP2
POST OFFICE BOX 1034
COLEMAN, FL 33521 1034

Request No.: 1077507- 000
Subject: DUNWOODY, WILLIAM
THATCHER

Dear Requester:

☒     This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI's New Orleans Field Office. The FOIPA number listed above has been assigned to your request.

☐     For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐     To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐     If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒     We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐     Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

MR WILLIAM THATCHER DUNWOODY                September 21, 2007
**18167-074 UNIT K1
FEDERAL CORRECTIONAL COMPLEX-USP2
POST OFFICE BOX 1034
COLEMAN, FL 33521 1034

Subject: DUNWOODY, WILLIAM THATCHER

FOIPA No.  1077507- 000

Dear Requester:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☒(j)(2) |
| ☐(b)(3)＿＿＿＿＿＿ | ☒(b)(7)(C) | ☐(k)(1) |
| ＿＿＿＿＿＿＿ | ☒(b)(7)(D) | ☐(k)(2) |
| ＿＿＿＿＿＿＿ | ☐(b)(7)(E) | ☐(k)(3) |
| ＿＿＿＿＿＿＿ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

10  **page(s)** were reviewed and 7  **page(s)** are being released.

☐  Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

☐  referred to the OGA for review and direct response to you.

☐  referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

☒ You have the right to appeal any denials in this release. Appeals should be directed in writing to the Director, Office of Information and Privacy, U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s).

FEDERAL BUREAU OF INVESTIGATION
FOIPA
DELETED PAGE INFORMATION SHEET

Serial Description ~ COVER SHEET


Total Deleted Page(s) ~ 3
Page 1 ~ b6, b7C, b7D
Page 2 ~ b6, b7C, b7D
Page 3 ~ b6, b7C, b7D

```
XXXXXXXXXXXXXXXXXXXXXXXX
X      Deleted Page(s)      X
X No Duplication Fee        X
X      for this Page        X
XXXXXXXXXXXXXXXXXXXXXXXX
```

If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☐ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

Enclosure(s)

01-21-07


Federal Bureau of Investigation
9100 Blue Bonnet Center Blvd.
Baton Rouge, LA 70809-2985


Federal Bureau of Investigation
102 Versailles Blvd.
Lafayette, LA 70501-6700


RE: Attached letter


Federal Bureau of Investigation:


      The attached letter was returned as being undeliverable by the
post office. After a secondary inquiry I was able to locate this mailing
address for the FBI, and am forwarding the letter to you accordingly.

      My correspondence to the FBI's Shreveport address was not returned,
so I presume that it was delivered.


Respectfully,



William T. (Bill) Dunwoody
18167-074 Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034


90C-NO-70900

90C-NO-70900-20

12-13-06

Federal Bureau of Investigation
5353 Essen Lane, Suite 200
Baton Rouge, LA 70809

Federal Bureau of Investigation
428 E. Boston, 2nd. Floor
Covington, LA 70433

Federal Bureau of Investigation
401 Edwards St., Suite 822
Shreveport, LA 71101


Federal Bureau of Investigation:


        I am contacting all FBI Field Offices within the state
of Louisiana, as I am not certain which filed office is handling
this investigation.

        I am an inmate formerly confined at the United States
Penitentiary in Pollock Louisiana, and have been recently trans-
ferred to the Federal Correctional Complex - USP2 in Coleman,
Florida. I am contacting the FBI because I previously was the sub-
ject of an investigation involving an escaped inmate from the USP
Pollock facility.

        Though I was cleared of any wrongdoing by the FBI, I was
severely disciplined by the prison system and transferred to
another facility over this matter. I would like to speak with one
of the agents that's over the Pollock investigation, and would
like to offer to take a polygraph examination to prove my good
faith and hopefully in return be able to clear myself from this
unduly punishment imposed upon me through wrongful disciplinary
action at the prison.

        I am willing to answer as many questions as your exam-
iner may choose to ask of me in regards to the USP Pollock invest-
igation. Please write me back and provide the name and telephone
number of the agent handling this investigation and I will con-
tact him to further discuss my situation.

Respectfully, *William T. (Bill) Dunwoody*

William T. (Bill) Dunwoody
#18
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034

Managers' Intra-Division Routing Slip
FD-4a (Rev. 8-8-89)

Date 02/05/09

To: _____

FILE # _____

Title _____

- [ ] SAC
- [ ] ASAC
- [ ] Supv
- [✓] Agent
- [ ] SSS
- [ ] Roto
- [ ] Steno
- [ ] Typist
- [ ] M _____
- Room _____

b6
b7C

RE: _____

- [ ] Acknowledge
- [ ] Assign [ ] Reassign
- [ ] Bring file
- [ ] Call me
- [ ] Correct
- [ ] Deadline _____
- [ ] Delinquent
- [ ] Discontinue
- [ ] Expedite
- [ ] File

- [ ] For Information
- [ ] Handle
- [ ] Initial & return
- [ ] Leads need attention
- [ ] Mark for indexing
- [ ] Open case
- [ ] Prepare lead cards
- [ ] Prepare tickler
- [ ] Recharge file [ ] serial
- _____
- [ ] Send to

- [ ] Return assignment card
- [ ] Return file [ ] serial
- [ ] Return with action taken
- [ ] Return with explanation
- [ ] Search and return
- [ ] See me
- [ ] Type

Send to letter to MAS for sem.

I believe you worked this Investigation. Pls. Draft a letter to the inmate advising him that our Investigation is closed & that we will not afford twice poly. His complaint is of our adwn. Neither & Best handled by the BOP. Annotate the attached route this is his 2nd letter to us! Follow on to the MAS for SAC ASAC SUPV. - SQUAD #

Manager's Signature



**U.S. Department of Justice**

Federal Bureau of Investigation

In Reply, Please Refer to
File No. 90C-NO-70900

300 Jackson Street
Alexandria, Louisiana 71301
318-443-5097
February 12, 2007

b6
b7C

William T. Dunwoody
Unit K1    #18167-074
Federal Correctional Complex - USP2
PO Box 1034
Coleman, FL 33521-1034

Dear Mr. Dunwoody:

I have received and read your letters dated 12/13/2006 and 1/21/2007. Although the United States Marshal's Service continues to pursue [          ] the FBI investigation of the escape is now closed. As such, we will not provide you with an opportunity to take a polygraph examination.

The complaint that you raise in your letters is that you were "severely disciplined by the prison system and transferred to another facility over the matter." Your complaint is of an administrative nature and should be handled by the Bureau of Prisons. The FBI has no jurisdiction over Bureau of Prison administrative punishment.

Sincerely,

James Bernazzani
Special Agent in Charge

Supervisory Senior Resident Agent

1 - addressee
1 - 90C-NO-70900
JAG:jag
(2)

43JAG02.LTR

90C-NO-70900
KAP:kap

b6
b7C

<u>1</u>

The following investigation was conducted by SA [        ]
[        ] on April 13, 2006, in Pollock, Louisiana:

SA [        ] met with SA [            ] Office of
the Inspector General, United States Department of Justice, at
the United States Penitentiary (USP) Pollock, Louisiana, to
discuss the investigation into [        ] escape from USP Pollock. SA [    ] stated his focus is on
identifying any USP Pollock staff that may have assisted, either
knowingly or unknowingly, in [        ] escape. SA [    ]
stated that the FBI's investigative focus, in order to avoid a
duplication of effort, should be on identifying USP Pollock
inmates that may have assisted with [            ] escape.

SA [        ] conducted several interviews of USP Pollock
inmates in order to develop information regarding the involvement
of USP Pollock staff in the escape of [        ]. SA [        ] was
in attendance during SA [        ] interviews of the following USP
Pollock inmates:

WILLIAM T. "BILL" DUNWOODY - inmate #18167-074

"EXHiBiT Q"

I have put together some copies of my certified mail receipts
and some copies of some of my envelopes I received
from the B.O.P and the F.B.I So the Court Can see I have
tried real hard to get the Southeast regional office
in Atlanta, GA. and the General Counsel in Washington
DC. to look into these false Charges and the way the
SIS and the DHO railroaded me but they do not want
to face the truth and admit they was wrong. All they
say is Procedures were followed and the greater weight of
the evidence supports the DHOS decision.



al Service™
ED MAIL™ RECEIPT
l Only; No Insurance Coverage Provided)

formation visit our website at www.usps.com

FICIAL USE

age $ .39        B.11 DUNWOODY
Fee   2.45       18167-074 K-1
Fee              Postmark
(red) 1.85       Here
Fee
(red)
Fees $4.69

FICE OF GENERAL COUNSEL
320 FiRST STREET, NW
INGTON DC 20534

ne 20o2           See Reverse for Instructions

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Office of General Counsel
Bureau of Prisons
320 First Street, NW.
Washington, DC.
            20534

2. Article Number
   (Transfer from service label)

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____          □ Agent
                        □ Addressee
B. Received by (Printed Name)    C. Date of Delivery
                                    3/5/07
D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
   ☑ Certified Mail    □ Express Mail
   □ Registered        □ Return Receipt for Merchandise
   □ Insured Mail      □ C.O.D.

4. Restricted Delivery? (Extra Fee)    □ Yes

---

PS Form 3800, June 2002

City, State, ZIP+4
WASH'NGTON, DC. 2C
Street, Apt. No.;  320 F.RST STREET,
or PO Box No.
Sent to BOP OFF.CE of GENERAL

Total Postage & Fees $ 5.41

Restricted Delivery
(Endorsement Required)  09 JAN

Return Receipt
(Endorsement Required)  1.85

Certified Fee          USPS $4.5

Postage  $   18167
         RECEIVED
         B.11  BM

OFFICIAL U

For delivery information visit our website at www.u

CERTIFIED MAIL™ RECEIP
U.S. Postal Service™

7005 1160 0000 2084 6747

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article _____

Office of General Counsel
Bureau of Prisons
320 First Street, NW.
Washington, DC.
            20534

2. Article Number
   (Transfer from service label)    1004 2084 6747

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____          □ Agent
                        □ Addressee
B. Received by (Printed Name)    C. Date of Delivery
                                    1/23/07
D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery

3. Service Type
   ☑ Certified Mail    □ Express Mail
   □ Registered        □ Return Receipt for Merchandise
   □ Insured Mail      □ C.O.D.

4. Restricted Delivery? (Extra Fee)

PS Form 3811, February 2004     Domestic Return Receipt

I had made envelopes & copies of letters where I have been in contact with the FBI but Information is Wrong but these see envelopes to show proof that I TRIED

---

JS 1160 0004 2084 6754

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 2.16H |
| Certified Fee | 2.40 |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.32 |

RECEIVED
NOV 20 '07
USP-2
K-1 18167-044
Postmark Here

Bill Burrweck

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Federal Bureau of Prisons
Southeast Regional Office
3800 Camp Creek Parkway S.W.
Building 2000
Atlanta, GA. 30331-6226

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
                                   1/16/06

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered      ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7005 1160 0004 2084 6754

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

4 1350 0004 5530 6010

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | |

COLEMAN II FL
NOV 22 2006
U.S.P.S.

Bill Burrweck

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Federal
Southeast Regional Office
3800 Camp Creek Parkway SW
Building 2000
Atlanta, GA. 30331-6226

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
Mara Hacker                       11-27-06

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered      ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from     4 1350 0004 5530 6010

PS Form 3811



U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300
$ 00.39⁰
02 1A    APR 19 2007
0004204679
MAILED FROM ZIP CODE 70126

*F.B.I*
*April 19-07*

Mr. William Thatcher Dunwoody
18167-074 Unit K1
Federal Correctional Complex-USP 2
P. O. Box 1034
Coleman, FL  33521-1034

U.S. Department of the
Federal Bureau of Investigation
2901 Leon C. Simon
New Orleans, Louisiana

Official Business
Penalty for Private Use

U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300
$ 00.39⁰
02 1A    MAY 08 2007
0004206186
MAILED FROM ZIP CODE 22602

*F.B.I*
*May-8-07*

Department of Justice
Bureau of Investigation

35 Pennsylvania Avenue, NW
Washington, D.C.  20535-0001

Official Business
Penalty for Private Use $300

$00.41⁰
DE 15/2007
US POSTAGE
US OFFICIAL MAIL

BoP
June-15-07

Bill Dunwoody
Register Number 18167-074
Unit K1 USP II
P.O. Box 1034
Coleman, FL 33521-1034

B.O.P
K1

U.S. Department of Justice
Federal Bureau of Prisons

Post St. N.W.
ington, DC 20534

Official Business

U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300
$00.41⁰
DEC 05 2007
MAILED FROM ZIP CODE 00921
PITNEY BOWES

UNITED STATES POSTAGE

02 1A
0004205632

B.O.P
Dec. 5-07

Bill Dunwoody
Reg. No. 18167-074
FCC Coleman - USP II
P.O. Box 1034
Coleman, FL 33521-1034

B.O.P
K1

Federal Bureau of Prisons
MDC Guaynabo
ATTN: Legal Dept.
P.O. Box 2008
Cataño, PR 00963-2008

2007 DEC -7  A  9: 31

RECEIVED
ISM
USP-2

**LEGAL MAIL - FOIA RESPONSE**
Open only in the presence of inmate.



OCRO Legal

OFFICIAL BUSINESS

U.S. Department of Justice
Federal Bureau of Prisons
South Central Region
4211 Cedar Springs Rd., Suite 300
Dallas, Texas 75219

U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300
PITNEY BOWES
$ 000.39⁰
02 1P 0002217123 FEB 14 2007
MAILED FROM ZIP CODE 7120

BOP
NOV-28-06

K1

William T. Dunwoody
Unit K1    #18167-074
Federal Correctional Complex - USP2
PO Box 1034
Coleman, FL 33521-1034

Bill Dunwoody
Register Number 18167-074
Federal Correctional Complex USP2
Post Office Box 1034
Coleman, Florida 33521-1034

K1

F.B.I
FEB. 14-07

U.S. Department of Justice
Federal Bureau of Investigation
300 Washington Street, Ste 302
Monroe, Louisiana 71201

Official Business
Penalty for Private Use, $300

U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300
PITNEY BOWES
$ 00.39⁰
02 1P 0002805827 NOV 28 2006
MAILED FROM ZIP CODE 75219



SCRO Legal

U.S. Department of Justice
Federal Bureau of Prisons
South Central Region
4211 Cedar Springs Rd., Suite 300
Dallas, Texas 75219
OFFICIAL BUSINESS

U.S. OFFICIAL
$ 00.58⁰
SEP 24 2007
02 1A
0004206186
MAILED FROM ZIP CODE 22602

FBI
SEP-24-07

BOP
April 17-07

FBI

K-1

K

William T. Dunwoody
Register Number 18167-074
Federal Correctional Complex (USP2)
Post Office Box 1034
Coleman, Florida 33521-1034

33521+1034 B011

U.S. Department of Justice
Federal Bureau of Investigation

_____ cel Drive
_____ ister, VA 22602-4843

Official Business
Penalty for Private Use $300

UNITED STATES POSTAL SERVICE
$ 00.39⁰
02 1P
0002805827   APR 17 2007
MAILED FROM ZIP CODE 22602

U.S. Department of Justice

Federal Bureau of Investigation

935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001

Official Business
Penalty for Private Use $300

*F.B.I*

*FBI*
*Aug-10-07*

3352171034 B011

I Cut some parts out of the letter & saving the dates when I received mail from the BOP & the F.B.I. you will see where I filed my first appeal OCT-4-2006 and my last letter I received was FEB-28-2008 which, I was trying to get a Copy of the "drop Note" for the Court. I have been working on this Case for 18 months. I have been trying to get any information I Can for the Court. I have done all I Can. But I understand why they won't give me the "drop Note"

Clear Pict.

OCT-4-2006

REGIONAL DIRECTOR
...el. Your appeal must be received in the General Counsel's Office wit...

CASE NUMBER: 42 9...

CASE NUMBER: _____

REG. NO. _____ UNIT
OCT-4-2006

William Ozrwody SIGNATURE OF REQUESTER

...srs has falsely accused me of. The FBI investigated...

William Ozrwody SIGNATURE OF REQUESTER

RECEIVED
NOV - 7 2006
Regional Counsel's Office - SERO
Bureau of Prisons

RECEIVED
NOV - 7 2006
Regional Counsel's Office - SERO

RECEIVED
NOV 2 7 2006
Regional Counsel's Office - SERO
Bureau of Prisons

REGIONAL DIRECTOR
...t be received in the General Counsel's Office within 30 calendar

CASE NUMBER: 429989-R...



**U.S. Department of Justice**

Federal Bureau of Prisons

*South Central Regional Office*

_____

*4211 Cedar Springs Road, Suite 300*
*Dallas, Texas 75219*

NOV 2 8 2006

Bill Dunwoody
Register Number 18167-074
Federal Correctional Complex USP2
Post Office Box 1034
Coleman, Florida 33521-1034

Re:  Freedom of Information Request Number 2007-01378

Dear Mr. Dunwoody:

RECEIVED

MAR 0 5 2007

Administrative Remedy Section
Federal Bureau of Prisons

RECEIVED

JAN 2 3 2007

Administrative Remedy Section
Federal Bureau of Prisons

MAR 2 8 2007



**U.S. Department of Justice**

Federal Bureau of Prisons

*South Central Regional Office*

---

*4211 Cedar Springs Road, Suite 300*
*Dallas, Texas 75219*

APR 17 2007

William T. Dunwoody
Register Number 18167-074
Federal Correctional Complex (USP2)
Post Office Box 1034
Coleman, Florida 33521-1034

RE: Correspondence

Dear Mr. Dunwoody:



**RETURN RECEIPT REQUESTED**

OFFICIAL LEGAL MAIL

Office of General Counsel
Bureau of Prisons
320 First Street, NW
Washington, DC 20534



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

May 8, 2007

MR WILLIAM THATCHER DUNWOODY
**18167-074 UNIT K1
FEDERAL CORRECTIONAL COMPLEX-USP2
POST OFFICE BOX 1034
COLEMAN, FL 33521 1034



**U.S. Department of Justice**

Federal Bureau of Prisons

*Washington, DC 20534*

JUN 1 3 2007

Bill Dunwoody
Register Number 18167-074
Unit K1 USP II
P.O. Box 1034
Coleman, FL 33521-1034

For Further Inquiry Contact:
Federal Bureau of Prisons
320 First Street. N.W.
Room 841, HOLC Building
Washington, D.C. 20534
Attn: FOIA/Privacy Act Office

RE:  Request for Information, FOIA Request No. 2007-04576

Dunwoody,



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

August 08, 2007

MR WILLIAM THATCHER DUNWOODY
**18167-074 UNIT K1
FEDERAL CORRECTIONAL COMPLEX-USP2
POST OFFICE BOX 1034
COLEMAN, FL 33521

12-08-06

U.S. Department of Justice
Office of Information & Privacy
1425 New York Ave., Suite 11050
Washington, DC 20530-0001

RE: FOIA Appeal

Office of Information & Privacy:

      This is to appeal the non-disclosure of the investigative files
maintained by the Federal Bureau of Prisons and the Federal Bureau of Invest-
igation pertaining to myself. The investigation is a joint case being handled
by both the prisons (SIS) Special Investigative Services, and the FBI.

      The investigation pertains to the escape of an inmate at USP Pollock,
Louisiana by the name of Richard McNair. I was the subject of the probe because
the prison's SIS accused me of assisting in the escape. I deny any involvement
whatsoever, and am willing to take a polygraph examination to clear myself of
any suspicion.

      Enclosed I am providing a copy of the response I received from the
Federal Bureau of Prisons Regional Counsel, Michael D. Hood. He advises that
the incident I am referring to continues to be investigated. He also states
that when the investigation has been concluded the files I need may be provided
to me.

      It is essential that the files be disclosed to me now, instead of
at some future date because I must prove my innocence in a disciplinary case.
I was falsely accused of aiding an escape, and was issued an incident report
charging me with a Code 102-A (Aiding an Escape.)

      In your communication with BOP and FBI staff in regards to this
appeal please inform the appropriate FBI Field Office that it is my desire to
assist in their investigation. I believe it would be in my best interest to
consent to taking a polygraph examination to clear myself, and would hope that
in doing so, that the incident report issued to me could be expunged from my
record. I am willing to answer any and as many questions the polygraph examiner
may wish to ask me about the Richard McNair escape.

      Without the requested investigative information I will be unable to
prove my innocence and would be unjustly harmed by virtue of a disciplinary
conviction because my access to crucial defense information was withheld from
me. My only other avenue would be to ask the FBI agent incharge of this case
to give his opinion of subject to the Federal Bureau of Prisons Regional Direc-
tor in hopes the disciplinary action may be expunged.

Sincerely, William T. "Bill" Dunwoody



**U.S. Department of Justice**

Federal Bureau of Prisons

*South Central Regional Office*

---

*4211 Cedar Springs Road, Suite 300*
*Dallas, Texas 75219*

NOV 2 8 2006

Bill Dunwoody
Register Number 18167-074
Federal Correctional Complex USP2
Post Office Box 1034
Coleman, Florida 33521-1034

Re:   Freedom of Information Request Number 2007-01378

Dear Mr. Dunwoody:

This is in response to your recent request for a copy of specific Federal Bureau of Prisons records pertaining to you.  You requested a copy of investigative records related to your placement in administrative detention on April 12, 2006.

The incident that you have referenced continues to be investigated. Therefore, any information pertaining to the incident is exempt from disclosure at this time pursuant to  Title 5, United States Code, Section 552(b)(7)(A).  Premature release of the information could interfere with law enforcement proceedings, including this pending investigation.  You may make a request at a later date and, if the investigation has been concluded, the relevant documents will be reviewed upon receipt of your request.

Pursuant to Title 28, Code of Federal Regulations, Section 16.9, this action may be appealed to the Attorney General within sixty (60) days of the date of this letter by writing to the Office of Information and Privacy, Department of Justice, 1425 New York Avenue, Suite 11050, Washington, DC  20530-0001.  Please ensure that the envelope and request are clearly marked "FOI Request Appeal."

Sincerely,

Michael D. Hood
Regional Counsel

lc

SENSITIVE - LIMITED OFFICIAL USE

12-08-06

U.S. Department of Justice
Office of Information & Privacy
1425 New York Ave., Suite 11050
Washington, DC 20530-0001

RE: Request for address - Seeking Louisiana FBI Field Office

Office of Information & Privacy:

  Could you further assist me regarding the investigation I mentioned in the first letter? I have been unable to find out which FBI Field Office is handling the investigation. I presume it may be Alexandria, or Lafayette, Louisiana.

  When you speak with the FBI please get their mailing address and the name of the agent investigating the case. I will contact him personally if he wishes.

  Thank you for your help.

Sincerely,

William T. (Bill) Dunwoody
#18167-074  Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034

02/25/07


Federal Bureau of Prisons
Office of General Counsel
FOIA Section
320 First St., NW
Washington, DC 20534


RE: Freedom of Information - Privacy Act Request


Federal Bureau of Prisons:


      Please consider this a request for disclosure of records pursuant to the Freedom of Information Act, 5 USC § 552, and the Privacy Act, 5 USC § 552(a).

      I am requesting to receive exculpatory information concerning me and the USP Pollock investigation of an inmate's escape, that I believe such information is in the possession of the Bureau of Prisons, and the Federal Bureau of Investigation. Additionally I request any and all other information however maintained pertaining to the USP Pollock escape.

      At this time I do have two reference numbers to assist you in your search. Administrative Remedy Appeal #429889-R3, and FBI File #90C-NO-70900.

      I previously filed under FOI/PA to receive this information and was denied disclosure as the BOP claimed the case remained under investigation. I now have information from the FBI that the case is closed, therefore I should be entitled to the information I am seeking.

      If the requested information is denied in whole or in part, or is deemed to be exempt under FOI/PA, please specify the statutory reason for any such exemption and the name and title of the person making that decision.

      A Vaughn index is requested pursuant to Vaughn vs. Rosen, 484 F 2d 820. If any costs exceed $25.00 in relation to this request, please inform me of the additional costs for my approval prior to the fee being incurred. You should also be informed that I am an indigent incarcerated person and request a waiver or reduction of costs under relevant sections of the FOI/PA. Furthermore, said request is in the "Public Interest."

      Thank you for your prompt attention in this matter.

Sincerely,

William T. (Bill) Dunwoody
18167-074  Unit K1  USP2
P.O. Box 1034
Coleman, FL 33521-1034

4.

03-12-07

U.S. Department of Justice
Office of Information & Privacy
1425 New York Ave., Suite 11050
Washington, DC 20530-0001

RE: Additional Information
    Federal Bureau of Prisons FOI/PA Request #2007-01378

Office of Information & Privacy:

        I wrote to you on 12-08-06 to appeal the non-disclosure of invest-
igative files maintained by the Federal Bureau of Prisons and the Federal
Bureau of Investigation pertaining to myself. I have received no response
from you in regards to this communication, therefore I am sending you a
copy of my 12-08-06 letter just in case you didn't receive it.

        Since I last wrote, I have had communication with the Federal
Bureau of Investigation in regards to this matter. Enclosed is the FBI's
letter to me dated 02-12-07, in which they advise me that the FBI investi-
gation of the escape is now closed. Now that we have confirmation the FBI's
case is closed the exemption claimed by Michael D. Hood, Regional Counsel
for the Federal Bureau of Prisons no longer applies.

        Mr. Hood further stated that I may make a request at a later
date, after the investigation has been completed, and the relevant doc-
uments will be reviewed for disclosure.

        I hope that the Office of Information & Privacy will accept my
appeal in this matter, and determine that my FOI/PA request should be
Granted by the Federal Bureau of Prisons, as well as by the Federal Bureau
of Investigation.

        Thank you for your assistance.

Sincerely,

William T. (Bill) Dunwoody
18167-074  Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034



**U.S. Department of Justice**

Federal Bureau of Prisons

*South Central Regional Office*

---

*4211 Cedar Springs Road, Suite 300*
*Dallas, Texas 75219*

APR 17 2007

William T. Dunwoody
Register Number 18167-074
Federal Correctional Complex (USP2)
Post Office Box 1034
Coleman, Florida 33521-1034

RE: Correspondence

Dear Mr. Dunwoody:

This is in response to your letter dated March 12, 2007, in which you request a copy of records related to your placement in administrative detention on April 12, 2006.

In accordance with Title 28, Code of Federal Regulations, Sections 16.3, please direct your correspondence to:

        Director
        Federal Bureau of Prisons
        320 First Street, N.W.
        Room 841
        Washington, D.C.  20534

Please ensure your correspondence and the envelope are clearly marked "FREEDOM OF INFORMATION REQUEST."  Additional information is provided at Title 28, Code of Federal Regulations, Section 513.50, et. seq.

Sincerely,

Jason A. Sickler
Regional Counsel

lc

SENSITIVE BUT UNCLASSIFIED

6.

12-13-06

Federal Bureau of Investigation
5353 Essen Lane, Suite 200
Baton Rouge, LA 70809

Federal Bureau of Investigation
428 E. Boston, 2nd Floor
Covington, LA 70433

Federal Bureau of Investigation
401 Edwards St., Suite 822
Shreveport, LA 71101


Federal Bureau of Investigation:

   I am contacting all FBI Field Offices within the state of Louisiana, as I am not certain which filed office is handling this investigation.

   I am an inmate formerly confined at the United States Penitentiary in Pollock Louisiana, and have been recently transferred to the Federal Correctional Complex - USP2 in Coleman, Florida. I am contacting the FBI because I previously was the subject of an investigation involving an escaped inmate from the USP Pollock facility.

   Though I was cleared of any wrongdoing by the FBI, I was severely disciplined by the prison system and transferred to another facility over this matter. I would like to speak with one of the agents that's over the Pollock investigation, and would like to offer to take a polygraph examination to prove my good faith and hopefully in return be able to clear myself from this unduly punishment imposed upon me through wrongful disciplinary action at the prison.

   I am willing to answer as many questions as your examiner may choose to ask of me in regards to the USP Pollock investigation. Please write me back and provide the name and telephone number of the agent handling this investigation and I will contact him to further discuss my situation.

Respectfully, *William T. (Bill) Dunwoody*

William T. (Bill) Dunwoody
#18167-074 Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034

01-21-07

Federal Bureau of Investigation
9100 Blue Bonnet Center Blvd.
Baton Rouge, LA 70809-2985

Federal Bureau of Investigation
102 Versailles Blvd.
Lafayette, LA 70501-6700

RE: Attached letter

Federal Bureau of Investigation:

      The attached letter was returned as being undeliverable by the post office. After a secondary inquiry I was able to locate this mailing address for the FBI, and am forwarding the letter to you accordingly.

      My correspondence to the FBI's Shreveport address was not returned, so I presume that it was delivered.

Respectfully,


William T. (Bill) Dunwoody
18167-074  Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034

90C-NO-70900

8.

90C-NO-70900-20

March 12, 2007


Michael D. Hood, Regional Counsel
Federal Bureau of Prisons
South Central Regional Office
4211 Cedar Springs Rd., Suite 300
Dallas, TX 75219


RE: FOI/PA Request #2007-01378


Dear Mr. Hood,

I have just received confirmation from the Federal Bureau of Investigation that the investigation has been closed, therefore the exemption claimed under 5 USC § 552(b) (7)(A), nolonger applies. This has been confirmed by Richard A. Martinez, Supervisory Senior Resident Agent at the FBI's Field Office in Alexandria, Louisiana.

Enclosed I am providing you with a copy of the letter from Agent Martinez for your review. Accordingly I hope you will now process my FOI/PA Request for disclosure of records and investigative files, in as much that they pertain to me, or make any mention of my name.

Should you have any questions, please let me know.

Sincerely,

William T. (Bill) Dunwoody
18167-074  Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034

7.



**U.S. Department of Justice**

Federal Bureau of Investigation

In Reply, Please Refer to
File No. 90C-NO-70900

300 Jackson Street
Alexandria, Louisiana 71301
318-443-5097
February 12, 2007

William T. Dunwoody
Unit K1    #18167-074
Federal Correctional Complex - USP2
PO Box 1034
Coleman, FL 33521-1034

Dear Mr. Dunwoody:

    I have received and read your letters dated 12/13/2006 and 1/21/2007.  Although the United States Marshal's Service continues to pursue Richard Lee McNair, the FBI investigation of the escape is now closed.  As such, we will not provide you with an opportunity to take a polygraph examination.

    The complaint that you raise in your letters is that you were "severely disciplined by the prison system and transferred to another facility over the matter."  Your complaint is of an administrative nature and should be handled by the Bureau of Prisons.  The FBI has no jurisdiction over Bureau of Prison administrative punishments.

    Sincerely,

    James Bernazzani
    Special Agent in Charge

    By
    Ricardo A. Martinez
    Supervisory Senior Resident Agent

*10.*

March 12, 2007


Ricardo A. Martinez
Supervisory Senior Resident Agent
Federal Bureau of Investigation
300 Jackson St.
Alexandria, LA 71301


RE: Request for disclosure pursuant to
    5 USC § 552   The Freedom of Information Act
    and
    5 USC § 552 (a) The Privacy Act of 1974


Dear Special Agent Martinez,

        Thank you for your reply of February 12, 2007. Since the FBI has now closed it's investigation, I would like to make a request for disclosure of all information maintained by the FBI which pertains to me, or which makes reference or mention of my name, in relation to the escape investigation.

        This information is needed to help me prepare a defense to the wrongful prison disciplinary action which has me currently oppressed.

        I make this request for disclosure pursuant to 5 USC § 552, and 5 USC § 552 (a). A Vaughn Index is also requested should any portion be deemed non-disclosable. See: Vaughn vs. Rosen, 484 F 2d 820.

        If any costs in excess of $25.00 are incurred with this request please inform me of the additional costs for my approval prior to their being incurred. I request that all costs be waived as I am an indigent incarcerated person. If a waiver of fees cannot be granted, please consider me for a reduction of costs under relevant sections of the FOI/PA.

        Further, this information request is in the Public Interest.

        Thank you for your prompt attention in this matter.

Sincerely,

William T. (Bill) Dunwoody
18167-074  Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034

11.

P.S.    Special Agent Martinez:

I understand what you mean when you said my complaint is of an administrative nature and should be handled by the Bureau of Prisons. This is one time in my life that I am innocent and I have been trying to prove it. When I was in Pollock Louisiana under investigation, I gave a letter to the Warden -"Fredrick Menifee" telling him I wanted to take a polygraph test and he told me he didn't have anything to do with the investigation because it had been turned over to the FBI, so I asked him if he would mail the letter to the FBI and he said he would. The next week when he came around he told me the FBI got my letter. Later on I asked him if the FBI was going to let me take a polygraph test and he said they are not interested. I asked him what are they interested in and he said "I don't know," and that was the end of the conversation. He left. I did tell him I did not have anything to do with the escape. I told him I didn't even know the guy was going to escape. Everything I have just said is the truth.
With this said, would you please send me a copy of the letter the Warden forwarded to the FBI at my request stating that I was asking to take a polygraph test? Also would you please verify that I did ask to take a polygraph test while the investigation was going on? It is necessary that I have this verified for my defense of the prison disciplinary action.

I would also like to ask if at anytime this case is opened back up, would you please consider giving me a polygraph test? If I was guilty of any of this I would not be asking to take a polygraph test because if you lie, that examiner will catch you. I do know the FBI has got top of the line examiners and you don't pull the wool over their eyes.

Sincerly

William T. "Bill" Dunmeverly

12.



**U.S. Department of Justice**

Federal Bureau of Investigation



In Reply, Please Refer to
File No.

2901 Leon C. Simon Blvd.
New Orleans, Louisiana 701
(504) 816-3000
April 03, 2007

Mr. William Thatcher (Bill) Dunwoody
18167-074 Unit K1
Federal Correctional Complex-USP2
P.O. Box 1034
Coleman, FL. 33521-1034

Dear Mr. Dunwoody:

This is in response to your Freedom of Information Act (FOIA)/Privacy Act request received by this Office on April 04, 2007.

We have referred your request to FBI Headquarters (FBIHQ) for processing. The Record/Information Dissemination Section (RIDS) at FBIHQ will maintain your request in the order it was received and will assign it for processing and response in turn. In addition, RIDS will assign your request a FOIPA Number and advise you of that number as soon as possible. Any future correspondence concerning this request should be directed to FBI Headquarters, RID Section, 935 Pennsylvania Avenue, NW, Washington, D.C. 20535-0001.

Sincerely,

James Bernazzani
Special Agent in Charge



By:  R. Scott Sellers
     Chief Division Counsel





13.

October 31, 2007

Director
Federal Bureau of Prisons
Central Office
320 First St., NW  Room 841
Washington, DC 20534

RE: Freedom of Information / Privacy Act Request - 5 USC § 552 and § 552a

Director:

      I am an inmate currently confined at the Federal Correctional Complex United States Penitentiary #2, at Coleman, Florida. Please consider this letter as my request for disclosure of information from my central file.

      Specifically what I am requesting is all information concerning the disciplinary action involving Incident Report number 1488526, which was issued on 07/12/06.

      I am in need of a copy of the actual Incident Report, copies of the investigating officers statement(s), and reports prepared by staff. Additionally, the DHO's report states that a "DROP NOTE" was received in the Lieutenant's Office on April 10th. 2006 implicating me in the prohibited act charged. I would like to receive a copy of this "DROP NOTE" and any other similar information or statements which pertain to me.

      It has recently came to my attention that the escaped inmate Richard McNair has been captured in Canada. This information was told to me by other inmates who claimed they saw this on the TV news over the weekend. As of yet prison officials have not confirmed this for me, but I believe it to be true.

      It is my belief that the investigation has now been concluded since he has been captured. I do not see any reason why disclosure of the requested information should not be disclosed to me. I am requesting this information for a federal court matter, and intend to use this information as Exhibits in my case. This will be filed as a 28 USC § 2241 proceeding to attack prison discipline.

      Please see copy of attached DHO report which verifies this information exists. I trust that you will provide this information to me for the purpose herein expressed.

      Thank you for your assistance in this matter.

Respectfully,  _Bill Dunwoody_

Bill Dunwoody # 18167-074  Unit K1
Federal Correctional Complex - USP2
P.O. Box 1034
Coleman, FL 33521-1034

14.



**U.S. Department of Justice**

Federal Bureau of Prisons

*Southeast Regional Office*

---

*Building 2000*
*3800 Camp Creek Parkway, SW*
*Atlanta, Georgia  30331-6226*

December 21, 2007

Bill Dunwoody
Reg. No. 18167-074
FCC Coleman - USP II
P.O. Box 1034
Coleman, FL 33521-1034

RE:    Freedom of Information/Privacy Act Request No. 2008-01414

Dear Mr. Dunwoody:

This is in response to your request for copies of Federal Bureau of Prisons records relating to Incident Report number 1488526, which was issued on July 12, 2006.  We have located four (4) pages of documents responsive to your request.

In accordance with the Freedom of Information Act, the Privacy Act, and Department of Justice regulations concerning the release of records, we have determined that all four (4) pages are releasable to you in their entirety.  The investigative reports and the alleged "drop note" are being withheld in full pursuant to Title 5, United States Code, Section 552(b)(7)(E), which pertains to records or information compiled for law enforcement purpose, the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions.

Pursuant to Title 28, Code of Federal Regulations § 16.9, the information withheld may be appealed to the Attorney General by filing a written appeal within sixty (60) days of the receipt of this letter. The appeal should be addressed to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, 1425 New York Avenue, N.W., Ste. 11050, Washington, D.C., 20530-0001. Both the envelope and the letter of appeal itself must be clearly marked: "Freedom of Information Act Appeal."

Sincerely,

Carlos Martinez
Supervisory Attorney Advisor

*Please ask for this "drop Note" and Compare hand Writing With Kenith Stanford*

enclosures

*/5.*



U.S. Depa...lent of Justice

Federal Bureau of Prisons

*Southeast Regional Office*

---

*Building 2000*
*3800 Camp Creek Parkway, SW*
*Atlanta, Georgia 30331-6226*

February 28, 2008 ←——— *As you Can this is when I stopped trying to get information for the Court*

Bill Dunwoody
Reg. No. 18167-074
FCC Coleman - USP II
P.O. Box 1034
Coleman, FL 33521-1034

RE:    Freedom of Information/Privacy Act Request No. 2008-03392    *Please ask for this drop Note*

Dear Mr. Dunwoody:

This is in response to your request for copies of Federal Bureau of Prisons records relating to Incident Report number 1488526, which was issued on July 12, 2006.  We have located four (4) pages of documents responsive to your request.

In accordance with the Freedom of Information Act, the Privacy Act, and Department of Justice regulations concerning the release of records, we have determined that all four (4) pages are releasable to you in their entirety.  The investigative reports and the alleged "drop note" are being withheld in full pursuant to Title 5, United States Code, Section 552(b)(7)(E), which pertains to records or information compiled for law enforcement purpose, the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions.

Pursuant to Title 28, Code of Federal Regulations § 16.9, the information withheld may be appealed to the Attorney General by filing a written appeal within sixty (60) days of the receipt of this letter. The appeal should be addressed to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, 1425 New York Avenue, N.W., Ste. 11050, Washington, D.C., 20530-0001. Both the envelope and the letter of appeal itself must be clearly marked: "Freedom of Information Act Appeal."

Sincerely,

Carlos Martinez
Supervisory Attorney Advisor

enclosures

*16.*

Your Honor                                    April 11-2008

I have Covered everything in detail so you
could See This Case Picture Clear. I started Writing
my first appeal in September of 2006 because the
DHO officer told me he strongly suggest I file
my appeal. He knew I was not guilty but he
still had to find me guilty. I have not given up
on trying to Prove I am innocent and I will
not give up either. I feel after you read this
and look into this Case you will get to the
bottom of this and find the truth just as I have
told you. They did me wrong but they don't Care.
All they Cared about was looking out for their
own Self. To be honest with you, if I had
been guilty of this I would have never said
a word to NO Body. I would have never
Contacted the F.B.I and ask to take a polygraph
test. They Caught McNair 7 or 8 months ago
and they know every bit of the truth because
they have questioned McNair alot. I want the
Court to know, I am still offering to take a
Polygraph test about this escape and I will
answer any questions I have written in this
appeal. I jest Want to Clear myself
because I did not have anything to do with
McNair escaping. I told the truth in
my appeals and in this 2241. Would you
Please help me.
                              Sincerely,
                    William R Dunwoody